1  Susan M. Walker (130748)
   DENTONS US LLP
2  601 South Figueroa Street, Suite 2500
   Los Angeles, California 90017-5704
3  Telephone: (213) 623-9300
   Facsimile: (213) 623-9924
4  susan.walker@dentons.com

*Approved except for passage deleted at paragraph 6.3.   MRW*

5  Karl M. Tilleman (*Admitted Pro Hac Vice*)
   Douglas D. Janicik (*Admitted Pro Hac Vice*)
6  Erin N. Bass (325090)
   DENTONS US LLP
7  2398 East Camelback Road, Suite 850
   Phoenix, Arizona 85016-9007
8  Telephone: (602) 308-3900
   Facsimile:  (602) 308-3914
9  karl.tilleman@dentons.com
   erin.bass@dentons.com
10 doug.janicik@dentons.com

11 Attorneys for Plaintiff The Icon at Panorama, LLC

12

13                    UNITED STATES DISTRICT COURT

14                    CENTRAL DISTRICT OF CALIFORNIA

15

16

17 The Icon at Panorama, LLC,            Case No.  2:19-cv-00181-CBM-MRW

18            Plaintiff,

19      vs.                              **STIPULATED [~~PROPOSED~~]
                                         PROTECTIVE ORDER**
20 Southwest Regional Council of
   Carpenters, et al.,                   ☐ Check if submitted without
                                         material modifications to MRW form
21            Defendants.

22

23

24

25

26

27

28

1.      INTRODUCTION

      1.1     PURPOSES AND LIMITATIONS

      Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.  Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order.  The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.  The parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

      1.2     GOOD CAUSE STATEMENT

      a.      Plaintiff Icon:  As alleged in the Second Amended Complaint, this case involves a much-needed (and much-supported) mixed-use complex in Panorama City that plaintiff The Icon at Panorama, LLC ("Icon") seeks to build. However, the Union Defendants (Carpenters and Laborers and associated individuals), with the help of the Union Defendants' consultants — defendants SWAPE, LLC (SWAPE) and Smith Engineering & Management, Inc. ("SEM") — have prevented Icon from building the Project by repeatedly filing bogus environmental challenges under the California Environmental Quality Act ("CEQA") unless and until Icon caves to the Unions' demands to use exclusively union labor on its projects. The Unions also used their other unlawful agreements with contractors and developers to pressure Icon to cede to their demands. The

1    Unions used this unlawful playbook over and over again to dominate the labor
2    market on large projects in and around Los Angeles County.

3        Since April 2017, the Unions have filed more than 27 challenges to the
4    Project before 4 different government agencies. The Unions lost at every step of the
5    administrative process; after more than two years of litigation the Unions prevailed
6    on two narrow grounds (that the City did not follow CEQA in approving the
7    Project) that were not raised by the Unions until the final stages of review.

8        Icon alleges that the Unions are attempting to and engaging in a conspiracy
9    to monopolize the labor market in violation of § 2 of the Sherman Act; directing a
10   group boycott in violation of § 1 of the Act; and engaging in a conspiracy to enter
11   into an exclusive dealing arrangement in violation of § 1 of the Act. Icon further
12   alleges that the Unions committed unfair labor practices (for which they are liable
13   in money damages under the Labor Management Relations Act) by unlawfully
14   inducing contractors to boycott Icon in violation of the National Labor Relations
15   Act ("NLRA") § 8(b)(4)(i) and coercing Icon to sign a union-exclusivity agreement
16   in violation of NLRA § 8(b)(4)(ii).

17       The above claims raise the following issues on which discovery will be
18   taken:

19   •    Defendants' CEQA challenges are objectively and subjectively
20        baseless, and therefore, not protected by the First Amendment. Put
21        differently, they are within the "sham" exception to the *Noerr-*
22        *Pennington* doctrine and are not immune from antitrust liability.
23   •    Defendants are attempting and conspiring to monopolize the labor
24        market for large construction projects in and adjacent to Los Angeles
25        County. Through their anticompetitive tactics, the Unions (with the
26        help of the other Defendants) seek to boost their own membership rolls
27        (and thus their revenue from dues) by excluding nonunion contractors
28

- 3 -

1    from the labor market for such construction projects in and adjacent to
2    Los Angeles County.

3    •    The Relevant Market is the sale of labor on large real estate projects
4    within or adjacent to Los Angeles County, California. Such large real
5    estate projects include (but are not limited to) those that fall within the
6    purview of the Department of City Planning's "Major Projects Unit,"
7    which enables the Department to conduct a more thorough and focused
8    analysis of large, complex projects that have the potential to generate
9    the most significant effects on the City's infrastructure, local economy,
10    and environment.

11    •    The Unions (with the help of the other Defendants and third parties)
12    have orchestrated a group boycott whereby participating general
13    contractors will not work with any developer who does not agree to
14    use exclusively union contractors.

15    •    Through the use of "most-favored nation" and similar clauses,
16    Defendants are attempting to and conspiring to enter into unlawful
17    exclusive dealing arrangements with developers and contractors in the
18    Relevant Market.

19    •    Defendants are not entitled to invoke the statutory and nonstatutory
20    labor exemptions to antitrust liability because they have joined with
21    non-labor groups, are not engaged in a legitimate union activity (i.e.,
22    seeking to organize Icon's employees), and seek to coerce agreements
23    to use exclusively union contractors outside the context of collective
24    bargaining.

