EXHIBIT 4

Fi___ COPY
Non-Complying Submission



LOZEAU DRURY LLP

T 510.836.4200     410 12th Street, Suite 250     www.lozeaudrury.com
F 510.836.4205     Oakland, Ca 94607             rebecca@lozeaudrury.com

RECEIVED
CITY OF LOS ANGELES

APR 2 6 2018

CITY PLANNING DEPT.
AREA PLANNING COMMISSION

April 23, 2018

*By E-mail, Overnight Mail and Hand Delivery (20 copies)*

President David Ambroz and
Honorable Member of the
City of Los Angeles Planning Commission
c/o Commission Executive Assistant
200 North Spring Street, Room 532
Los Angeles, CA 90012
cpc@lacity.org

Milena Zasadzien
Los Angeles Department of City Planning
200 N. Spring Street, Room 750
Los Angeles, CA 90012
Email: melina.zasadzien@lacity.org

**Re:   Comments on Environmental Impact Report for the ICON at
Panorama Project, 14665 Roscoe Blvd., Los Angeles, CA
(Case No. ENV-2016-1061-EIR, SCH No. 2016081031)**

Honorable Members of the Planning Commission and Ms. Zasadzien:

I am writing on behalf of the Southwest Regional Council of Carpenters
("SWRCC") and Laborers International Union of North America Local Union 300
("LIUNA") (collectively, "Commenters") concerning the Environmental Impact Report
("FEIR") for the ICON at Panorama Project (Case No. ENV-2016-1061-EIR, SCH No.
2016081031) (the "Project"). This letter supplements our comments on the Draft EIR,
the Revised Draft EIR, and the Final EIR for the Project, which comments are
incorporated herein by reference.

**A. The 623-Unit Project Approved by the Advisory Agency Has Never Been
Analyzed in Any CEQA Document, and is 50% Larger than the 422-Unit
Project Analyzed in the DEIR.  A Supplemental EIR is Required.**

On March 20, 2018, the Advisory Agency ("Agency") significantly revised and
expanded the proposed Project.  In particular, the Agency increased the number of
residential units from a maximum of 422 residential units to 623 residential units.  This
increase of 201 units, or almost 50%, will dramatically increase almost all of the

CPC-2016-2118-VZC-0212

ICON at Panorama
CEQA FEIR Comment
April 23, 2018
Page 2

Project's environmental impacts, including air quality, traffic, greenhouse gases, public
services (including an increased demand for schools, parks, recreation, police, fire,
sewage treatment, etc.), and all others.  Nevertheless, the Agency failed to prepare a
supplemental recirculated draft environmental impact report (SRDEIR) to analyze the
Project expansion.

The current 623-unit proposal is nowhere to be found in the Draft EIR ("DEIR") or
even the Revised Draft EIR (RDEIR).  In fact, the DEIR states clearly that the Project
proposal is for a maximum of 422 residential units.   (DEIR p. II-9).  All analysis in the
DEIR and RDEIR is conducted for a Project with 422-units, including traffic, air pollution,
greenhouse gases, public services (police, fire, schools, parks, sewage treatment,
public transit, etc.).

The only alternatives analyzed in the DEIR or the RDEIR are smaller than the
proposed 422-unit proposed Project.  The DEIR analyzes a 283-unit alternative
(Alternative 2), a 350-unit alternative (Alternative 4) and a zero-unit alternative
(Alternative 3).  The RDEIR contained no additional alternatives.  In other words, all
alternatives in the DEIR and RDEIR are smaller than the proposed Project, and so
would have reduced environmental impacts compared to the proposed Project.

Only in the Final EIR ("FEIR") does the City for the first time propose a new
Alternative 5, having 675 residential units.  (FEIR p. II-6).  Alternative 5 would be 59%
larger than the proposed Project.  As such it would have approximately 59% greater
impacts on public services, such as police, fire, schools, parks, sewage treatment,
public transit, etc.  It would also have roughly 59% greater traffic, greenhouse gases, air
pollution, and other impacts.

Ultimately, the Advisory Agency decided to select an alternative that is not
studied in *any* CEQA document, not even the FEIR – namely an alternative having 623
residential units – 48% larger than the proposed Project.  This alternative will have
approximately 48% greater impacts on social services than the proposed 422 unit
Project (including police, fire, schools, sewage treatment, parks and recreation, public
transit, etc.).  It will also have approximately 48% greater traffic, greenhouse gases, air
pollution and other impacts.  However, none of this have been studied in *any* CEQA
document.

