EXHIBIT 6

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 01 2018

Sherri R. Carter, Executive Officer/Clerk
By: Glorietta Robinson, Deputy

1  RICHARD DRURY (SBN 163559)
2  REBECA L. DAVIS (SBN 271662)
   LOZEAU | DRURY LLP
3  410 12th Street, Suite 250
   Oakland, CA 94607
4  Telephone: (510) 836-4200
   E-mail: richard@lozeaudrury.com
5          rebecca@lozeaudrury.com
6  Attorneys for Petitioners
   SOUTHWEST REGIONAL COUNCIL OF CARPENTERS
7  AND LABORERS INTERNATIONAL UNION OF NORTH
   AMERICA LOCAL 300

8                                              BS 175188

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF LOS ANGELES

11                                       BS 175188

12  SOUTHWEST REGIONAL COUNCIL OF        CASE NO.:
    CARPENTERS; and LABORERS
13  INTERNATIONAL UNION OF NORTH         VERIFIED PETITION FOR WRIT OF
    AMERICA LOCAL 300;                   MANDATE
14
        Petitioners,                     (Code Civ. Proc., §§ 1085, 1094.5;
15                                        Pub. Resources Code, §§ 21000 et seq. (CEQA)
        v.
16                                        ACTION BASED ON CALIFORNIA
    CITY OF LOS ANGELES; LOS ANGELES     ENVIRONMENTAL QUALITY ACT
17  CITY COUNCIL; and LOS ANGELES
    DEPARTMENT OF CITY PLANNING,
18
        Respondents,
19
    THE ICON AT PANORAMA, LLC,
20
        Real Party in Interest.
21

22

23

24

25

26

27

28

**INTRODUCTION**

1.     Petitioners SOUTHWEST REGIONAL COUNCIL OF CARPENTERS and LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL 300 (collectively, "Petitioners") petition this court for a Writ of Mandate ("Petition"), directed to Respondents CITY OF LOS ANGELES, LOS ANGELES CITY COUNCIL and LOS ANGELES DEPARTMENT OF CITY PLANNING ("Respondents" or the "City") and Real Party in Interest ICON AT PANORAMA, LLC ("Real Party"). Petitioners challenge Respondent's August 29, 2018 decisions, including its: (1) certification of the Final environmental impact report ("EIR") for the ICON at Panorama mixed-use development project; (2) adoption of related findings, statement of overriding considerations, and mitigation monitoring plan; (3) approval of the ICON at Panorama project including entitlements of the Project under VTT-74315 and CPC-2016-2118-VZC-MCUP-CU-SPR-CDO-DD; and (4) denying the appeal of Petitioners (collectively, the "Project").

2.     Because the EIR violates several of CEQA's requirements, the approvals that are reliant upon it must be overturned. Therefore, Petitioners respectfully request that the Court direct Respondents to set aside the EIR certification and project approvals.

**PARTIES**

3.     Petitioner Southwest Regional Council of Carpenters ("SWRCC") is a labor organization representing 50,000 members, thousands of whom are residents of the City and County of Los Angeles. The SWRCC's interests are not adequately represented by other parties. SWRCC's purposes include advocating on behalf of its members to ensure safe workplace environments; working to protect recreational opportunities for its members to improve their quality of life when off the job; advocating to assure its members access to safe, healthful, productive, and aesthetically and culturally pleasing surroundings on and off the job.

4.     Petitioner Laborers International Union of North America Local 300 ("LIUNA"), is a labor organization representing thousands of employees who are residents of the City and County of Los Angeles. LIUNA's purposes include advocating on behalf of its members to ensure safe workplace environments; working to protect recreational opportunities for its members to improve their quality of life when off the job; advocating to assure its members access to safe, healthful, productive, and

1    aesthetically and culturally pleasing surroundings on and off the job; promoting environmentally

2    sustainable businesses and development projects on behalf of its members, including providing

3    comments raising environmental concerns and benefits on proposed development projects; advocating

4    for changes to proposed development projects that will help to achieve a balance between employment,

5    the human population, and resource use to permit high standards of living and a wide sharing of life's

6    amenities by its members as well as the general public; advocating for steps to preserve important

7    historic, cultural, and natural aspects of our national heritage, and to maintain, wherever possible, an

8    environment that supports diversity and variety of individual choice; advocating on behalf of its

9    members for programs, policies, and development projects that promote not only good jobs but also a

10   healthy natural environment and working environment, including advocating for changes to proposed

11   projects and policies that, if adopted, would reduce air, soil, and water pollution, minimize harm to

12   wildlife, conserve wild places, reduce traffic congestion, reduce global warming impacts, and assure

13   compliance with applicable land use ordinances; and working to attain the widest range of beneficial

14   uses of the environment without degradation, risk to health or safety, or other undesirable or unintended

15   consequences.

16        5.    LIUNA's and SWRCC's ("Petitioners") members who live and work near the Project

17   have several legally cognizable interests in the Project and will be negatively affected by the Project's

18   adverse environmental impacts and improper approval. The interests of Petitioners and their members

19   are unique and will be directly impacted by the Project. Petitioners bring this action on behalf of

20   themselves, their members, and in the public interest. Petitioners and their members have a direct and

21   beneficial interest in Respondents' compliance with laws bearing upon approval of the Project. These

22   interests will be directly and adversely affected by the Project, which violates provisions of law as set

23   forth in this Petition and would cause substantial harm to the natural environment and the quality of life

24   in the surrounding community. The maintenance and prosecution of this action will confer a substantial

25   benefit on the public by protecting the public from the procedural, environmental, and other harms

26   alleged herein.

27        6.    Respondent City of Los Angeles is a municipal corporation in whose jurisdiction the

28   Project will be located.

7.      Respondent the Los Angeles City Council ("City Council") serves as the legislative body of the City of Los Angeles for the planning and provision of services related to public needs and the requirements of state laws.  As the elected representatives of the people of the City of Los Angeles, the members of the City Council establish overall City priorities and set policy.  Respondent City Council is the governing body of the City, and is ultimately responsible for reviewing and approving or denying the Project.  The City Council voted on August 29, 2018, to approve the Project, including to certify the EIR and adopt a Statement of Overriding Considerations.