25    •    Defendants antitrust violations have caused a "competitive injury" to
26    the Relevant Market, including but not limited to foreclosing nonunion
27    contractors, higher labor costs, and a shortage of low cost housing.

28

- 4 -

1        •    The agreement Defendants sought from Icon (and obtained from other
2             developers) violates the NLRA and would have forced Icon to stop
3             doing business with nonunion contractors. The agreement Defendants
4             sought does not fall within the construction industry proviso of Section
5             8(e) of the NLRA because there is no collective bargaining
6             relationship at issue, particularly where Icon has no employees for the
7             Unions to represent, and because Icon is not an "employer in the
8             construction industry."

9        Additionally, Icon seeks past and future damages resulting from Defendants'
10   anticompetitive and otherwise unlawful conduct in violation of federal antitrust
11   statutes and the Labor Management Relations Act, 29 U.S.C. § 187.  Icon contends
12   it has suffered, continues to suffer, and will suffer harm related to increased labor
13   costs, project delays, and defending itself against the Unions' sham litigation
14   tactics, including but not limited to project carrying costs, lost opportunity costs,
15   lost profits and attorneys' fees.

16        Based on the above claims and issues in this case, Icon anticipates that
17   discovery of sensitive, confidential and proprietary business and financial
18   information will be sought, such as:  financial analyses of proposed development
19   projects (cost, revenue, margins, etc.); budget analyses of ongoing projects; profit
20   and loss statements; and construction plans and drawings containing confidential
21   design information.  Disclosure of sensitive, confidential and proprietary business
22   and financial information in civil discovery should be done only under properly
23   fashioned protective orders. *See, e.g.*, *Evolv Health, LLC v. Cosway USA, Inc.*,
24   2017 WL 3048651, at *2 n. 2 (C.D. Cal. Apr. 21, 2017) (a protective order
25   sufficiently addresses "concerns regarding the disclosure of proprietary
26   information"); *EFT Holdings, Inc. v. CTX Virtual Tech., Inc.*, 2016 WL 11519280,
27   at *3 (C.D. Cal. Nov. 3, 2016) (district courts allow "disclosure of financial
28   information in civil discovery under properly fashioned protective orders").

1    DEFENDANTS' STATEMENT:  This case involves a collateral attack in

2  federal court on successful litigation by two unions ("Union Defendants") against

3  Plaintiff's development project for CEQA violations in Los Angeles Superior Court

4  and an attempt to convert Union Defendants' efforts to resolve that dispute (*i.e.*

5  settlement-related discussions) into an anti-trust (and related LMRA Section 303,

6  29 U.S.C. Section 187) claim.  It also involves an effort to uncover the Union

7  Defendants' litigation and settlement strategy in connection with lawful petitioning

8  efforts—in administrative and judicial fora, as well as associated lobbying of

9  municipal officials—in an effort to impose damages and otherwise deter or

10  preclude the Union Defendants from engaging in such efforts.  As such, whether

11  this issue is decided after preliminary, limited discovery in which the applicability

12  of Noerr-Pennington immunity to the dispute is--along with potentially dispositive

13  issues related to whether any alleged harm/injury/damages to Plaintiff arose solely

14  from this single proceeding--the key threshold legal issue (*see Franchise Realty*

15  *Interstate Corp. v. S.F. Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076,

16  1082 (9th Cir. 1976), or after a broader  range of discovery, it is clear that facts

17  Plaintiff seeks to adduce relate to the Union Defendants' organizing, litigation and

18  strategies, including their political and other policy goals and their methodologies

19  for conducting their efforts to achieve them.  These issues necessarily implicate

20  Union and other Defendants' trade secrets, attorney-client privilege, work product

21  privilege and other data which derives its value and efficacy from its non-public

22  nature, including the contents of the Union Defendants' agreements with other

23  entities (which may be of value to their competitors).  Moreover, the damages and

24  injury issues Plaintiff must prove also likely implicate cost and other data related to

25  Plaintiff's development efforts that also derives its value from its non-public nature.

26    The extensiveness of the need for a protective order here is further illustrated

27  by the following disputed issues:

28

1        •      whether the agreement sought was within the construction industry

2  proviso of § 8(e) of the NLRA, 29 U.S.C.S. § 158(e), which turns in part on

3  decisions by the other party to the agreement with respect to its intended

4  involvement in the retention of workers and other labor relations questions—

5  matters that most employers would not want to make available to their competitors

6  and, possibly, might want to withhold from potential vendors in order to obtain

7  more competitive bids or other financial advantage;

8        •      the scope of Plaintiff's injury, which turns on Plaintiff's cost and other

9  estimates and whether Plaintiff can show that an injury was incurred "by reason of"

10  the alleged § 8(b)(4) violation;

11        •      what the Union Defendants' objectives are and how the Union

12  Defendants and their alleged agents went about trying to achieve them;

13        •      the extent, if any, that the Union Defendants' actual objectives

14  correspond to the anti-competitive scheme alleged and whether the nature and

15  scope of those objectives is a proper predicate for anti-trust and labor law liability

16  or, instead, constitute fully lawful union objectives legally insulated from the

17  imposition of such liability;

18        •      whether the Union Defendants' activities are the pursuit of a legitimate

19  labor objective immune from anti-trust scrutiny and, if not, whether they are

20  justified by a rule of reason, which, in itself, turns on internal business decisions

21  and calculations made by the Union Defendants; and

22        •      whether the allegedly anti-competitive effects posed a dangerous

23  probability of obtaining a monopoly in the relevant market and constitute a

24  cognizable anti-trust injury.