The City's EIR flatly violates the mandates of CEQA since no CEQA document
has ever studied the project now proposed to be adopted by the City – a 623-unit
residential development.  Neither the public, nor decision-makers, nor experts have had
an opportunity to review and comment on that project and to have the City respond to
those comments.  Even if the 675-unit Alternative 5 were deemed to be sufficiently
similar to the proposed 623-unit project (which it is not), Alternative 5 did not appear
until the Final EIR.

CPC-2016-2118-VZC-0213

005279

ICON0005279

ICON at Panorama
CEQA FEIR Comment
April 23, 2018
Page 3

        The City has made clear that it will not consider or respond to comments on the
Final EIR.  The City's public notice states that it is not required to hold hearings on the
Final EIR, and will not consider comments on the Final EIR.  Thus, the City has
thoroughly thwarted the public review and comment process required by CEQA by
sneaking the ultimate project into the Final EIR without any opportunity for public
review, comment and response to comments.

        Not surprisingly, CEQA flatly prohibits this type of "bait-and-switch."  A lead
agency may not conduct CEQA review on a project, and then at the last minute, sneak
a larger project into the Final EIR, thereby avoiding public review and comment.

        Where the agency adds "significant new information" to an EIR prior to final EIR
certification, the lead agency must issue new notice and must recirculate the revised
EIR for additional commentary and consultation.   The court has explained that after
significant changes to an EIR, the revised environmental document must be subjected
to the same "critical evaluation that occurs in the draft stage," so that the public is not
denied "an opportunity to test, assess, and evaluate the data and make an informed
judgment as to the validity of the conclusion to be drawn therefrom." (*Save Our
Peninsula Committee v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99,
131; *Pres. Action Council v. City of San Jose* (2006) 141 Cal. App. 4th 1336, 1357–58,
46 Cal. Rptr. 3d 902, 918).  Pursuant to CEQA Guidelines Sections 15087 and 15086,
the lead agency must publish a new "notice of availability" and must consult with all
responsible agencies, trust agencies, and other agencies and governmental bodies with
authority over the resources at issue in the project.  The agency should also assume
that all other notice and consultation requirements required for DEIRs apply as well.

        CEQA Guidelines Section 15088.5 sets the standard for requiring recirculation
prior to certification of an EIR.  Recirculation of an EIR is required when "significant new
information is added to the EIR after public notice is given of the availability of the draft
EIR for public review under Section 15087 but before certification [of the Final EIR]."
New information added to an EIR is significant when "the EIR is changed in a way that
deprives the public of a meaningful opportunity to comment upon a substantial adverse
environmental effect of the project or a feasible way to mitigate or avoid such an effect
(including a feasible project alternative) that the project's proponents have declined to
implement."  The Guidelines require recirculation when:

    (1) A new significant environmental impact would result from the project or from a
            new mitigation measure proposed to be implemented.
    (2) A substantial increase in the severity of an environmental impact would result
            unless mitigation measures are adopted that reduce the impact to a level of
            insignificance.
    (3) A feasible project alternative or mitigation measure considerably different from

CPC-2016-2118-VZC-0214

**005280**

ICON0005280

ICON at Panorama
CEQA FEIR Comment
April 23, 2018
Page 4

others previously analyzed would clearly lessen the environmental impacts of
the project, but the project's proponents decline to adopt it.
(4) The draft EIR was so fundamentally and basically inadequate and conclusory in
nature that meaningful public review and comment were precluded. (*Mountain
Lion Coalition v. Fish and Game Com.* (1989) 214 Cal.App.3d 1043)

The California Supreme Court has stated that:

the addition of new information to an EIR after the close of the public comment
period is not "significant" unless the EIR is changed in a way that (i) deprives the
public of a meaningful opportunity to comment upon a substantial adverse
environmental effect of the project or a feasible way to mitigate or avoid such an
effect (including a feasible project alternative) that the project's proponents have
declined to implement.

*Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6
Cal.4th 1112, 1129.   Among the codified exceptions to this rule is where the draft EIR is
so fundamentally and basically inadequate and conclusory in nature that meaningful
public review and comment were precluded:

(a) A lead agency is required to recirculate an EIR when significant new
information is added to the EIR after public notice is given of the availability of the
draft EIR for public review under Section 15087 but before certification. As used
in this section, the term "information" can include changes in the project or
environmental setting as well as additional data or other information. New
information added to an EIR is not "significant" unless the EIR is changed in a
way that deprives the public of a meaningful opportunity to comment upon a
substantial adverse environmental effect of the project or a feasible way to
mitigate or avoid such an effect (including a feasible project alternative) that the
project's proponents have declined to implement. "Significant new information"
requiring recirculation include, for example, a disclosure showing that:

...

(4) The draft EIR was so fundamentally and basically inadequate and conclusory
in nature that meaningful public review and comment were precluded. (*Mountain
Lion Coalition v. Fish and Game Com.* (1989) 214 Cal.App.3d 1043.)