8.      Respondent Los Angeles Department of City Planning is the "lead agency" for the Project for purposes of Public Resources Code §21067, and has principal responsibility for conducting environmental review for the Project and taking other actions necessary to comply with CEQA.

9.      Real Party in Interest The ICON and Panorama, LLC is the Project applicant and recipient of the approvals granted as part of the Project.

### JURISDICTION AND VENUE

10.     This Court has jurisdiction over the matters alleged in this Petition pursuant to Code of Civil Procedure sections 1085 and 1094.5, and Public Resources Code sections 21167, 21168 and 21168.5.

11.     Venue is proper in Los Angeles County Superior Court in accordance with Code of Civil Procedure section 395 because the Project at issue is located in the County of Los Angeles.

12.     Venue is proper in this Court under California Code of Civil Procedure §§394 (actions against a city, county, or local agency) and 395 (actions generally) because Respondents include a city and local agencies based in the County of Los Angeles and because the cause of action alleged in this Petition arose in the County of Los Angeles and the Project will occur within the County of Los Angeles.

### STANDING

13.     Petitioners have standing to assert the claims alleged in this Petition because they are beneficially interested in this matter, as required by Code of Civil Procedure section 1086.  Petitioners have a direct and beneficial interest in Respondents' compliance with laws bearing upon approval of the Project.  These interests will be directly and adversely affected by the Project, which violates the law as

1   set forth in this Petition and would cause substantial harm to the natural environment and the quality of

2   life in the surrounding community. In addition, unless the relief requested herein is granted, the

3   environment will be adversely affected and injured by Respondents' failure to comply with CEQA when

4   certifying the EIR and approving the Project.

5          14.    Petitioners actively participated in the Project's administrative approval process in an

6   attempt to ensure Respondents complied with CEQA and all other applicable laws.

7                        **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8          15.    Petitioners have performed or will perform all conditions precedent to the filing of this

9   Petition. Petitioners have actively participated in the administrative and environmental review process

10  prior to close of the public hearings on the Project and before the issuance of the notice of

11  determination. Petitioners have fully exhausted administrative remedies to the extent required by law.

12  (Pub. Resources Code, § 21177, subd. (a).)

13         16.    CEQA allows a petitioner who objected to a project to allege in a writ petition all

14  deficiencies asserted by others. (*Citizens for Clean Energy v. City of Woodland* (2014) 225 Cal.App.4th

15  173, 191.) Petitioners, other agencies, interested groups, and individuals made oral and written

16  comments on the Project, and raised each of the legal deficiencies asserted in this Petition.

17         17.    Respondents have taken final agency actions certifying the EIR and adopting the

18  Approvals. Respondents had a mandatory duty to comply with all applicable laws, including, but not

19  limited to CEQA prior to undertaking the discretionary approvals at issue in this lawsuit. Petitioners

20  possess no effective remedy to challenge the Approvals at issue in this action other than by means of this

21  lawsuit.

22                              **STATUTE OF LIMITATIONS**

23         18.    On August 29, 2018, the City Council approved the Project subject to approval of the

24  Mayor.

25         19.    On August 30, 2018, Respondents posted a Notice of Determination ("NOD") for the

26  approvals of the Project.

27         20.    The statute of limitations for a CEQA challenge to Respondent's decision to certify the

28  Project EIR expires 30 days from the filing and posting of the NOD. (Guidelines, §§ 15094, subd. (g),

1   15112, subd. (c)(1).)  Since the 30th day after the NOD falls on Saturday, September 29, 2018, the

2   limitations period extends to Monday, October 1, 2018.  Code of Civil Procedure §12.

3       21.    On May 21, 2018, Petitioners sent a letter to the City Clerk, and Secretary of the Planning

4   Commission requesting written notice of any NOD pursuant to CEQA, Public Resources Code sections

5   21092.2 and 21167(f).  These sections require the City to provide written notice of any NOD to any

6   person requesting such notice pursuant to these provisions, and tolls any statute of limitations if the City

7   fails to substantially comply with the notice request.

8       22.    Despite the fact that the City posted an NOD for the Project on August 30, 2018, and

9   Petitioners requested written notice of the NOD on May 21, 2018, the City did not provide the NOD to

10   Petitioners until September 27, 2018, at which time City Planner Milena Zasadzien sent the NOD by

11   email in response to multiple requests.  Ms. Zasadzien stated in writing that the City had "inadvertently"

12   failed to send the NOD at the time of filing.  Nevertheless, Ms. Zasadzien refused to extend the statute

13   of limitations period, in violation of CEQA.

14       23.    Thus, Petitioners filed their Petition prior to the expiration of any applicable statute of

15   limitations.

16                            **NOTICE OF CEQA SUIT**

17       24.    On September 28, 2018, Petitioners served a notice of their intent to file this lawsuit, in

18   accordance with Public Resources Code section 21167.5.  (See Exhibit 1:  Notice of Intent to File

19   Petition Pursuant to the California Environmental Quality Act.)

20                  **PREPARATION OF ADMINISTRATIVE RECORD**

21       25.    Pursuant to Public Resources Code, section 21167.6, subdivision (b)(2), Petitioners elect

22   to prepare the record of proceedings in this action.  (See Exhibit 2:  Petitioner's Notice of Intent to

23   Prepare Record.)

24                  **PRIVATE ATTORNEY GENERAL DOCTRINE**

25       26.    Petitioners bring this action as private attorney generals pursuant to Code of Civil

26   Procedure section 1021.5, and any other applicable legal theory, to enforce important rights affecting

27   the public interest;

28       27.    Issuance of the relief requested in this Petition will confer a significant benefit on the

1     general public by requiring Respondents to carry out its duties under CEQA and other applicable laws

2     before approving the Project.

3        28.     Issuance of the relief requested in this Petition will also result in the enforcement of

4     important rights affecting the public interest by compelling Respondents to engage in a legally adequate

5     analysis of the Project, and to ensure that the public has a meaningful opportunity to review and

6     comment on the impacts and mitigation measures for the Project.

7        29.     The necessity and financial burden of enforcement make an award of attorneys' fees

8     appropriate in this case. Without this Petition, Respondents and Real Party will proceed with a plan and

9     development that will cause significant, unmitigated environmental impacts that might otherwise have

10     been reduced or avoided through legally adequate environmental review and the adoption of feasible

11     mitigation measures.