25        Accordingly, to expedite the flow of information, to facilitate the prompt

26  resolution of disputes over confidentiality of discovery materials, to adequately

27  protect information the Parties are entitled to keep confidential, to ensure that the

28  Parties are permitted reasonable necessary uses of such material in preparation for

1    and in the conduct of trial, to address their handling at the end of the litigation, and
2    to serve the ends of justice, a protective order for such information is justified in
3    this matter.  It is the intent of the Parties that information will not be designated as
4    confidential for tactical reasons and that nothing be so designated without a good
5    faith belief that it has been maintained in a confidential, non-public manner and
6    there is good cause why it should not be part of the public record of this case.

7
8    2.    DEFINITIONS

9        2.1    Action: *The Icon at Panorama, LLC v. Southwest Regional Council of*
10   *Carpenters, et al*., Case No. 2:19-CV-181-CBM (MRW), pending in the U.S.
11   District Court for the Central District of California.

12       2.2    Challenging Party:  a Party or Non-Party that challenges the
13   designation of information or items under this Order.

14       2.3    "CONFIDENTIAL" Information or Items:  information (regardless of
15   how it is generated, stored or maintained) or tangible things that qualify for
16   protection under Federal Rule of Civil Procedure 26(c), and as specified above in
17   the Good Cause Statement.

18       2.4    Counsel:  Outside Counsel of Record and House Counsel (as well as
19   their support staff).

20       2.5    Designating Party:  a Party or Non-Party that designates information or
21   items that it produces in disclosures or in responses to discovery as
22   "CONFIDENTIAL."

23       2.6    Disclosure or Discovery Material:  all items or information, regardless
24   of the medium or manner in which it is generated, stored, or maintained (including,
25   among other things, testimony, transcripts, and tangible things), that are produced
26   or generated in disclosures or responses to discovery in this matter.

27       2.7    Expert:  a person with specialized knowledge or experience in a matter
28   pertinent to the litigation who has been retained by a Party or its counsel to serve as

an expert witness or as a consultant in this Action.

2.8   House Counsel:  attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.9   Non-Party:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10   Outside Counsel of Record:  attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party, and includes support staff.

2.11   Party:  any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.12   Producing Party:  a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.13   Professional Vendors:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.14   Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.15   Receiving Party:  a Party that receives Disclosure or Discovery Material from a Producing Party.

3.   SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or

compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel, including during the course of depositions and in correspondence between/among counsel, that might reveal Protected Material.

Any use of Protected Material at trial will be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial.

4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order will remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition will be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.    DESIGNATING PROTECTED MATERIAL

5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper

purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2    Manner and Timing of Designations.  Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)  for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material.  If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection will be deemed "CONFIDENTIAL."  After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material.  If only a

portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b)  for testimony given in depositions that the Designating Party identify the Disclosure or Discovery Material to be designated as Confidential (i) on the record during the deposition, or (ii) within thirty (30) calendar days of the receipt of the official transcript of the deposition, by providing the other Parties written notice of the page and line numbers of the transcript to be designated as Confidential .

(c)  for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information  is stored the legend "CONFIDENTIAL."  If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, will identify the protected portion(s).

5.3    Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material.  Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges.  Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2    Meet and Confer.  The Challenging Party will initiate the dispute resolution process (and, if necessary, file a discovery motion) under Local Rule 37.1 et seq.

Deleted by Court.

The burden of persuasion in any such challenge proceeding will be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties will continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

## 7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well

as employees, including consultants, staffing agency employees and independent
contractors, of said Outside Counsel of Record to whom it is reasonably necessary
to disclose the information for this Action;

(b)  the officers, directors, and employees (including House Counsel) of the
Receiving Party to whom disclosure is reasonably necessary for this Action;

(c)  Experts (as defined in this Order) of the Receiving Party to whom
disclosure is reasonably necessary for this Action and who have signed the
"Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)  the Court and its personnel;

(e)  court reporters and their staff;

(f)  professional jury or trial consultants, mock jurors, and Professional
Vendors to whom disclosure is reasonably necessary for this Action and who have
signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)  the author or recipient of a document containing the information or a
custodian or other person who otherwise possessed or knew the information;

(h)  during their depositions, witnesses, and attorneys for witnesses, in the
Action to whom disclosure is reasonably necessary provided: (1) the deposing party
requests that the witness sign the form attached as Exhibit A hereto; and (2) they
will not be permitted to keep any confidential information unless they sign the
"Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise
agreed by the Designating Party or ordered by the court.  Pages of transcribed
deposition testimony or exhibits to depositions that reveal Protected Material may
be separately bound by the court reporter and may not be disclosed to anyone
except as permitted under this Stipulated Protective Order; and

(i)  any mediator or settlement officer, and their supporting personnel,
mutually agreed upon by any of the parties engaged in settlement discussions.