(CEQA Guidelines § 15088.5(a), (a)(4).)

In this case, the DEIR was "so fundamentally and basically inadequate and
conclusory in nature that meaningful public review and comment were precluded."  The
public could not meaningfully comment on the 623-unit Project because the DEIR

CPC-2016-2118-VZC-0215

**005281**

ICON0005281

ICON at Panorama
CEQA FEIR Comment
April 23, 2018
Page 5

plainly stated that the Project would have a maximum of 422-units and that any alternatives would be *smaller*, not larger.  There was no suggestion of a larger project until the Final EIR, which is shielded from public review and comment.

In *Mountain Lion Coalition v. Fish & Game Com.* (1989) 214 Cal.App.3d 1043 ("MLC"), the court required recirculation of an FEIR that failed to contain a cumulative impacts analysis for which the trial court had issued a writ of mandate.  The case arose from a challenge to Fish and Game's environmental impact document ("EID") to reinstate a mountain lion hunting season in 1987.  Environmental groups challenged that the EID did not adequately analyze cumulative impacts.  The trial court agreed, and issued a peremptory writ, suspending the hunting season until the cumulative impacts analysis was complete.  In 1988, Fish and Game produced a second EID and a final EID for the subsequent hunting season, but did not include a cumulative impacts report, as required by the trial court.  Here, the appellate court found that this violated the spirit of CEQA, because the draft EID overlooked the significant environmental issues that had been brought to appellants' attention through the 1987 commentary process and the writ of mandate.  Id. at 1051.  With regard to the failure to include this information in the final EID, however, the court further noted that:

> The cumulative impact analysis contained in the final EID has never been subjected to public review and criticism. If we were to allow the deficient analysis in the draft EID to be bolstered by a document that was never circulated for public comment, we would not only be allowing appellants to follow a procedure which deviated substantially from the terms of the writ [of mandate issued by the trial court], but we would be subverting the important public purposes of CEQA. Only at the stage when the draft EID is circulated can the public and outside agencies have the opportunity to analyze a proposal and submit comment. No such right exists upon issuance of a final EID unless the project is substantially modified or new information becomes available. (See Cal.Code Regs., tit. 14, § 15162.) To evaluate the draft EID in conjunction with the final EID in this case would only countenance the practice of releasing a report for public consumption that hedges on important environmental issues while deferring a more detailed analysis to the final EID that is insulated from public review.

Id. at 1052.

Similarly, in *Friends of the Old Trees v. Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383, 1402, the court stated:

> In pursuing an approach that "releases a report for public consumption that hedges on important environmental considerations while deferring a more detailed analysis to [a report] that is insulated from public review" the Department pursued a path condemned as inconsistent with the purpose of CEQA in this

CPC-2016-2118-VZC-0216

005282

ICON0005282

ICON at Panorama
CEQA FEIR Comment
April 23, 2018
Page 6

division's opinion in *Mountain Lion Coalition v. California Fish & Game Com.*
(1989) 214 Cal.App.3d 1043, 1052. Certainly, the Department cannot expect the
public's access to information after-the-fact to substitute for the opportunity to
influence the Department's decisions before they are made.

As in the *Mountain Lion* case, by placing Alternative 5 in the FEIR, the 623-unit
project now proposed has "never been subjected to public review and criticism." There
is no right for the public to comment on the FEIR, and no duty of the City to respond to
comments on the FEIR. The City has "insulated the project from public review" by
unveiling it for the first time in the FEIR. As such, the City has subverted the
procedures required by CEQA and deprived the public of any meaningful opportunity to
review and comment upon the project proposed to be adopted.

A supplemental recirculated draft EIR ("SRDEIR") is required. The SRDEIR must
analyze the project now being proposed for adoption – a 623-unit project. The public
must be allowed a full opportunity to review and comment on the SRDEIR, and the City
must respond to all comments submitted in the SRDEIR. If the City proceeds to
approve the current 623-unit Project, which has never been analyzed in any CEQA
document (even the FEIR), it will be in plain violation of CEQA.

## B. ALTERNATIVES

The EIR admits that the Project will have significant unmitigated impacts,
including traffic impacts. As such, it is legally required for the City to select the
environmentally superior alternative that achieves Project objectives, while reducing
impacts.

Traffic engineer Daniel Smith, PE, concludes that traffic impacts would be
significantly reduced by adoption of the Reduced Size Alternative. The FEIR admits
that the Reduced Size Alternative meets most Project objectives. (FEIR II-147). It also
admits that the RSA reduces Project impacts, and is feasible. (FEIR. II-135).
Nevertheless, the FEIR does not recommend adoption of the Reduced Size Alternative.
As such the FEIR is legally inadequate.