12                        **ARBITRARY AND CAPRICIOUS ACTIONS**

13        30.     Petitioners assert that Respondents acted arbitrarily and capriciously when certifying the

14     EIR and approving the Project.

15        31.     In accordance with Government Code section 800, and other applicable laws, Petitioners

16     are entitled to reasonable attorneys' fees for bringing this Petition to overturn Respondents' arbitrary or

17     capricious actions.

18                              **IRREPARABLE HARM**

19        32.     Petitioners and their members reside and work at and near the Project site and in the City

20     and County of Los Angeles. They have been and will continue to be harmed by Respondents' failure to

21     provide environmental documents that accurately and fully inform interested persons of the Project's

22     true impacts, and mitigate those impacts. Such documents would lead to better environmental decision-

23     making regarding the Project, and would enable all residents, land owners, and business owners in the

24     affected region to better understand the true environmental impacts of the Project.

25        33.     Petitioners have no plain, speedy, or adequate remedy in the course of ordinary law

26     unless this Court grants the requested writ of mandate to require Respondents to set aside their approval

27     of the Project. In the absence of such remedies, Respondents' decisions will remain in effect in

28

1   violation of State law and Petitioners will be irreparably harmed. No monetary damages or legal

2   remedy could fully and adequately compensate Petitioner for that harm.

3   **FACTUAL ALLEGATIONS**

4       34.    On April 6, 2017, the City released a Draft EIR for public review and comment

5   describing a Project including a 540,000 gross square foot mixed-use development on an 8.9 acre site in

6   Los Angeles, California, located at 14651-14697 W. Roscoe Blvd., 8313-8413 N. Tobias Ave., in the

7   Panorama City community in Los Angeles.

8       35.    The Project described in the Draft EIR included construction of seven buildings, with

9   approximately 200,000 square feet of commercial area, 422 multi-family residential units, and parking

10  for approximately 1,690 vehicles. The commercial uses would be located in five separate one and two-

11  story buildings on the south and east part of the Project site, and would be served by a six-level parking

12  structure in the center of the Project site. The Project would include a 1,200 seat multiplex cinema,

13  restaurants, and other commercial uses. The residences would be located in two separate seven-story

14  buildings, with five stories of residential over two levels of above-ground parking on the western and

15  northern parts of the Project site. The Project would require demolition of three existing but vacant

16  commercial buildings and associated parking areas currently at the Project site.

17      36.    The Draft EIR ("DEIR") included four alternatives to the Project, all of which were

18  smaller than the proposed Project. Alternative 1, the No Project alternative, included no residential or

19  commercial development; Alternative 2, the Reduced Project alternative, included 283 residential

20  units. Alternative 3, the All Commercial Project included no residential units. Alternative 4, the By-

21  Right Project, included 350 residential units.

22      37.    Petitioners and many others submitted extensive written comments on the DEIR,

23  analyzing the Project, and suggesting additional mitigation measures. Petitioners submitted comments

24  prepared by expert consulting firm, Soil Water Air Protection Enterprise ("SWAPE"). SWAPE

25  concluded that the DEIR failed to identify hazardous soil contamination on the Project site from

26  decades of industrial uses, such as an automotive repair facility. SWAPE identified likely

27  contamination, including the highly toxic chemical, polychlorinated biphenyls, better known as PCBs.

28  In addition, SWAPE concluded that the DEIR failed to properly calculate the Project's significant

1   emissions of nitrogen oxides (NOx).  Significantly, SWAPE calculated that the Project would have
2   NOx emissions during the construction phase that would exceed South Coast Air Quality Management
3   District ("SCAQMD") CEQA significance thresholds, contrary to the DEIR's conclusions.  SWAPE
4   also concluded that the DEIR failed to include an accurate health risk assessment ("HRA").  Using the
5   methodology required by the California Office of Environmental Health Hazard Assessment
6   ("OEHHA") and the SCAQMD, SWAPE calculated that the Project's construction would create a
7   health risk of 308 per million – 30 times above the CEQA significance threshold of 10 per million.  The
8   DEIR failed entirely to analyze this impact, and failed to adopt feasible mitigation measures to reduce
9   the impact.  SWAPE also concluded that the Project would have significant greenhouse gas ("GHG")
10  emissions, contrary to the conclusions of the DEIR. Finally, SWAPE concluded that the DEIR failed to
11  properly analyze the Project's cumulative impacts together with other projects in the immediate
12  vicinity.  Petitioners also submitted comments from Traffic Engineer Daniel T. Smith, PE, who
13  concluded that the Project would severely impact traffic at the intersection of Roscoe and Woodman,
14  slowing traffic to the lowest possible Level of Service F ("LOS F").  Mr. Smith concluded that the
15  DEIR failed to propose feasible mitigation measures and alternatives to reduce this impact.

16          38.     On August 31, 2017, the City issued a Revised Draft EIR ("RDEIR") to correct errors in
17  the traffic analysis in the Draft EIR.  The Project description in the RDEIR was identical to that in the
18  DEIR, including a maximum of 422 residential units, 200,000 square feet of commercial space and a
19  1,200 seat multiplex theater.  The RDEIR did not add any additional alternatives.

20          39.     Petitioners again submitted extensive written comments on the RDEIR.  Traffic
21  Engineer Daniel T. Smith, PE, concluded that the RDEIR significantly underestimated traffic that
22  would be generated by the Project, and failed to impose feasible mitigation measures and alternatives.
23  Mr. Smith concluded that the RDEIR underestimated traffic from the Project by approximately 2,000
24  trips per day. SWAPE concluded that due to the RDEIR's underestimation of Project traffic, the
25  RDEIR also underestimated air pollution impacts of the Project.

26          40.     The City issued a Final EIR ("FEIR") for the Project on February 23, 2018.  The FEIR
27  continued to describe the proposed Project in the same manner (422 residential units, 200,00 square feet
28  commercial, and 1,200 seat theater).  However, for the first time the FEIR introduced a new Alternative

1    5 – containing 675 residential units, more than 250 additional residential units than in any alternative

2    considered in the DEIR or RDEIR.

3        41.    Petitioners submitted extensive written comments on the FEIR. But the comments, of

4    course, focused on the proposed Project, including 422 residential units. The comments pointed out

5    that the FEIR failed to substantively respond to expert comments submitted on the DEIR and RDEIR.