8.      PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED
        IN OTHER LITIGATION

        If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

        (a)  promptly notify in writing the Designating Party. Such notification will include a copy of the subpoena or court order;

        (b)  promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification will include a copy of this Stipulated Protective Order; and

        (c)  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

        If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order will not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party will bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.      A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE
        PRODUCED IN THIS LITIGATION

        (a)  The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL."  Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be

construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party will:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If all Parties so agree, the Non-Party, or a Party acting on behalf of itself and the Non-Party, may seek a protective order from this Court by submitting a Stipulation signed by all Parties and a proposed order, in lieu of filing a noticed motion for a protective order pursuant to F.R.Civ.P. 26(c). Otherwise, the Non-Party must proceed by a noticed motion. If the Non-Party fails to seek a protective order from this Court within 14 days of receiving the notice and accompanying information, or such longer period of time as the Parties may agree, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party will not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party will bear the burden and expense of seeking protection in this court of its Protected Material. If all Parties so agree, the Non-Party may seek an order allocating the expense of seeking protection in this court by submitting a Stipulation signed by all Parties, in lieu of filing a

noticed motion for such an order pursuant to F.R.Civ.P. 26(c).

10.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

12.   MISCELLANEOUS

12.1   Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

- 17 -

12.2    Right to Assert Other Objections.  By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Filing Protected Material.  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.  If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record  unless otherwise instructed by the court.

13.    FINAL DISPOSITION

After the final disposition of this Action, as defined in paragraph 4, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition

1   and trial exhibits, expert reports, attorney work product, and consultant and expert

2   work product, even if such materials contain Protected Material.  Any such archival

3   copies that contain or constitute Protected Material remain subject to this Protective

4   Order as set forth in Section 4 (DURATION).

5

6   14.    Any willful violation of this Order may be punished by civil or criminal

7   contempt proceedings, financial or evidentiary sanctions, reference to disciplinary

8   authorities, or other appropriate action at the discretion of the Court.

9

10

11   IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

12   DATED: January 30, 2020          DENTONS US LLP

13
                                     /s/ Susan M. Walker
14                                   SUSAN WALKER
                                     KARL M. TILLEMAN (*Admitted Pro Hac Vice*)
15                                   DOUGLAS JANICIK (*Admitted Pro Hac Vice*)
                                     ERIN N. BASS
16
                                     Attorneys for Plaintiff The Icon at Panorama, LLC
17

18

19
     DATED: January 30, 2020          REICH, ADELL & CVITAN
20                                    A PROFESSIONAL LAW CORPORATION

21
                                      /s/Laurence S. Zakson
22                                    LAURENCE S. ZAKSON

23                                    Attorneys for Defendants Laborers International
                                      Union of North America Local 300, Ernesto
24                                    Pantoja, Sergio Rascon, Angel Olvera and Smith
                                      Engineering and Management
25

26

27

28

- 19 -

1  DATED: January 30, 2020        DECARLO & SHANLEY

2

3                                  /s/ Daniel M. Shanley
                                   DANIEL M. SHANLEY

4                                  Attorneys for Defendants Southwest Regional
                                   Council of Carpenters, Daniel Langford, Alexis
5                                  Olbrei, Peter Rodriguez, and Ron Diament

6

7
   DATED: January 30, 2020        TYSON & MENDES
8

9                                  /s/ Mitch Malachowski
                                   MITCH MALACHOWSKI
10
                                   Attorneys for Defendant Swape, LLC
11

12

13  FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

14

15  DATED:____Jan. 31, 2020_____        /s/ Judge Wilner

16                                  HON. MICHAEL R. WILNER
                                   United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [**full name**], of _____ [**full address**], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on [date] in the case of _____ [**insert case name and number**]. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action. I hereby appoint _____ [**full name**] of _____ [**full address and telephone number**] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where signed: _____

Printed name: _____

Signature: _____

1  Susan M. Walker (130748)
2  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
3  Los Angeles, California 90017-5704
   Telephone: (213) 623-9300
4  Facsimile: (213) 623-9924
   susan.walker@dentons.com
5
   Karl M. Tilleman (*Admitted Pro Hac Vice*)
6  Douglas D. Janicik (*Admitted Pro Hac Vice*)
   Erin N. Bass (325090)
7  DENTONS US LLP
   2398 East Camelback Road, Suite 850
8  Phoenix, Arizona 85016-9007
   Telephone: (602) 308-3900
9  Facsimile:  (602) 308-3914
   karl.tilleman@dentons.com
10 erin.bass@dentons.com
   doug.janicik@dentons.com
11
   Attorneys for Plaintiff The Icon at Panorama, LLC
12

13              UNITED STATES DISTRICT COURT
14              CENTRAL DISTRICT OF CALIFORNIA
15

16

17 The Icon at Panorama, LLC,          Case No.
18              Plaintiff,             2:19-cv-00181-CBM-MRW

19      vs.
                                       **STIPULATED [PROPOSED]**
20 Southwest Regional Council of       **PROTECTIVE ORDER**
   Carpenters, et al.,
21              Defendants.            ~~(MRW VERSION 4/19)~~

22                                     ☐ Check if submitted without
23                                     material modifications to MRW form

24

25

26

27

28

1

2   1.  ~~1.~~   INTRODUCTION

3       1.1   PURPOSES AND LIMITATIONS

4         Discovery in this action is likely to involve production of confidential,

5 proprietary, or private information for which special protection from public

6 disclosure and from use for any purpose other than prosecuting this litigation may

7 be warranted.  Accordingly, the parties hereby stipulate to and petition the Court to

8 enter the following Stipulated Protective Order.  The parties acknowledge that this

9 Order does not confer blanket protections on all disclosures or responses to

10 discovery and that the protection it affords from public disclosure and use extends

11 only to the limited information or items that are entitled to confidential treatment

12 under the applicable legal principles.  The parties further acknowledge, as set forth

13 in Section 12.3, below, that this Stipulated Protective Order does not entitle them

14 to file confidential information under seal; Civil Local Rule 79-5 sets forth the

15 procedures that must be followed and the standards that will be applied when a

16 party seeks permission from the court to file material under seal.