Rather that adopting the Reduced Size Alternative, the Advisory Agency has
done exactly the opposite. It has greatly expanded the size of the Project to 623-units.
This will increase the Project's traffic impacts, as well as its public service impacts
including the need for police, fire, schools, parks, sewage treatment, etc. There can be
no question that the originally proposed 422-unit Project would have reduced impacts
compared to the 623-unit Project now proposed to be adopted. The 422-unit Project is
clearly feasible, would achieve Project objectives, and would reduce environmental
impacts. As such, the City violates CEQA by failing to adopt the originally proposed
422-unit Project and instead adopting a much more impactful 623-unit Project.

CPC-2016-2118-VZC-0217

**005283**

ICON0005283

ICON at Panorama
CEQA FEIR Comment
April 23, 2018
Page 7

Where a project is found to have significant adverse impacts, CEQA requires the adoption of a feasible alternative that meets most of the project objectives but results in fewer significant impacts. (*Citizens of Goleta Valley v. Bd. of Supervisors* (1988) 197 Cal.App.3d 1167, 1180-81; *see also, Burger v. County of Mendocino* (1975) 45 Cal.App.3d 322) A "feasible" alternative is one that is capable of being accomplished in a successful manner within a reasonable period of time, taking into account economic, environmental, legal, social and technological factors.  (Pub. Res. Code § 21061.1; 14 Cal. Code Regs. § 15364)

CEQA requires that an EIR provide a discussion of project alternatives that allows meaningful analysis.[1] An EIR shall describe a range of reasonable alternatives to the project, or to the location of the project, which would feasibly attain most of the basic objectives of the project but would avoid or substantially lessen any of the significant effects of the project, and evaluate the comparative merits of the alternatives.[2] The purpose of the discussion of alternatives is both to support the decision makers and to inform public participation. Thus, "[a]n EIR's discussion of alternatives must contain analysis sufficient to allow informed decision making."[3] An EIR must also include "detail sufficient to enable those who did not participate in its preparation to understand and to consider meaningfully the issues raised by the proposed project."[4]

The DEIR in this case fails to contain an adequate alternatives analysis because it fails even to mention the alternative now proposed for adoption – a 623-unit Project. An alternatives analysis simply cannot be legally adequate if it fails even to mention the alternative adopted by the agency.

The analysis of project alternatives must contain a quantitative assessment of the impacts of the alternatives. In *Kings County Farm Bureau v. City of Hanford* (1990) 221 Cal.App.3d 692, 733-73, the court found the EIR's discussion of a natural gas alternative to a coal-fired power plant project to be inadequate because it lacked necessary "quantitative, comparative analysis" of air emissions and water use. The court concluded that absent such data, the significance of the elimination of this impact was unknown.

The lead agency is required to select the environmentally preferable alternative unless it is infeasible. As explained by the Supreme Court, an environmentally superior alternative may not be rejected simply because it is more expensive or less profitable:

---

[1] *Laurel Heights I,* supra, 47 Cal.3d at 403.

[2] CEQA Guidelines § 15125.6.

[3] *Laurel Heights I*, supra, 47 Cal.3d at 404.

[4] *Id.* at 405.

CPC-2016-2118-VZC-0218

005284

ICON0005284

ICON at Panorama
CEQA FEIR Comment
April 23, 2018
Page 8

The fact that an alternative may be more expensive or less profitable is not sufficient to show that the alternative is financially infeasible. What is required is evidence that the additional costs or lost profitability are sufficiently severe as to render it impractical to proceed with the project.

(*Citizens of Goleta Valley v. Bd. of Supervisors* (1988) 197 Cal.App.3d 1167, 1180-81; *see also, Burger v. County of Mendocino* (1975) 45 Cal.App.3d 322)

The FEIR admits that Reduced Size Alternative meets project objectives. (FEIR II-147). Therefore it must be selected. Rather than selecting the Reduced Size Alternative, the City now proposes to adopt an alternative that is not even mentioned in the DEIR or RDEIR – a 623-unit Project. This alternative will exacerbate Project impacts, rather than reduce them. As such, the City has failed to comply with the minimum requirements of CEQA.

### C. CONCLUSION

For the foregoing reasons, and the reasons set forth in prior comments on the Project (including comments filed by other entities), the EIR fails to meet the requirements of CEQA. We urge the Planning Commission to refuse to certify the EIR, and require preparation of a Supplemental Revised Draft EIR that addresses the deficiencies identified in this and other comment letters. Thank you for considering our comments and please include this letter in the administrative record for this matter.

Sincerely,

Richard Drury
Counsel for Southwest Regional Council of Carpenters and Laborers International Union of North America Local 300

CPC-2016-2118-VZC-0219

005285

ICON0005285