6    Traffic Engineer Daniel T. Smith concluded that the Project would generate 5233 vehicle trips per day,

7    not 3416 trips per day, as set forth in the FEIR. Mr. Smith also pointed out that the EIR improperly

8    deferred development of mitigation of the Project's traffic impacts, and failed to adopt the

9    environmentally superior alternative which would dramatically reduce traffic impacts. Petitioners also

10   pointed out that the Project would have significant impacts on public services such as the fire

11   department, sewers, and schools, and that the EIR improperly deferred development of mitigation

12   measures for these impacts. SWAPE pointed out that the FEIR failed to respond adequately to expert

13   comments made on the Project's significant air quality and greenhouse gas impacts and failed to adopt

14   feasible mitigation measures that have been imposed on other similar projects. SWAPE pointed out

15   that the FEIR continued to use an outdated methodology for health risk assessment (HRA), and that

16   under the proper OEHHA methodology, the Project's health risks would be significant and require

17   mitigation. Since the FEIR failed to adopt feasible mitigation measures and alternatives, and failed to

18   show that mitigation measures and alternative proposed were infeasible, it was not possible for the City

19   to adopt a statement of overriding considerations. Pub. Res. Code 21081 (agency may only adopt

20   statement of overriding considerations if it has imposed all feasible mitigation measures and

21   environmentally superior alternatives).

22       42.    On March 20, 2018, the Los Angeles Advisory Agency adopted a Project that was not

23   described in any CEQA document ("Revised Project"). The Revised Project included 623 residential

24   units and 60,000 square feet of commercial space. The Revised Project was not even mentioned in the

25   DEIR or the RDEIR. It was also not discussed in the FEIR. None of the experts or public commenters

26   provided comments on the Revised Project because it had never been discussed in any CEQA

27   document. As a result, the City never responded to comments on the Revised Project since none were

28   made.

43.     On March 29, 2018, Petitioners appealed the Advisory Agency's decision to the Los Angeles Planning Commission. Petitioners pointed out that the Revised Project approved by the Advisory Agency was not described in the DEIR or RDEIR, and that the EIR's project description was therefore legally inadequate. Petitioners discussed that the Revised Project was approximately 50% larger than the Project described and analyzed in the DEIR and RDEIR, and that as a result almost all of its impacts would increase by approximately 50%. Petitioners submitted comments from SWAPE concluding that the Revised Project would generate air quality emissions above SCAQMD CEQA significance thresholds, requiring analysis and mitigation in a revised draft EIR. Traffic Engineer Daniel T. Smith concluded that the Revised Project would have significant traffic impacts requiring analysis and mitigation in a supplemental draft EIR. The City stated in writing that it would not respond to any comments on the Revised Project or Final EIR.

44.     Petitioners submitted written and oral comments to the Planning Commission explaining that by dramatically altering the Project after the close of the comment period for the DEIR and RDEIR, the City had rendered the CEQA process meaningless. Extensive public comments were submitted and responded to on a Project that was never approved, and instead the City had approved the Revised Project that was dramatically different and much larger than any project or alternative described in the DEIR or RDEIR. Only in the FEIR was a project loosely resembling the Revised Project presented as a project alternative, but the City refused to respond to any comments on the FEIR, and failed to impose mitigation measures to reduce the impacts of the Revised Project. Petitioners explained that where the agency adds "significant new information" to an EIR prior to final EIR certification, the lead agency must issue new notice and must recirculate the revised EIR for additional commentary and consultation. CEQA Guidelines section 15088.5. By adopting a Revised Project that was not discussed in the DEIR or RDEIR, the City failed to comply with CEQA and the EIR failed to include an adequate project description.

45.     Since the City adopted a Revised Project that was not described in the DEIR or RDEIR, The draft EIR was so fundamentally and basically inadequate and conclusory in nature that meaningful public review and comment were precluded. (*Mountain Lion Coalition v. Fish and Game Com.* (1989) 214 Cal.App.3d 1043). The City nevertheless refused to prepare a Supplemental EIR to analyze the

1   Revised Project that was actually adopted, and which was not analyzed in any CEQA document.

2   <center>**Project Approval**</center>

3       46.    On March 20, 2018 the Advisory Agency adopted the Revised Project including 623

4   residential units. At the time it adopted the Revised Project, the Advisory Agency was not informed of

5   any impacts, public comments, or mitigation measures addressing the Revised Project in either the

6   DEIR or RDEIR.

7       47.    On March 29, 2018, Petitioners appealed the Advisory Agency's decision to the

8   Planning Commission.

9       48.    On April 26, 2018, the Los Angeles City Planning Commission Certified the Project's

10   EIR and related findings, and approved the Revised Project. The Planning Commission was not

11   informed of any impacts, public comments, or mitigation measures addressing the Revised Project in

12   either the DEIR or RDEIR

13       49.    On May 25, 2018, Petitioners appealed the Planning Commissions decisions to the City

14   Council.

15       50.    On August 21, 2018, the Los Angeles Planning and Land Use Management Committee

16   ("PLUM") held a hearing and recommended approval of the Revised Project and its EIR.

17       51.    On August 29, 2018, City Council held a hearing to consider the Final EIR and Project,

18   as well as Petitioners' appeal of the Planning Commission's approval of the EIR and Project.  City

19   Council certified the Final EIR and approved the Revised Project.

20       52.    Southwest Regional Council of Carpenters member Dan McDonald attended the August

21   29, 2018 City Council hearing and filled out speaker request forms to provide public comment on the

22   matter. He was never given the opportunity to speak on the matter, however.  A vote was taken on the

23   agenda item without any opportunity for public comments.  In addition, by the time the applicable

24   agenda item was called, the time to present public comment on items that were not on the agenda had

25   already passed.

26   <center>**MANDATORY REQUIREMENTS OF CEQA**</center>

27       53.    CEQA prohibits local agencies from approving projects that may have adverse

28   environmental effects without first undergoing environmental review and avoiding or reducing the

1   significant environmental effects of those projects whenever feasible.

2       54.     The EIR is an informational document that must accurately describe the project being

3   considered, accurately disclose any potentially significant environmental impacts of the project, and

4   inform decision-makers and the general public of mitigation measures and alternatives to the project

5   that would avoid or substantially lessen those impacts.