17       1.2   GOOD CAUSE STATEMENT

18 ~~[The parties must provide a statement establishing good cause for the entry of~~

19 ~~this pretrial protective order.  C.f. Oliner v. Kontrabecki, 745 F.3d 1024, 1026~~

20 ~~(9th Cir. 2014).  The parties' statement must be specific to the facts and issues~~

21 ~~of this case, including the nature of the action, the type of anticipated~~

22 ~~discovery, and the potential resulting harm should relevant materials be~~

23 ~~disclosed publicly.  The parties are advised not to rely on boilerplate~~

24 ~~assertions regarding good cause]~~

25        a.   Plaintiff Icon:  As alleged in the Second Amended Complaint, this

26 case involves a much-needed (and much-supported) mixed-use complex in

27 Panorama City that plaintiff The Icon at Panorama, LLC ("Icon") seeks to build.

28 However, the Union Defendants (Carpenters and Laborers and associated

individuals), with the help of the Union Defendants' consultants — defendants SWAPE, LLC (SWAPE) and Smith Engineering & Management, Inc. ("SEM") — have prevented Icon from building the Project by repeatedly filing bogus environmental challenges under the California Environmental Quality Act ("CEQA") unless and until Icon caves to the Unions' demands to use exclusively union labor on its projects. The Unions also used their other unlawful agreements with contractors and developers to pressure Icon to cede to their demands. The Unions used this unlawful playbook over and over again to dominate the labor market on large projects in and around Los Angeles County.

Since April 2017, the Unions have filed more than 27 challenges to the Project before 4 different government agencies. The Unions lost at every step of the administrative process; after more than two years of litigation the Unions prevailed on two narrow grounds (that the City did not follow CEQA in approving the Project) that were not raised by the Unions until the final stages of review.

Icon alleges that the Unions are attempting to and engaging in a conspiracy to monopolize the labor market in violation of § 2 of the Sherman Act; directing a group boycott in violation of § 1 of the Act; and engaging in a conspiracy to enter into an exclusive dealing arrangement in violation of § 1 of the Act. Icon further alleges that the Unions committed unfair labor practices (for which they are liable in money damages under the Labor Management Relations Act) by unlawfully inducing contractors to boycott Icon in violation of the National Labor Relations Act ("NLRA") § 8(b)(4)(i) and coercing Icon to sign a union-exclusivity agreement in violation of NLRA § 8(b)(4)(ii).

The above claims raise the following issues on which discovery will be taken:

- Defendants' CEQA challenges are objectively and subjectively baseless, and therefore, not protected by the First Amendment. Put

- 3 -

differently, they are within the "sham" exception to the *Noerr-Pennington* doctrine and are not immune from antitrust liability.

- Defendants are attempting and conspiring to monopolize the labor market for large construction projects in and adjacent to Los Angeles County. Through their anticompetitive tactics, the Unions (with the help of the other Defendants) seek to boost their own membership rolls (and thus their revenue from dues) by excluding nonunion contractors from the labor market for such construction projects in and adjacent to Los Angeles County.

- The Relevant Market is the sale of labor on large real estate projects within or adjacent to Los Angeles County, California. Such large real estate projects include (but are not limited to) those that fall within the purview of the Department of City Planning's "Major Projects Unit," which enables the Department to conduct a more thorough and focused analysis of large, complex projects that have the potential to generate the most significant effects on the City's infrastructure, local economy, and environment.

- The Unions (with the help of the other Defendants and third parties) have orchestrated a group boycott whereby participating general contractors will not work with any developer who does not agree to use exclusively union contractors.

- Through the use of "most-favored nation" and similar clauses, Defendants are attempting to and conspiring to enter into unlawful exclusive dealing arrangements with developers and contractors in the Relevant Market.

- Defendants are not entitled to invoke the statutory and nonstatutory labor exemptions to antitrust liability because they have joined with non-labor groups, are not engaged in a legitimate union activity (i.e., seeking to organize Icon's employees), and seek to coerce agreements to use exclusively union contractors outside the context of collective bargaining.

- Defendants antitrust violations have caused a "competitive injury" to the Relevant Market, including but not limited to foreclosing nonunion contractors, higher labor costs, and a shortage of low cost housing.

- The agreement Defendants sought from Icon (and obtained from other developers) violates the NLRA and would have forced Icon to stop doing business with nonunion contractors. The agreement Defendants sought does not fall within the construction industry proviso of Section 8(e) of the NLRA because there is no collective bargaining relationship at issue, particularly where Icon has no employees for the Unions to represent, and because Icon is not an "employer in the construction industry."