6       55.     CEQA is designed to ensure that the public lead agency identifies all potentially

7   significant environmental impacts of a proposed project, adequately discloses those impacts to the

8   public, and implements all feasible alternatives or mitigation measures necessary to avoid or

9   substantially lessen those impacts. (Pub. Resources Code, §§ 21002, 21100; CEQA Guidelines, §§

10  15126.6, 15370.)

11      56.     "An accurate, stable and finite project description is the *sine qua non* of an informative

12  and legally adequate EIR." (*County of Inyo v. City of Los Angeles* (1977) 71 Cal.App.3d 185, 192 [139

13  Cal.Rptr. 396, 401].) "[A] curtailed or distorted project description," on the other hand, "may stultify

14  the objectives of the reporting process. Only through an accurate view of the project may affected

15  outsiders and public decision-makers balance the proposal's benefit against its environmental costs,

16  consider mitigation measures, assess the advantage of terminating the proposal (*i.e.*, the "no project"

17  alternative) and weigh other alternatives in the balance." (*Id. See also*, CEQA Guidelines §15124.) The

18  proposed project must be described in the draft EIR. If it is only described in the final EIR and not the

19  Draft EIR, the public is deprived of any meaningful opportunity to review and comment on the project.

20  Significant changes to the project after the close of the comment period on the draft EIR renders the

21  draft EIR so fundamentally and basically inadequate and conclusory in nature that meaningful public

22  review and comment were precluded. (*Mountain Lion Coalition v. Fish and Game Com.* (1989) 214

23  Cal.App.3d 1043).

24      57.     After significant changes to an EIR, the revised environmental document must be

25  subjected to the same "critical evaluation that occurs in the draft stage," so that the public is not denied

26  "an opportunity to test, assess, and evaluate the data and make an informed judgment as to the validity

27  of the conclusion to be drawn therefrom." (*Save Our Peninsula Committee v. Monterey County Bd. of*

28  *Supervisors* (2001) 87 Cal.App.4th 99, 131).

58.     It is improper for an EIR to defer its analysis or the formulation of mitigation measures until after certification of the EIR and approval of the project, and mitigation measures must be enforceable and contain specific enforcement standards. CEQA Guidelines § 15126.4.

59.     The EIR must also evaluate any impacts of the project that may be "cumulatively considerable," and address the project's incremental effects when combined with the effects of past, current, and probable future projects. (CEQA Guidelines, §§ 15064, subd. (h)(1), 15130, subd. (a), 15355.)

60.     When significant new information is added to a final EIR, CEQA requires that the lead agency recirculate the EIR for additional public review and comment. (Pub. Resources Code, § 21092.1; CEQA Guidelines, § 15088.5, subd. (a).)

61.     A lead agency cannot certify an EIR and approve a project with significant environmental effects unless the agency makes a series of detailed findings. These include findings that changes or alterations have been required that mitigate or avoid the project's significant effects on the environment, or that specific considerations render the mitigation measures or alternatives "infeasible" but that the benefits of the project nonetheless outweigh the project's significant environmental effects. The lead agency's findings must be supported by substantial evidence in the administrative record. (Pub. Resources Code, § 21081; CEQA Guidelines, §§ 15091-15093.)

62.     CEQA requires agencies to consider a "reasonable range of alternatives that will foster informed decision making and public participation." (14 CEQA Guidelines, §15126.6, subd. (a).) The "discussion of alternatives shall focus on alternatives to the project or its location which are capable of avoiding or substantially lessening any significant effects of the project, even if these alternatives would impede to some degree the attainment of the project objectives, or would be more costly." (CEQA Guidelines, §15126.6, subd. (b).) It is imperative that each alternative allow meaningful evaluation, analysis, and comparison with the proposed project." (*Id.* at § 15126.6, subd. (d).) A project cannot be approved if its significant impacts can be feasibly reduced to insignificance through project alternatives or mitigation measures. (Pub. Resources Code §§ 21002, 21021.) Agencies can eliminate alternatives from detailed consideration in an EIR if they are infeasible, fail to meet "most" of the basic project objectives or do not avoid significant environmental impacts. (CEQA Guidelines,

Verified Petition for Writ of Mandate

1  §15126.6, subd. (c).)  An agency's rejection of an alternative as "infeasible" or otherwise "unworthy of

2  more in-depth consideration" must be supported by "substantial evidence." (*Center for Biological*

3  *Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 885.)

4       63.  Noncompliance with the requirements outlined above constitutes a prejudicial abuse of

5  discretion under sections 21168 and 21168.5 of the Public Resources Code, regardless of whether a

6  different outcome would have resulted if the lead agency had complied with those requirements in the

7  first place. (Pub. Resources Code, § 21005.) Abuse of discretion is established if the agency has not

8  proceeded in a manner required by law or if the agency's determination or decision is not supported by

9  substantial evidence in the administrative record. (Pub. Resources Code, §§ 21168, 21168.5.)

10       64.  Failure to include essential information in the draft EIR constitutes a failure to proceed

11  in the manner required by law. (*Banning Ranch Conservancy v. City of Newport Beach* (2017) 2

12  Cal.5th 918.)

13       65.  Acting as the CEQA lead agency, Respondent had a mandatory duty to comply with

14  CEQA prior to approving the discretionary actions at issue in this lawsuit.

15  <u>**FIRST CAUSE OF ACTION**</u>

16  **Violation of CEQA**

17  **(Public Resources Code, § 21000 et seq.)**

18       66.  Petitioners hereby reallege and incorporate by reference the preceding paragraphs, in

19  their entirety, as if fully set forth herein.

20       67.  By relying on the EIR's flawed analysis of the Revised Project, and approving the

21  Revised Project and certifying the EIR, Respondents prejudicially abused their discretion because their

22  decision is not supported by substantial evidence and because they failed to proceed in a manner

23  required by law, as follows:

24       A.  **Inadequate Project Description.**  Neither the Draft EIR, Revised Draft EIR

25  describe the Revised Project that was approved by the Respondents.  The DEIR and RDEIR described a

26  project with a maximum of 422 residential units.  Neither document included any alternatives with

27  more than 422 residential units.  However, Respondents approved a Revised Project with 623

28  residential units – almost 50% more than described in the DEIR or RDEIR.  The Final EIR continued to

1   describe the Project as having a maximum of 422 residential units, but it added an alternative with 675

2   units. Even the Final EIR therefore did not describe the Revised Project. Even if the FEIR had

3   described the Revised Project, CEQA requires the project to be described in the draft EIR not the final

4   EIR since there is no formal review and comment period for a final EIR. Significant changes to the

5   Project after the close of the comment period on the draft EIR rendered the draft EIR so fundamentally

6   and basically inadequate and conclusory in nature that meaningful public review and comment were

7   precluded. (*Mountain Lion Coalition v. Fish and Game Com.* (1989) 214 Cal.App.3d 1043).