Additionally, Icon seeks past and future damages resulting from Defendants' anticompetitive and otherwise unlawful conduct in violation of federal antitrust statutes and the Labor Management Relations Act, 29 U.S.C. § 187. Icon contends it has suffered, continues to suffer, and will suffer harm related to increased labor costs, project delays, and defending itself against the Unions' sham litigation tactics, including but not limited to project carrying costs, lost opportunity costs, lost profits and attorneys' fees.

Based on the above claims and issues in this case, Icon anticipates that discovery of sensitive, confidential and proprietary business and financial

information will be sought, such as:  financial analyses of proposed development projects (cost, revenue, margins, etc.); budget analyses of ongoing projects; profit and loss statements; and construction plans and drawings containing confidential design information.  Disclosure of sensitive, confidential and proprietary business and financial information in civil discovery should be done only under properly fashioned protective orders.  *See, e.g., Evolv Health, LLC v. Cosway USA, Inc.,* 2017 WL 3048651, at *2 n. 2 (C.D. Cal. Apr. 21, 2017) (a protective order sufficiently addresses "concerns regarding the disclosure of proprietary information"); *EFT Holdings, Inc. v. CTX Virtual Tech., Inc.,* 2016 WL 11519280, at *3 (C.D. Cal. Nov. 3, 2016) (district courts allow "disclosure of financial information in civil discovery under properly fashioned protective orders").

DEFENDANTS' STATEMENT:  This case involves a collateral attack in federal court on successful litigation by two unions ("Union Defendants") against Plaintiff's development project for CEQA violations in Los Angeles Superior Court and an attempt to convert Union Defendants' efforts to resolve that dispute (*i.e.* settlement-related discussions) into an anti-trust (and related LMRA Section 303, 29 U.S.C. Section 187) claim.  It also involves an effort to uncover the Union Defendants' litigation and settlement strategy in connection with lawful petitioning efforts—in administrative and judicial fora, as well as associated lobbying of municipal officials—in an effort to impose damages and otherwise deter or preclude the Union Defendants from engaging in such efforts.  As such, whether this issue is decided after preliminary, limited discovery in which the applicability of Noerr-Pennington immunity to the dispute is--along with potentially dispositive issues related to whether any alleged harm/injury/damages to Plaintiff arose solely from this single proceeding--the key threshold legal issue (*see Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd. of Culinary Workers,* 542 F.2d 1076, 1082 (9th Cir. 1976), or after a broader  range of discovery, it is clear that facts

Plaintiff seeks to adduce relate to the Union Defendants' organizing, litigation and strategies, including their political and other policy goals and their methodologies for conducting their efforts to achieve them. These issues necessarily implicate Union and other Defendants' trade secrets, attorney-client privilege, work product privilege and other data which derives its value and efficacy from its non-public nature, including the contents of the Union Defendants' agreements with other entities (which may be of value to their competitors). Moreover, the damages and injury issues Plaintiff must prove also likely implicate cost and other data related to Plaintiff's development efforts that also derives its value from its non-public nature.

The extensiveness of the need for a protective order here is further illustrated by the following disputed issues:

• whether the agreement sought was within the construction industry proviso of § 8(e) of the NLRA, 29 U.S.C.S. § 158(e), which turns in part on decisions by the other party to the agreement with respect to its intended involvement in the retention of workers and other labor relations questions—matters that most employers would not want to make available to their competitors and, possibly, might want to withhold from potential vendors in order to obtain more competitive bids or other financial advantage;

• the scope of Plaintiff's injury, which turns on Plaintiff's cost and other estimates and whether Plaintiff can show that an injury was incurred "by reason of" the alleged § 8(b)(4) violation;

• what the Union Defendants' objectives are and how the Union Defendants and their alleged agents went about trying to achieve them;

• the extent, if any, that the Union Defendants' actual objectives correspond to the anti-competitive scheme alleged and whether the nature and scope of those objectives is a proper predicate for anti-trust and labor law liability

- 7 -

or, instead, constitute fully lawful union objectives legally insulated from the imposition of such liability;

• whether the Union Defendants' activities are the pursuit of a legitimate labor objective immune from anti-trust scrutiny and, if not, whether they are justified by a rule of reason, which, in itself, turns on internal business decisions and calculations made by the Union Defendants; and

• whether the allegedly anti-competitive effects posed a dangerous probability of obtaining a monopoly in the relevant market and constitute a cognizable anti-trust injury.

Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the Parties are entitled to keep confidential, to ensure that the Parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and to serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the Parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner and there is good cause why it should not be part of the public record of this case.

2. <u>DEFINITIONS</u>

2.1   <u>Action</u>: [this pending federal law suit]. [*Option: consolidated or related actions.] *The Icon at Panorama, LLC v. Southwest Regional Council of Carpenters, et al.*, Case No. 2:19-CV-181-CBM (MRW), pending in the U.S. District Court for the Central District of California.

2.2   <u>Challenging Party</u>:  a Party or Non-Party that challenges the designation of information or items under this Order.

~~I.~~     2.3    "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Case Statement. ~~[Note: any request for a two-tiered, attorney-eyes-only protective order that designates certain material as "Highly Confidential" will require a separate and detailed showing of need.]~~

~~II.~~     2.4    Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

~~III.~~     2.5    Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

~~IV.~~     2.6    Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

~~V.~~     2.7    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

~~VI.~~     2.8    House Counsel: attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

~~VII.~~     2.9    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

~~VIII.~~     2.10    Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party, and includes support staff.