8         B.    **Failure to Recirculate the Draft EIR.** Increasing the size of the Project from

9   422 residential units to 623 residential units increased its impacts on public services, air quality, traffic

10  and almost all other resources. Since the changes to the Project resulted in new and increased impacts,

11  Respondents were required to recirculate a draft EIR to analyze the Revised Project and to propose

12  mitigation measures for its new and increased impacts. (CEQA Guidelines § 15088.5(a), (a)(4).) By

13  refusing to recirculate a Supplemental Draft EIR to analyze the Revised Project, Respondents abused

14  their discretion and failed to proceed in a manner required by law.

15        C.    **Air Quality.** The EIR fails to adequately disclose, evaluate, and mitigate the

16  Project's substantial adverse impact with respect to air quality, and its conclusions are not supported by

17  substantial evidence, as follows:

18              i.    The EIR fails to address the air quality impacts of the Revised Project.

19  The only evidence in the record demonstrates that the Revised Project will have significant air quality

20  impacts exceeding the SCAQMD's CEQA significance thresholds for construction and operational

21  phases. Respondents failed to proceed in a manner required by law by failing to analyze these impacts

22  and by failing to propose or analyze feasible mitigation measures to reduce the impact.

23              ii.    Although the EIR correctly notes that the Project's operational air quality

24  emissions will exceed applicable thresholds, it incorrectly concludes the impact will be significant and

25  unavoidable. Experts proposed feasible mitigation measures that were not adopted despite the fact there

26  is no substantial evidence demonstrating that the measures are infeasible. To the extent the EIR contains

27  mitigation measures, development of specific mitigation measures is impermissibly deferred.

28

iii.    The EIR fails to adequately analyze the impact of toxic air contaminants ("TACs"). The EIR failed to include a health risk assessment ("HRA") using the proper methodology required by the California Office of Environmental Health Hazard Assessment ("OEHHA"). The OEHHA HRA shows that the Revised Project will create a cancer risk far above the applicable CEQA significance threshold. Respondents abused their discretion by failing to employ the proper HRA methodology, by failing to disclose the Revised Project's significant cancer risks, and by failing to adopt feasible mitigation measures to reduce those impacts. To the extent the EIR contains mitigation measures, development of specific mitigation measures is impermissibly deferred

D.    **Greenhouse Gases.** The EIR fails to adequately disclose, evaluate, and mitigate the Revised Project's substantial adverse impact with respect to greenhouse gases ("GHGs"). The EIR concludes that the Project's GHG impacts are less than significant, but the conclusions are not supported by substantial evidence, as follows:

i.    The EIR did not analyze the GHG impacts of the Revised Project at all, only the original Project, which included 422 residential units.

ii.    Expert evidence demonstrates that the Revised Project will have significant GHG impacts, exceeding applicable CEQA significance thresholds.

iii.    Respondents abused their discretion and failed to proceed in a manner required by law by failing to disclose the Revised Project's significant GHG impacts and by failing to propose feasible mitigation measures and alternatives to reduce those impacts. To the extent the EIR contains mitigation measures, development of specific mitigation measures is impermissibly deferred.

E.    **Traffic.** The EIR fails to adequately disclose, evaluate, and mitigate the Revised Project's substantial adverse impact with respect to traffic, and its conclusions are not supported by substantial evidence, as follows:

i.    The EIR's traffic methodology violates CEQA because it fails to use the proper baseline. Also, the EIR underestimated Project traffic by almost 2,000 vehicle trips per day.

ii.    The EIR impermissibly defers development of mitigation by failing to propose specific feasible mitigation measures and environmentally superior alternatives.

1         **F.**   **Hazardous Materials.** The EIR fails to adequately respond to expert comments

2   pointing out significant soil contamination issues at the Project site. The EIR fails to analyze the soil

3   contamination and fails to propose adequate mitigation measures to address this impact. To the extent

4   the EIR contains mitigation measures, development of specific mitigation measures is impermissibly

5   deferred.

6         **G.**   **Public Services.** The EIR fails to adequately analyze or respond to comments

7   made by the public concerning impacts of the Project on public services such as sewer, schools, and fire

8   protection. The Revised Project will have even greater impacts on these resources than the originally

9   Proposed Project, yet the Revised Project's impacts on public services have not been analyzed in any

10   CEQA document. To the extent the EIR contains mitigation measures, development of specific

11   mitigation measures is impermissibly deferred.

12         **H.**   **Cumulative Impacts.** The EIR fails to adequately disclose, evaluate, and mitigate

13   the Revised Project's substantial adverse cumulative impacts, and its conclusions are not supported by

14   substantial evidence. The EIR did not conduct an appropriate cumulative analysis, but instead merely

15   assumed that the Project's cumulative impacts would be less than significant if its individual impacts

16   were less than significant. By conducting the flawed analysis Respondents failed to proceed in a manner

17   required by law. CEQA does not allow an agency to avoid looking at an incremental contribution to a

18   cumulative condition simply because a program- or project-level impact is less than significant. CEQA

19   requires consideration of the severity of existing environmental impacts because "the greater the existing

20   environmental problems are, the lower the threshold should be for treating a project's contribution to

21   cumulative impacts as significant." (*Communities for a Better Environment v. California Resources

22   Agency* (2002) 103 Cal.App.4th 98, 120.) Furthermore, there has been no cumulative impact analysis of

23   the Revised Project.

24         **I.**   **Alternatives.** The EIR fails to adequately analyze a reasonable range of

25   alternatives on the program- and project-level, and does not support its failure to consider additional

26   feasible alternatives with substantial evidence as follows:

27         i.   Neither the draft EIR, nor the revised draft EIR analyzed anything even

28   vaguely resembling the Revised Project that was actually approved by Respondents. An EIR cannot

1  have a reasonable range of alternatives if none of the alternatives describe the project that was actually

2  approved by the lead agency.