- 9 -

IX.   2.11   Party:  any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

X.   2.12   Producing Party:  a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

XI.   2.13   Professional Vendors:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

XII.   2.14   Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

XIII.   2.15   Receiving Party:  a Party that receives Disclosure or Discovery Material from a Producing Party.

3.   SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel, including during the course of depositions and in correspondence between/among counsel, that might reveal Protected Material.

Any use of Protected Material at trial will be governed by the orders of the trial judge.  This Order does not govern the use of Protected Material at trial.

4.   DURATION

~~[POSSIBLE PARAGRAPH] Once a case proceeds to trial, all of the information that was designated as confidential or maintained pursuant to this protective order becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial. See Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1180-81 (9th Cir. 2006) (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record). Accordingly, the terms of this protective order do not extend beyond the commencement of the trial.~~

~~[ALTERNATIVE POSSIBLE PARAGRAPH]~~ Even after final disposition of this litigation, the confidentiality obligations imposed by this Order will remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition will be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.    DESIGNATING PROTECTED MATERIAL

~~XIV.~~ 5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept

unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

~~XV.~~ 5.2    Manner and Timing of Designations.  Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

~~XVI.~~ (a)  for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material.  If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection will be deemed "CONFIDENTIAL."  After the inspecting Party has

- 12 -

identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

XVII. (b)  for testimony given in depositions that the Designating Party identify the Disclosure or Discovery Material to be designated as Confidential (i) on the record, before the close of the deposition all protected testimony during the deposition, or (ii) within thirty (30) calendar days of the receipt of the official transcript of the deposition, by providing the other Parties written notice of the page and line numbers of the transcript to be designated as Confidential .

XVIII.       (c)  for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information  is stored the legend "CONFIDENTIAL."  If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, will identify the protected portion(s).

XIX. 5.3    Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material.  Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.      CHALLENGING CONFIDENTIALITY DESIGNATIONS

- 13 -

~~XX.~~ 6.1     <u>Timing of Challenges</u>.  Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

~~XXI.~~ 6.2     <u>Meet and Confer</u>.  The Challenging Party will initiate the dispute resolution process (and, if necessary, file a discovery motion) under Local Rule 37.1 et seq.

6.3     <u>The purpose of the meet and confer process is to resolve disputes amicably.  Accordingly, this Section 6.3 is not to be used as a weapon to intimidate any party from making a good faith argument in conformity with applicable legal and ethical standards.</u>  The burden of persuasion in any such challenge proceeding will be on the Designating Party.  Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions.  Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties will continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7.     <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

~~XXII.~~ 7.1     <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

~~XXIII.~~ Protected Material must be stored and maintained by a Receiving

Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

~~XXIV.~~   7.2   <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

~~XXV.~~ (a)  the Receiving Party's Outside Counsel of Record in this Action, as well as employees<u>, including consultants, staffing agency employees and independent contractors,</u> of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

~~XXVI.~~   (b)  the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

~~XXVII.~~   (c)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

~~XXVIII.~~   (d)  the Court and its personnel;

~~XXIX.~~   (e)  court reporters and their staff;

~~XXX.~~ (f)  professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

~~XXXI.~~   (g)  the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

~~XXXII.~~   (h)  during their depositions, witnesses , and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1)

- 15 -

the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

~~XXXIII.~~ (i)  any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

8.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

~~XXXIV.~~ If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

~~XXXV.~~ (a)  promptly notify in writing the Designating Party. Such notification will include a copy of the subpoena or court order;

~~XXXVI.~~ (b)  promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification will include a copy of this Stipulated Protective Order; and

~~XXXVII.~~ (c)  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

~~XXXVIII.~~ If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order will not produce any information designated in this action as "CONFIDENTIAL" before a determination by the

court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party will bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

XXXIX.    (a)  The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

XL.    (b)  In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party will:

XLI.    (1)  promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

XLII.    (2)  promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

XLIII.    (3)  make the information requested available for inspection by the Non-Party, if requested.

XLIV.    (c)  If all Parties so agree, the Non-Party, or a Party acting on

- 17 -

behalf of itself and the Non-Party, may seek a protective order from this Court by submitting a Stipulation signed by all Parties and a proposed order, in lieu of filing a noticed motion for a protective order pursuant to F.R.Civ.P. 26(c).  Otherwise, the Non-Party must proceed by a noticed motion. If the Non-Party fails to seek a protective order from this ~~court~~Court within 14 days of receiving the notice and accompanying information, or such longer period of time as the Parties may agree, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely seeks a protective order, the Receiving Party will not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.   Absent a court order to the contrary, the Non-Party will bear the burden and expense of seeking protection in this court of its Protected Material.  If all Parties so agree, the Non-Party may seek an order allocating the expense of seeking protection in this court by submitting a Stipulation signed by all Parties, in lieu of filing a noticed motion for such an order pursuant to F.R.Civ.P. 26(c).