3          ii.    The Final EIR also failed to analyze the Revised Project.  While the Final

4  EIR analyzed an alternative including 675 residential units (rather than the 623 units approved by

5  Respondents), that analysis occurred only in the Final EIR, at which time the public comment period had

6  closed, and without any requirement of a response to comments.

7          iii.    When the draft EIR fails to describe the alternative ultimately approved by

8  the lead agency, the alternatives analysis cannot be deemed adequate.  Respondents failed to proceed in

9  a manner required by law because none of the alternatives in the DEIR or RDEIR describe the Revised

10  Project ultimately approved by Respondents.

11          iv.    Respondents also abused their discretion by failing to adopt the

12  environmentally superior alternative, the Reduced Size Alternative, despite the fact that the Reduced

13  Size Alternative would have reduced almost all Project impacts, and despite the fact that there is no

14  substantial evidence demonstrating that the alternative is infeasible.

15          J.    **Failure to Provide Written Notice of the Notice of Determination.**

16  Respondents failed to proceed in a manner required by law by failing to provide Petitioners with timely

17  notice of the posting of a Notice of Determination, in violation of Public Resources Code section

18  21092.2 and 21167(f), despite the fact that Petitioners had submitted at least two written requests for

19  such notice.  Respondents further failed to proceed in a manner required by law by refusing to extend

20  the statute of limitations for filing this action despite Respondents failure to comply with CEQA sections

21  21092.2 and 21167(f).

22          K.    **Findings.** Respondent failed to adopt legally adequate findings, supported by substantial

23  evidence, before approving the Project. Respondent lacked substantial evidence to demonstrate the

24  specific mitigation measures and alternatives proposed by expert commenters were infeasible.  As a

25  result of the inadequacies in the environmental analysis identified above, the findings adopted by

26  Respondent are not supported by substantial evidence as required by CEQA. (Pub. Resources Code, §§

27  21002, 21002.1, 21081; CEQA Guidelines, §§ 15091, 15092, 15093).  Respondents failed to proceed in

28  a manner required by law because they were prohibited from adopting a statement of overriding

1  considerations since they failed to adopt all feasible mitigation measures and alternatives to reduce

2  impacts of the Revised Project.   (CEQA Guidelines §§ 15126.4, 15091; Pub. Res. Code § 21002).

3       68.    As a result of the foregoing defects, Respondents prejudicially abused their discretion by

4  approving the Revised Project in a manner that does not comply with the requirements of CEQA and

5  Petitioners are entitled to issuance of a writ of mandate setting aside all approvals that were issued in

6  reliance on the certified EIR.

7  <div align="center">**PRAYER FOR RELIEF**</div>

8       WHEREFORE, Petitioner respectfully requests the following relief and entry of judgment as

9  follows:

10      1.    For a peremptory writ of mandate directing Respondents to:

11          (a)    vacate and set aside its certification of the Final EIR, CEQA findings, statement

12  of overriding considerations, and approval of the Project or Revised Project on the grounds that

13  adequate CEQA compliance did not precede those actions;

14          (b)    comply with CEQA and the State CEQA Guidelines in any subsequent action

15  taken to consider approval of the Project;

16          (c)    provide timely written notice of any notices of determination to Respondents and

17  any members of the public who have properly requested such notices in writing;

18          (d)    extend any applicable statutes of limitation if the Respondents fails to provide

19  written notice of any notices of determination to any members of the public who have properly

20  requested such notices in writing.

21      2.    For a temporary stay to prevent Respondents and Real Party from taking further actions

22  to implement or proceed with the Project or Revised Project during the pendency of this litigation and

23  subsequent to the Court's issuance of a peremptory writ;

24      3.    For an order awarding Petitioners' attorneys' fees under Code of Civil Procedure section

25  1021.5, Government Code section 800, and other applicable authority;

26      4.    For costs of suit; and

27      5.    For such other and further relief as the court deems just and proper.

28

Dated:  October 1, 2018

LOZEAU DRURY LLP

By:

Richard Drury
Rebecca L. Davis
Attorneys for Petitioners
SOUTHWEST REGIONAL COUNCIL OF
CARPENTERS AND LABORERS
INTERNATIONAL UNION OF NORTH
AMERICA LOCAL 300

## VERIFICATION

I, Richard Drury, am an attorney for Petitioners in this action.  I am verifying this Petition pursuant to California Code of Civil Procedure section 446.  Petitioner is absent from the County of Alameda, in which I have my office.  I have read the foregoing petition and complaint.  I am informed and believe that the matters in it are true and on that ground allege that the matters stated in the complaint are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  October 1, 2018

_____

Richard T. Drury
Attorney for Petitioners and Plaintiffs

# EXHIBIT 1



LOZEAU DRURY LLP   T 510.836.4200   410 12th Street, Suite 250   www.lozeaudrury.com
                   F 510.836.4205   Oakland, Ca 94607       rebecca@lozeaudrury.com

*By U.S. Mail*

September 28, 2018

Holly L. Wolcott
City Clerk
City of Los Angeles
200 N. Spring Street
City Hall – Room 360
Los Angeles, CA 90012
CityClerk@lacity.org

Los Angeles Department of City Planning
200 North Spring St.
Los Angeles, CA 90012

Herb J. Wesson, Jr.
President, Los Angeles City Council
200 North Spring Street, Room 430
Los Angeles, CA 90012

Mayor Eric Garcetti
200 North Spring Street
Los Angeles, CA 90012

Re:   **Notice of Intent to File Suit Under The California Environmental Quality Act Regarding the ICON at Panorama Project, 14665 Roscoe Blvd., Los Angeles, CA (Case No. ENV-2016-1061-EIR, SCH No. 2016081031)**

Dear Addressees:

Please take notice, pursuant to Public Resources Code ("PRC") § 21167.5, that Petitioners Southwest Regional Council of Carpenters and Laborers International Union of North America Local 300 ("Petitioners") intend to file a Verified Petition for Peremptory Writ of Mandate ("Petition") under the provisions of the California Environmental Quality Act ("CEQA"), PRC § 21000 *et seq.*, against Respondents City of Los Angeles, Los Angeles City Council, Los Angeles Department of City Planning, and Mayor Eric Garcetti regarding challenging the August 29, 2018 decision of the City Council and the September 7, 2018 decision of Mayor Garcetti including their: (1) certification of the Final EIR for the ICON at Panorama mixed-use development project (2) adoption of related findings, statement of overriding considerations, and mitigation monitoring plan; (3) approval of the ICON at Panorama project including entitlements of the Project under VTT-74315 and CPC-2016-2118-VZC-MCUP-CU-SPR-CDO-DD; and (4) denying the appeal of Petitioners (collectively, the "Project").