10.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

~~XLV.~~ If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE
      PROTECTED MATERIAL

~~XLVI.~~        When a Producing Party gives notice to Receiving Parties that
certain inadvertently produced material is subject to a claim of privilege or other
protection, the obligations of the Receiving Parties are those set forth in Federal
Rule of Civil Procedure 26(b)(5)(B).  This provision is not intended to modify
whatever procedure may be established in an e-discovery order that provides for
production without prior privilege review.  Pursuant to Federal Rule of Evidence
502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure
of a communication or information covered by the attorney-client privilege or work
product protection, the parties may incorporate their agreement in the stipulated
protective order submitted to the court.

12.   MISCELLANEOUS

~~XLVII.~~        12.1   Right to Further Relief.  Nothing in this Order abridges
the right of any person to seek its modification by the Court in the future.

      12.2   Right to Assert Other Objections.  By stipulating to the entry of this
Protective Order no Party waives any right it otherwise would have to object to
disclosing or producing any information or item on any ground not addressed in
this Stipulated Protective Order. Similarly, no Party waives any right to object on
any ground to use in evidence of any of the material covered by this Protective
Order.

      ~~XLVIII.~~        12.3   Filing Protected Material.  A Party that seeks to file under
seal any Protected Material must comply with Civil Local Rule 79-5. Protected
Material may only be filed under seal pursuant to a court order authorizing the
sealing of the specific Protected Material at issue.  If a Party's request to file

- 19 -

1  Protected Material under seal is denied by the court, then the Receiving Party may
2  file the information in the public record  unless otherwise instructed by the court.
3

4  13.    FINAL DISPOSITION
5       XLIX.      After the final disposition of this Action, as defined in
6  paragraph 4, within 60 days of a written request by the Designating Party, each
7  Receiving Party must return all Protected Material to the Producing Party or
8  destroy such material.  As used in this subdivision, "all Protected Material"
9  includes all copies, abstracts, compilations, summaries, and any other format
10  reproducing or capturing any of the Protected Material.  Whether the Protected
11  Material is returned or destroyed, the Receiving Party must submit a written
12  certification to the Producing Party (and, if not the same person or entity, to the
13  Designating Party) by the 60 day deadline that (1) identifies (by category, where
14  appropriate) all the Protected Material that was returned or destroyed and (2)
15  affirms that the Receiving Party has not retained any copies, abstracts,
16  compilations, summaries or any other format reproducing or capturing any of the
17  Protected Material. Notwithstanding this provision, Counsel are entitled to retain
18  an archival copy of all pleadings, motion papers, trial, deposition, and hearing
19  transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert
20  reports, attorney work product, and consultant and expert work product, even if
21  such materials contain Protected Material.  Any such archival copies that contain or
22  constitute Protected Material remain subject to this Protective Order as set forth in
23  Section 4 (DURATION).
24
25
26
27
28

- 20 -

14.     Any willful violation of this Order may be punished by civil or criminal

contempt proceedings, financial or evidentiary sanctions, reference to disciplinary

authorities, or other appropriate action at the discretion of the Court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: _____, 2020

DENTONS US LLP

                                    /s/
                                    SUSAN WALKER
                                    KARL M. TILLEMAN (*Admitted Pro Hac Vice*)
                                    DOUGLAS JANICIK (*Admitted Pro Hac Vice*)
                                    ERIN N. BASS

                                    Attorneys for Plaintiff The Icon at Panorama, LLC

DATED: _____, 2020     REICH, ADELL & CVITAN
                                    A PROFESSIONAL LAW CORPORATION

                                    /s/
                                    LAURENCE S. ZAKSON

                                    Attorneys for Defendants Laborers International
                                    Union of North America Local 300, Ernesto
                                    Pantoja, Sergio Rascon, Angel Olvera and Smith
                                    Engineering and Management

DATED: _____, 2020     DECARLO & SHANLEY

                                    /s/
                                    DANIEL M. SHANLEY

- 21 -

1

2

3

                                  Attorneys for Defendants Southwest Regional
Council of Carpenters, Daniel Langford, Alexis
Olbrei, Peter Rodriguez, and Ron Diament

4

5

DATED:_____, 2020   TYSON & MENDES

6

7

                                 Attorneys for Plaintiff /s/
MITCH MALACHOWSKI

8   DATED:_____

9                                     Attorneys for Defendant Swape, LLC

10

11   FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

12

13   DATED:_____

14   _____

15                                 HON. MICHAEL R. WILNER
United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [**full name**], of _____ [**full
address**], declare under penalty of perjury that I have read in its entirety and
understand the Stipulated Protective Order that was issued by the United States
District Court for the Central District of California on [date] in the case of
_____ [**insert case name and number**]. I agree to comply with and to be
bound by all the terms of this Stipulated Protective Order and I understand and
acknowledge that failure to so comply could expose me to sanctions and
punishment in the nature of contempt. I solemnly promise that I will not disclose in
any manner any information or item that is subject to this Stipulated Protective
Order to any person or entity except in strict compliance with the provisions of this
Order.

I further agree to submit to the jurisdiction of the United States District
Court for the Central District of California for the purpose of enforcing the terms
of this Stipulated Protective Order, even if such enforcement proceedings occur
after termination of this action.  I hereby appoint _____
[**full name**] of _____ [**full address and
telephone number**] as my California agent for service of process in connection
with this action or any proceedings related to enforcement of this Stipulated
Protective Order.

Date: _____

City and State where signed: _____

Printed name: _____

EXHIBIT A

1

Signature: _____

2

3

4      144112001\V-1

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28