Re: Notice of Intent to File Suit
Under the California Environmental Quality Act
September 28, 2018
Page 2 of 3

    Among other issues, Petitioners will allege that Respondents failed to proceed in the manner required by law and without substantial evidence by certifying an EIR that fails to properly disclose, analyze, and mitigate the Project's potential significant individual and cumulative impacts. The petition being filed will seek the following relief:

1. For a stay pending trial of Respondents' decisions approving the Project.
2. For a peremptory writ of mandate ordering:
   a. Respondents to vacate and set aside their certification of the EIR for the Project, adoption of the Statement of Overriding Considerations, and decisions approving the Project;
   b. Respondents and Real Party in Interest to suspend all activity under the certification of the EIR and approval of the Project that could result in any change or alternation to the physical environment until Respondent has taken all actions necessary to bring the certification and Project approvals into compliance with CEQA; and
   c. Respondents to prepare, circulate, and consider an EIR in compliance with CEQA prior to any subsequent action to approve the Project.
3. For the costs of suit.
4. For an award of attorney fees pursuant to Code of Civil Procedure § 1021.5 and any other applicable provisions of law or equity.
5. For any other equitable or legal relief that the Court considers just and proper.

    Petitioners urge Respondents to rescind the Notice of Determination and the approvals for the Project, to conduct the appropriate environmental review, and to prepare the appropriate CEQA document for the Project as required by law.

Sincerely,

Rebecca L. Davis
Lozeau Drury LLP
Attorneys for Petitioners

Re: Notice of Intent to File Suit
Under the California Environmental Quality Act
September 28, 2018
Page 3 of 3

## PROOF OF SERVICE

I, Toyer Grear, declare as follows:

I am a resident of the State of California, and employed in Oakland, California. I am over the age of 18 years and am not a party to the above-entitled action. My business address is 410 12th Street, Suite 250, Oakland, California, 94607.

On September 28, 2018, I served a copy of the foregoing document entitled:

**Notice of Intent to File Suit Under The California Environmental Quality Act Regarding the ICON at Panorama Project, 14665 Roscoe Blvd., Los Angeles, CA (Case No. ENV-2016-1061-EIR, SCH No. 2016081031)**

on the following parties:

| | |
|---|---|
| Holly L. Wolcott<br>City Clerk<br>City of Los Angeles<br>200 N. Spring Street<br>City Hall – Room 360<br>Los Angeles, CA 90012<br>CityClerk@lacity.org | Herb J. Wesson, Jr.<br>President, Los Angeles City Council<br>200 North Spring Street, Room 430<br>Los Angeles, CA 90012 |
| Los Angeles Department of City Planning<br>200 North Spring St.<br>Los Angeles, CA 90012 | Mayor Eric Garcetti<br>200 North Spring Street<br>Los Angeles, CA 90012 |

| | |
|---|---|
| ☒ | **BY MAIL.** By placing the document listed above in a sealed envelope with postage thereon fully prepaid for First Class mail, in the United States mail at Oakland, California addressed as set forth above. |
| ☐ | **BY EMAIL.** By sending the documents as an electronic mail attachment in PDF format to the e-mail address above. |
| ☐ | **BY FACSIMILE TRANSMISSION.** By sending the documents via facsimile transmission to the fax telephone number identified above. |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed September 28, 2018 at Oakland, California.

Toyer Grear

# EXHIBIT 2

1  RICHARD DRURY (SBN 163559)
   REBECA L. DAVIS (SBN 271662)
2  LOZEAU|DRURY LLP
   410 12th Street, Suite 250
3  Oakland, CA 94607
   Telephone: (510) 836-4200
4  E-mail: richard@lozeaudrury.com
5          rebecca@lozeaudrury.com

6  Attorneys for Petitioner
   SOUTHWEST REGIONAL COUNCIL OF CARPENTERS
7  AND LABORERS INTERNATIONAL UNION OF NORTH
   AMERICA LOCAL 300

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF LOS ANGELES

10

11 SOUTHWEST REGIONAL COUNCIL OF          Case No.
   CARPENTERS; and LABORERS
12 INTERNATIONAL UNION OF NORTH           PETITIONER'S NOTICE OF INTENT TO
   AMERICA LOCAL 300;                     PREPARE ADMINISTRATIVE RECORD
13
              Petitioners,               [California Environmental Quality Act
14                                        ("CEQA"), Pub. Res. Code §21000, et seq.;
        v.                                C.C.P. §§1094.5, 1085]
15
   CITY OF LOS ANGELES; LOS ANGELES
16 CITY COUNCIL; and LOS ANGELES
   DEPARTMENT OF CITY PLANNING,
17
              Respondents,
18
   THE ICON AT PANORAMA, LLC,
19
              Real Party in Interest.
20

21        Pursuant to Public Resources Code §21167.6(b)(2), Petitioners Southwest Regional

22 Council of Carpenters and Laborers International Union of North America Local 300

23 ("Petitioner") hereby notify all parties that Petitioners elect to prepare the administrative record

24 relating to the above-captioned action challenging the August 29, 2018 decision of Respondent

25 Los Angeles City Council to approve the mixed-use development Project known as ICON at

26 Panorama ("Project"), including certifying the EIR (SCH No. 2016081031) and adopting a

27 Statement of Overriding Considerations. Respondents and Real Party in Interest are directed not

28

_____
          PETITIONER'S NOTICE OF INTENT TO PREPARE ADMINISTRATIVE RECORD

1   to prepare the administrative record for this action and not to expend any resources to prepare the

2   administrative record.

3

4   Dated: October 1, 2018                    LOZEAU | DRURY LLP

5

6

7                                            Richard Drury
                                             Rebecca L. Davis
8                                            Attorneys for Petitioners Southwest Regional
                                             Council of Carpenters and Laborers International
9                                            Union of North America Local 300

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28