EXHIBIT 8

# IN THE COURT OF APPEAL OF THE STATE OF

# CALIFORNIA SECOND APPELLATE DISTRICT,

# DIVISION FOUR

**SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, *et al.*,**

     Plaintiffs and Respondents,

  **v.**

**CITY OF LOS ANGELES, *et al.*,**

     Defendants and Appellants.

**THE ICON AT PANORAMA, LLC,**

  Real Party in Interest and Appellant.

Court of Appeal No.
B301374

(Superior Court No.
BS175189)

Appeal from a Judgment of the Los Angeles Superior Court
The Honorable James C. Chalfant, Judge

## AMICUS BRIEF OF THE CALIFORNIA ATTORNEY GENERAL IN SUPPORT OF PLAINTIFFS AND RESPONDENTS

XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Senior Assistant Attorney General
SARAH E. MORRISON
Supervising Deputy Attorney
General

SCOTT J. LICHTIG (SBN 243520)
LANI M. MAHER (SBN 318637)
Deputy Attorneys General
 300 S. Spring St., Ste. 1702
 Los Angeles, CA 90013-1230
 Telephone: (213) 269-6299
 Fax: (916) 731-2128
 E-mail: Lani.Maher@doj.ca.gov
*Attorneys for Amicus Curiae the
California Attorney General*

Document received by the CA 2nd District Court of Appeal.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................... 4

INTRODUCTION ....................................................................... 8

STATEMENT OF INTEREST ..................................................... 9

PROCEDURAL BACKGROUND ............................................... 10

ARGUMENT ............................................................................ 13

I.   The City Failed to Provide an Accurate, Stable, and Finite Project Description, Violating CEQA's Informational Requirements ..................... 13

II.  The City's Failure to Comply with CEQA Was Prejudicial, Requiring Vacatur of its Approval of the Revised Project ......................................... 19

A.   The City's Deficient Project Description Precluded Informed Public Participation ...... 20

B.   The City's Deficient Project Description Prevented Consideration and Imposition of Feasible Mitigation and Other Project Improvements ................................................. 24

C.   The City's Reliance on Purported "Unanimous Community Support" is Unavailing ....................................................... 27

III. Lead Agencies Have Flexibility to Modify Projects Consistent With CEQA's Informational Requirements ........................................... 30

A.   A Lead Agency Can Substantially Modify a Project Through the Revision and Recirculation of the Draft Environmental Impact Report ................................................. 33

B.   A Lead Agency Can Substantially Modify a Project Through the Selection of an Alternative Presented and Analyzed in the Draft Environmental Impact Report ...... 35

Document received by the CA 2nd District Court of Appeal.

**TABLE OF CONTENTS**
(continued)

Page

C.   A Lead Agency Can Substantially Modify a Project Through the Preparation of a Supplemental or Subsequent Environmental Impact Report ...................... 38

CONCLUSION.............................................................. 40

CERTIFICATE OF WORD COUNT ........................................... 42

PROOF OF SERVICE ................................................... 43

Document received by the CA 2nd District Court of Appeal.

3          459

# TABLE OF AUTHORITIES

**Page(s)**

## STATE CASES

*Assn. of Irritated Residents v. County of Madera*
(2003) 107 Cal.App.4th 1383 ............................................... 22

*Cal. Bldg. Industry Assn. v. Bay Area Air Quality Management Dist.*
(2015) 62 Cal.4th 369 .................................................... *passim*

*Citizens for a Sustainable Treasure Island v. City and County of San Francisco*
(2014) 227 Cal.App.4th 1036 .................................. 13, 14, 33

*City of Santee v. County of San Diego*
(1989) 214 Cal.App.3d 1438 ............................................... 22

*Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn.*
(1986) 42 Cal.3d 929 .................................................... *passim*

*County of Inyo v. City of Los Angeles*
(1977) 71 Cal.App.3d 185 ............................................. *passim*

*County of Inyo v. City of Los Angeles*
(1984) 160 Cal.App.3d 1178 ......................................... 30, 31

*Dry Creek Citizens Coalition v. County of Tulare*
(1999) 70 Cal.App.4th 20 ................................................... 33

*East Sacramento Partnerships for a Livable City v. City of Sacramento*
(2016) 5 Cal.App.5th 281 ................................................... 16

*Friends of Davis v. City of Davis*
(2000) 83 Cal.App.4th 1004 ............................................... 39

Document received by the CA 2nd District Court of Appeal.

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Mani Brothers Real Estate Group v. City of Los*
*Angeles*
(2007) 153 Cal.App.4th 1385..........................................23, 39

*McQueen v. Bd. of Directors of the Mid-Peninsula*
*Regional Open Space Dist.*
(1988) 202 Cal.App.3d 1136 ...................................................13

*Mountain Lion Coalition v. Fish & Game Com.*
(1989) 214 Cal.App.3d 1043 ...........................................21, 22

*People v. County of Kern*
(1974) 39 Cal.App.3d 830 .......................................................20

*Rural Landowners Assn. v. City Council*
(1983) 143 Cal.App.3d 1013 .........................................*passim*

*San Franciscans Upholding the Downtown Plan v.*
*City & County of San Francisco*
(2002) 102 Cal.App.4th 656...................................................35

*San Joaquin Raptor Rescue Center v. County of*
*Merced* (2007) 149 Cal.App.4th 645.........................22, 23, 30

*Save Our Peninsula Com. v. Monterey County Bd. of*
*Supervisors*
(2001) 87 Cal.App.4th 99.......................................................13

*South of Market Community Action Network v. City*
*and County of San Francisco*
(2019) 33 Cal.App.5th 321, 328....................................*passim*

*Stopthemillenniumhollywood.com v. City of Los*
*Angeles*
(2019) 39 Cal.App.5th 1 ...................................................32, 33

Document received by the CA 2nd District Court of Appeal.

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Sutter Sensible Planning, Inc. v. Bd. of Supervisors*
   (1981) 122 Cal.App.3d 813 ........................................... 28, 34

*Tomlinson v. County of Alameda*
   (2012) 54 Cal.4th 281........................................................ 19

*Washoe Meadows Community v. Dept. of Parks &*
   *Recreation*
   (2017) 17 Cal.App.5th 277..........................................*passim*

*Western States Petroleum Assn. v. Super. Ct.*
   (1995) 9 Cal.4th 559........................................................ 13

FEDERAL CASES

*State of California v. Block*
   (9th Cir. 1982) 690 F.2d 753............................................. 18

STATE STATUTES

Gov. Code
   §§ 12600-12612...............................................................9

Pub. Resources Code
   § 21000 et seq. .................................................................9
   § 21000............................................................................ 24
   § 21001............................................................................ 24
   § 21002............................................................................ 24
   § 21005........................................................... 20, 23, 24
   § 21166............................................................................ 38

STATE CONSTITUTIONAL PROVISIONS

Cal. Const., Article V, § 13 ...............................................9

Document received by the CA 2nd District Court of Appeal.

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**COURT RULES**

Cal. Rules of Court
    § 8.200(c)(7) .............................................................................8
    § 8.204(c)................................................................................. 42

**STATE REGULATIONS**

Cal. Code Regs., tit. 14 (CEQA Guidelines)
    § 15000 et seq. .................................................................. 10
    § 15002................................................................................. 19
    § 15003................................................................................. 13
    § 15021................................................................................. 24
    § 15088.5......................................................................... 13, 14
    § 15201................................................................................. 20

Document received by the CA 2nd District Court of Appeal.

463

# INTRODUCTION

The California Attorney General respectfully submits this brief as amicus curiae in support of Plaintiffs and Respondents Southwest Regional Council of Carpenters and Laborers' International Union of North America, Local 300 (collectively, "Respondents") pursuant to rule 8.200(c)(7) of the California Rules of Court. This brief is submitted in the Attorney General's independent capacity and not on behalf of any State agency or entity.

This case arises out of the City of Los Angeles' ("City") approval of the ICON at Panorama project and certification of the accompanying final environmental impact report ("FEIR"). The ICON at Panorama is a mixed-use commercial and residential development project sited in the San Fernando Valley. The project approved by the City consists of the development of 623 multi-family residences, in addition to 60,000 square feet of commercial space and on-site parking facilities ("Revised Project"). The original project proposed and analyzed in the City's environmental documents, however, promised some 200 fewer residential units (imposing less pressure on existing neighborhood resources) and approximately 200,000 square feet of commercial space (providing more services for the area's existing residents) ("Original Project").

Document received by the CA 2nd District Court of Appeal.

464

The Attorney General has long supported urban infill development, especially infill housing in communities facing severe housing shortages. However, even much-needed housing projects must be approved in compliance with the California Environmental Quality Act ("CEQA") (Pub. Resources Code, § 21000 et seq.). Where, as in this case, a lead agency approves a project that varies substantially from the proposed project and alternatives analyzed in the documents circulated for review and comment, it violates the letter of CEQA and frustrates its public participation and informed decisionmaking purposes. This Court should therefore affirm the Superior Court's order setting aside the City's approval of the Revised Project and certification of the FEIR.

## STATEMENT OF INTEREST

As the State's chief law enforcement officer, the Attorney General is charged with ensuring that the State's laws are adequately enforced. (Cal. Const., art. V, § 13.) The Attorney General also has a duty to, on behalf of the people of the State of California, protect the environment and natural resources of the State from pollution, impairment, and destruction. (Gov. Code, §§ 12600-12612.) Indeed, Government Code section 12606 permits the Attorney General "to intervene in any judicial or administrative proceeding in which facts are alleged concerning

*Document received by the CA 2nd District Court of Appeal.*

pollution or adverse environmental effects which could affect the public generally."

The Attorney General has a particular interest in ensuring the proper interpretation of CEQA and its implementing regulations (Cal. Code Regs., tit. 14, § 15000 et seq. (hereafter "CEQA Guidelines")). The Attorney General submits comment letters providing guidance to CEQA lead agencies and initiates and intervenes in CEQA litigation to enforce CEQA's requirements and to uphold its underlying purposes. The Attorney General also submits amicus curiae briefs in CEQA cases that present issues of statewide concern.

In submitting this amicus brief, the Attorney General seeks to encourage CEQA lead agencies to modify projects to respond to public comments and reduce environmental impacts, while still ensuring that CEQA's requirements are met and its purposes of informed public participation and informed, accountable agency decisionmaking are upheld.

## PROCEDURAL BACKGROUND

In August 2016, the City issued a Notice of Preparation of an Environmental Impact Report and Public Scoping Meeting ("Notice of Preparation") for the ICON at Panorama project. (AR 4017.) The Notice of Preparation described a project involving the construction of 423 multi-family residential units, commercial space, and associated parking facilities. (AR 4018.) The City held

Document received by the CA 2nd District Court of Appeal.

a public scoping meeting and requested public comments on the scope and content of the environmental impact report.[1] (AR 4017.)

The City circulated a draft environmental impact report ("DEIR") in April 2017 and recirculated a revised draft environmental impact report ("RDEIR") in August 2017. Both the DEIR and the RDEIR included a project description consistent with the Original Project, composed of 422 multi-family residences, commercial space, and associated parking facilities.[2] (AR 435, 2557.) The DEIR included four project alternatives, which were incorporated without revision into the RDEIR. (AR 827, 835, 849, 863, 2558.) The four alternatives in the DEIR and RDEIR only proposed a *reduced* number of residential units to be developed, ranging from zero to 350 residential units. (*Id.*) None of the alternatives called for an increase in residential development like that in the Revised Project. (*Id.*) The City

---

[1] Public comments submitted in response to the Notice of Preparation raised concerns that the area surrounding the project site was already too dense for additional development and that the project's new residential units would exacerbate an existing parking shortage. (AR 4094-4098.)

[2] The proposed project described in the Notice of Preparation included 423 residences, while the proposed project described in the DEIR, RDEIR, and FEIR included 422 residences. Because this one-unit difference is minimal, this brief uses the term "Original Project" to refer to both variants.

Document received by the CA 2nd District Court of Appeal.

circulated the DEIR and RDEIR for public review and comment before publishing the FEIR in February 2018. (AR 2951.)

The FEIR's project description also matched the Original Project, including the development of 422 multi-family residential units, commercial space, and on-site parking.[3] (AR 2951.) However, in addition to the four project alternatives included in the DEIR and RDEIR, the FEIR introduced for the first time a new project alternative, which called for the development of 675, rather than 422, multi-family residences ("Alternative 5"). (AR 3170.) The FEIR, including this new alternative, was not subject to formal public comment.

The City ultimately approved a variant of Alternative 5 that consists of the development of 623 multi-family residences, commercial space, and parking facilities (the Revised Project). (AR 32.) The Revised Project includes 200 more residential units than the Original Project identified in the Notice of Preparation, DEIR, RDEIR, and FEIR. Yet, neither the Original Project nor any alternatives identified and analyzed in the CEQA documents circulated for public review contemplate the possibility of *any* increase in residential units.

---

[3] The project description included in the State Clearinghouse Database also describes the project as a mixed-use development involving the construction of 422 multi-family residential units, commercial space, and on-site parking. (AR 2961.)

Document received by the CA 2nd District Court of Appeal.

## ARGUMENT

I.  **THE CITY FAILED TO PROVIDE AN ACCURATE, STABLE, AND FINITE PROJECT DESCRIPTION, VIOLATING CEQA'S INFORMATIONAL REQUIREMENTS**

"CEQA is essentially a full disclosure statute" and the environmental impact report ("EIR") is "the method by which this disclosure is made." (*Rural Landowners Assn. v. City Council* (1983) 143 Cal.App.3d 1013, 1020.) Thus, "[t]he EIR is the heart of CEQA and the integrity of the process is dependent on the adequacy of the EIR." (*Save Our Peninsula Com. v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99, 117 [citations and internal quotation marks omitted]; see also CEQA Guidelines, § 15003, subd. (a).)

"CEQA requires consideration of the potential environmental effects of the project *actually approved* by the public agency, not some hypothetical project." (*McQueen v. Bd. of Directors of the Mid-Peninsula Regional Open Space Dist.* (1988) 202 Cal.App.3d 1136, 1146 disapproved on another ground in *Western States Petroleum Assn. v. Super. Ct.* (1995) 9 Cal.4th 559 [emphasis added].) Accordingly, California courts have long recognized that "[a]n accurate, stable and finite project description is the *sine qua non* of an informative and legally sufficient EIR." [4] (See, e.g., *Citizens for a Sustainable Treasure*

_____

[4] The City argues that Respondents' challenge to the ICON at Panorama project description must be evaluated pursuant to

469

Document received by the CA 2nd District Court of Appeal.

*Island v. City and County of San Francisco* (2014) 227 Cal.App.4th 1036, 1052 [quoting *County of Inyo v. City of Los Angeles* (1977) 71 Cal.App.3d 185, 192-193 ("*County of Inyo I*")] [internal quotation marks omitted].) For a project description to be accurate and stable, "the DEIR, the FEIR, and the final approval must describe substantially the same project" and "[t]he defined project and not some different project must be the EIR's *bona fide* subject."[5] (*Concerned Citizens of Costa Mesa, Inc. v.*

---

the "significant new information" recirculation standard articulated in CEQA Guidelines section 15088.5. (Opening Brief ("OB"), p. 32.) However, an inaccurate or unstable project description provides an independent basis for challenging the legal adequacy of an EIR. (See *County of Inyo I, supra,* 71 Cal.App.3d 185 and *Washoe, supra,* 17 Cal.App.5th 277.) As such, Respondents' challenge to the sufficiency of the ICON at Panorama project description may be maintained despite their express waiver of any challenge arising under CEQA Guidelines section 15088.5.

[5] The City attempts to distinguish the instant case from the project description cases cited by Respondents by arguing that "[t]he common thread of the Stable Project Description cases is that the project description was fatally flawed *at the time the Draft Environmental Impact Report (DEIR) was published.*" (Reply Brief ("RB"), p. 11.) However, this is an unprincipled distinction. A lead agency's failure to provide an accurate and stable project description throughout the CEQA process precludes meaningful public participation just as it does if such inaccuracies are limited to the DEIR. The repeated use of a misleading project description is not a cure. Moreover, as described below, the project description included in the CEQA documents for the ICON at Panorama project was substantially

Document received by the CA 2nd District Court of Appeal.

*32nd Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 938 ("*Costa Mesa*"); *Washoe Meadows Community v. Dept. of Parks and Recreation* (2017) 17 Cal.App.5th 277, 288 ("*Washoe*") [internal quotation marks omitted] [adopting the stable project description standard applied by the trial court].)

Here, the Revised Project approved by the City is not substantially the same as the Original Project identified and analyzed in the CEQA documents circulated for public review and comment. The Notice of Preparation, DEIR, RDEIR, and FEIR, spanning an 18-month period, consistently described and analyzed the Original Project, making the Original Project their *bona fide* subject. However, the Original Project was not ultimately approved by the City. To the contrary, the Revised Project approved by the City includes 200 more multi-family residences than the Original Project. By modifying the project in this way, the City is introducing several hundred additional new residents and guests to the area, putting additional demands on the neighborhood's existing infrastructure and resources, including open space, commercial services, traffic and transportation. In addition, the Revised Project approved by the City includes roughly 140,000 square feet less of commercial

---

different than the project that was actually approved, rendering the project description "fatally flawed" throughout the entire review process, including the DEIR, RDEIR, and FEIR.

Document received by the CA 2nd District Court of Appeal.

15

space, providing fewer new opportunities for existing residents and workers to do business and run errands locally.

Together, these modifications change the balance of the project's benefits and burdens to the community, altering the nature and scope of the project in a meaningful way. (Cf. *East Sacramento Partnerships for a Livable City v. City of Sacramento* (2016) 5 Cal.App.5th 281, 292 [finding that a 2.4% increase in the number of residential units included in a development project constituted a "slight" modification, "the type of change to be expected during the CEQA process"].) Because the project description provided by the City for public comment did not include the modifications, the public was deprived of an opportunity to comment on, and ask questions regarding, the Revised Project's environmental impacts and feasible mitigation measures to reduce or avoid those impacts prior to the project's approval. (*Washoe*, *supra*, 17 Cal.App.5th at 288 [a deficient project description "draws a red herring across the path of public input"].)

The dangers of such a deficient project description are demonstrated in *County of Inyo I*, which evaluated the Los Angeles Board of Water and Power's approval of a water extraction project in the Owens Valley. (*County of Inyo I*, *supra*, 71 Cal.App.3d at 188.) There, the project recommended by the FEIR and ultimately approved by the Board of Commissioners

Document received by the CA 2nd District Court of Appeal.

16

included water extractions both for use within the Owens Valley and for export to Los Angeles. (*Id.* at 199.) However, the project description contained in the DEIR and RDEIR only included extractions for in-valley use. (*Id.* at 189.) Although the DEIR and RDEIR raised the possibility of water extractions for export to Los Angeles, the *County of Inyo I* court determined that the project description, which was more limited in scope than the approved project, violated the informational requirements of CEQA. (*Id.* at 193, 200.) The court explained, "[o]nly through an accurate view of the project may affected outsiders and public decision-makers balance the proposal's benefit against its environmental cost . . . and weigh other alternatives in the balance." (*Id.* at 192-193.)

Here, as in *County of Inyo I*, the approved project is substantially different than the project description set forth in the CEQA documents circulated for public comment, concealing from disclosure significant project modifications. Moreover, unlike in *County of Inyo I,* the ICON at Panorama DEIR and RDEIR failed to even raise the possibility of such project modifications that the City ultimately approved. As a result, the project description provided by the City for the ICON at Panorama project is not accurate and stable, and fails to meet the requirements of CEQA.

Document received by the CA 2nd District Court of Appeal.

As a further matter, the Revised Project approved by the City is also substantially different from the alternatives presented and analyzed in the DEIR and RDEIR. None of the alternatives presented in the CEQA documents circulated for public comment included an increase in residential development. As a result, the significant project modifications approved as part of the Revised Project could not be fairly anticipated by reviewing those alternatives. Thus, the community's existing residents and other interested members of the public had no opportunity to comment on the project modifications included in the Revised Project, the associated environmental impacts, or feasible mitigation measures to reduce or avoid those impacts, as required by CEQA. (See *State of California v. Block* (9th Cir. 1982) 690 F.2d 753, 772 [holding that the United States Forest Service violated the informational requirements of NEPA where: i) the approved action "differed substantially" from the alternatives presented in the draft environmental document circulated for public review; and ii) the approved action "could not be fairly anticipated by reviewing [those] alternatives"]; see also *Washoe*, *supra*, 17 Cal.App.5th at 290 ["cases interpreting NEPA can be persuasive authority for interpreting CEQA"].)

Because the Revised Project approved by the City is not substantially the same as the Original Project or any of the alternatives identified and analyzed in the CEQA documents

Document received by the CA 2nd District Court of Appeal.

474

circulated for public review and comment, the City failed to meet
CEQA's requirement of an accurate, stable, and finite project
description for the ICON at Panorama.

## II.   THE CITY'S FAILURE TO COMPLY WITH CEQA WAS PREJUDICIAL, REQUIRING VACATUR OF ITS APPROVAL OF THE REVISED PROJECT

Where, as here, the failure to comply with CEQA "results
in a subversion of the purposes of CEQA by omitting information
from the environmental review process, the error is prejudicial,"
and reversal is necessary. (*Rural Landowners Assn. v. City
Council* (1983) 143 Cal.App.3d 1013, 1023; see also CEQA
Guidelines, § 15002, subd. (a).) These purposes include
"inform[ing] the government and public about a proposed
activity's potential impacts," "identify[ing] ways to reduce, or
avoid, environmental damage," and "prevent[ing] environmental
damage by requiring project changes via alternatives or
mitigation measures when feasible." (*Cal. Bldg. Industry Assn. v.
Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369,
382 [citing *Tomlinson v. County of Alameda* (2012) 54 Cal.4th
281, 285-286].)

The City acknowledges that "an inaccurate, 'ill-conceived,'
or even misleading project description in the DEIR both impacts
the adequacy of a DEIR's environmental analysis and prevents
'intelligent public participation[.]'" (RB, p. 24.) As discussed
above, because of the inaccurate and misleading project

Document received by the CA 2nd District Court of Appeal.

description *repeatedly* put forth by the City, the ICON at
Panorama EIR is fatally flawed and fails to meet the
informational requirements of CEQA. Further, the City's
deficient project description precluded informed public
participation and frustrated CEQA's purpose of minimizing
environmental impacts to the extent feasible, rendering the City's
CEQA violation prejudicial and requiring reversal of the City's
approval of the Revised Project. (*Washoe*, *supra*, 17 Cal.App.5th
at 290 [citing Pub. Resources Code, § 21005, subd. (b)].)

A.    **The City's Deficient Project Description
      Precluded Informed Public Participation**

"Informed public participation is essential to environmental
review under CEQA." (*Washoe*, *supra*, 17 Cal.App.5th at 285; see
also CEQA Guidelines, § 15201 and *Cal. Bldg. Industry Assn. v.
Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369,
382 [informing the public about a proposed activity's potential
impacts is a primary purpose of CEQA].) "The EIR process
facilitates CEQA's policy of supplying citizen input" and helps to
"insure the integrity of the process of decision by precluding
stubborn problems or serious criticism from being swept under
the rug." (*County of Inyo I, supra*, 71 Cal.App.3d at 192; *People v.
County of Kern* (1974) 39 Cal.App.3d 830, 841.) An EIR that lacks
an accurate, stable project description "impairs the public's right
and ability to participate in the environmental review process."
(*Washoe*, *supra*, 17 Cal.App.5th at 288.) Here, the City failed to

Document received by the CA 2nd District Court of Appeal.

provide an accurate, stable, and finite description for the ICON at Panorama project throughout the CEQA process.

The City's deficient project description omitted relevant information regarding the possible scope of the residential component of the project. (Cf. *Washoe*, *supra*, 17 Cal.App.5th at 283-284; *County of Inyo I*, *supra*, 71 Cal.App.3d at 197.) Due to this omission, the public had no notice that an increase in residential units was under consideration, precluding comment on, and criticism of, the project modification that was ultimately approved. Thus, unsurprisingly, none of the comments on either the DEIR or RDEIR even acknowledged the possibility of such an increase in the number of residential units or the potential environmental impacts associated with such a change. In addition, because Alternative 5 was only introduced in the FEIR and was not subject to a public comment period, obviously none of the comments formally submitted addressed the potential environmental impacts of Alternative 5 or suggested additional feasible mitigation measures for that alternative.

In order to advance CEQA's goals of environmental protection and informed self-government, project alternatives must be presented "at a crucial moment when the merits of a project and its alternatives are under discussion." (*Cal. Bldg. Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 383.) This "crucial moment" is generally at the

Document received by the CA 2nd District Court of Appeal.

stage when the DEIR is circulated for public review and
comment. (*Mountain Lion Coalition v. Fish & Game Com.* (1989)
214 Cal.App.3d 1043, 1052.) In the instant case, while the City
points to Alternative 5 as the cure for this deficiency, Alternative
5 was not included in the DEIR or the RDEIR and, although
Alternative 5 was presented and analyzed in the FEIR, the FEIR
was not formally circulated for public review and comment. As a
result, the City was not required to consider or respond to any
public input submitted with regard to Alternative 5, and the
alternative has never been subjected to adequate public
oversight. Put simply, the FEIR's introduction and analysis of
Alternative 5 "was too little too late to adequately apprise all
interested parties of the true scope of the project for intelligent
weighing of the environmental consequences of the project." (*City
of Santee v. County of San Diego* (1989) 214 Cal.App.3d 1438,
1454-1455, rehg. den., opn. mod. (Nov. 21, 1989).)

Accordingly, the City's deficient project description
precluded informed public participation, "thereby thwarting the
statutory goals of the EIR process." (*Assn. of Irritated Residents
v. County of Madera* (2003) 107 Cal.App.4th 1383, 1391; see *San
Joaquin Raptor Rescue Center v. County of Merced* (2007) 149
Cal.App.4th 645, 657 [holding that the EIR for a mine expansion
project was "insufficient as an informational document for
purposes of CEQA, amounting to a prejudicial abuse of

Document received by the CA 2nd District Court of Appeal.

478

discretion" where the project description "failed to adequately apprise all interested parties of the true scope and magnitude of the project"].)

As here, a deficient project description that deprives the public of a meaningful opportunity for informed participation is prejudicial regardless of how the Revised Project's environmental impacts compare to those of the Original Project. (See *County of Inyo I, supra*, 71 Cal.App.3d 185, 200 [holding that the EIR's use of a narrow, and therefore inaccurate, project description "frustrated CEQA's public information aims" even though the EIR analyzed the environmental impacts of the larger approved project]; Cf. *Mani Brothers Real Estate Group v. City of Los Angeles* (2007) 153 Cal.App.4th 1385, 1401 [unlike in project description cases, in subsequent review cases, "where there is a previously certified EIR, changes in the size [and] nature . . . of a project . . . are meaningful *only* to the extent they affect the environmental impacts of [the] project"].) Moreover, such a deficient project description is prejudicial regardless of whether a different outcome may have resulted if the City had provided an adequate project description throughout the environmental review process. (*Washoe, supra*, 17 Cal.App.5th at 290 ["A deficiency in the EIR may be deemed prejudicial . . . 'regardless of whether a different outcome would have resulted if the public

Document received by the CA 2nd District Court of Appeal.

agency had complied'" with CEQA's informational requirements] [quoting Pub. Resources Code, § 21005, subd. (a)].)

By precluding informed public participation, the City's deficient project description undermined a primary purpose of CEQA. It was therefore prejudicial and the City's approval of the Revised Project must be set aside.

## B. The City's Deficient Project Description Prevented Consideration and Imposition of Feasible Mitigation and Other Project Improvements

The City's failure to include the Revised Project in the CEQA documents circulated for public review and comment subverted CEQA's intent to "identify ways to reduce, or avoid, environmental damage" and to prevent such damage by requiring the adoption of those ways where feasible. (*Cal. Bldg. Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382; see CEQA Guidelines, § 15021, subd. (a) ["CEQA establishes a duty for public agencies to avoid or minimize environmental damage where feasible"]; see also Pub. Resources Code, §§ 21000, 21001, 21002.)

If the Revised Project had been included in the DEIR and/or RDEIR, the City would have had the opportunity – as CEQA requires – to identify and analyze the significant environmental impacts of the Revised Project, to devise feasible mitigation measures to reduce those impacts, and to subject the

480

Document received by the CA 2nd District Court of Appeal.

project modifications and mitigation measures to public review and comment. Had Respondents and the public been afforded a formal opportunity to review and comment on the Revised Project, they could have identified and suggested additional feasible mitigation measures and improvements to the project that had not been considered in the context of the Original Project. To take just one example, the dedication of a certain number of affordable housing units may have been infeasible for the Original Project, but feasible and appropriate under the Revised Project, which includes over 200 additional residences. In fact, a member of the City Planning Commission raised the issue of affordable housing at a Commission meeting that occurred *after* the City's Advisory Agency issued a Letter of Determination[6] stating that it had certified the FEIR and adopted the Revised Project with its increased number of residential units:

> I understand there's not [an] affordable housing requirement for this project *and it can't be added in*. . . . [W]hen we're talking about projects *this large*, 100 percent market rate, we should have a conversation about the economic impacts on those surrounding [] communities – *not that we can request affordable housing*. But I feel we're doing a little bit of a disservice when not addressing that fallout.

(AR 3650 [emphases added].)

---

[6] (See AR 13, 28, 32.)

Document received by the CA 2nd District Court of Appeal.

Recognizing that the Revised Project – which encompasses the development of 200 more residential units than the Original Project and alternatives presented for public input – had already been approved and could no longer be modified, this comment lamented both the larger residential project's lack of an affordable housing requirement and also the public's and the decisionmaker's inability to request such a requirement after the larger project was approved.

"[T]he privileged position that members of the public hold in the CEQA process . . . is based on a belief that citizens can make important contributions to environmental protection and on notions of democratic decision-making." (*Costa Mesa*, *supra*, 42 Cal.3d at 936 [internal quotation marks and citation omitted].) Providing the public with an opportunity to comment on the Revised Project prior to its approval would have ensured informed, accountable agency decisionmaking. Indeed, "public participation assists the [lead] agency in weighing mitigation measures and alternatives[.]" (*Id*. at 938.)

In short, meaningful public discussion of Alternative 5 or the Revised Project could have resulted in tangible project improvements and the adoption of additional feasible mitigation measures. As such, the City's failure to meet the informational requirements of CEQA is prejudicial, requiring vacatur of the City's approval of the Revised Project.

Document received by the CA 2nd District Court of Appeal.

### C.   The City's Reliance on Purported "Unanimous Community Support" is Unavailing

The City attempts to justify its decision to substantially modify the ICON at Panorama Project without subjecting the Revised Project to proper public oversight by asserting that "[t]he proposed increase in housing was met with unanimous community support, with the exception of [Respondents]." (Joint Opening Brief ("OB"), p. 21.) The assertion is unsupported and irrelevant to the question of CEQA compliance.

To substantiate these contentions, the City cites to several public comments. (*Id.*) However, a close review of those comments reveals only general recognition of the need for housing and general support for the ICON at Panorama project. (AR 3622, 3627, 3634, 3641, 3699, 3702, 3704-3705, 5096-5136, 5295, 7601, 7604). None of the comments specifically acknowledge the increase in residential development, as compared to the Original Project, that they allegedly support. (*Id.*)

The City's position, which is based on comments made after the approval of the Revised Project, amounts to a *post hoc* rationalization of its decision not to provide the public with a formal opportunity to review and comment on the Revised Project, "a practice which the courts have roundly condemned." (*Rural Landowners Assn. v. City Council* (1983) 143 Cal.App.3d 1013, 1021.) Indeed, even if there were unanimous public support

for the Revised Project, a lack of public critique of the increase in residential units might simply be the result of the City's failure, throughout the CEQA process, to properly disclose that such an increase was under consideration or could feasibly meet the project's objectives. (See *id.* [noting it was impossible to know what effect comments from state agencies would have had "on public comments, presentations and official reaction," had they been available for public review prior to project approval]; see also *Sutter Sensible Planning, Inc. v. Bd. of Supervisors* (1981) 122 Cal.App.3d 813, 822 ["There are two dangers that can occur when information appears in the final EIS for the first time: (1) the ultimate decision-makers will believe that there is no controversy due to the lack of critical comment; and (2) objective errors without being red-flagged would go unnoticed"].)

The City also argues that the five-month period between City staff's recommendation to approve the Revised Project and the City Council's final approval "provided substantially more notice and opportunity for public comment than required under CEQA." (RB, p. 57.) To substantiate this argument, the City cites to adverse comments and two separate appeals submitted by Respondents during this time period. (*Id.* pp. 26, 58 [citing AR 5232-5234, AR 5278-5285, and AR 6202-6313].)

However, CEQA does not require a lead agency to consider or respond to comments, such as these, which are submitted

Document received by the CA 2nd District Court of Appeal.

outside of a formal public comment period. Moreover, the primary thrust of these comments and appeals is the very crux of this litigation: the City recommended approval of a project that is substantially different than the Original Project and all alternatives subjected to public review and comment. (AR 5279 ["The City's EIR flatly violates the mandates of CEQA since no CEQA document has ever studied the project now proposed to be adopted . . . [and neither] the public, nor decision-makers, nor experts have had an opportunity to review and comment on that project"]; AR 5234, 6204 [arguing that the City and project proponent violated CEQA by significantly revising the Project to increase the extent of residential development without adequately describing or analyzing the increase in the EIR].) Relying on appeals alleging inadequate opportunity for public participation under CEQA as evidence that there was "substantially more notice and opportunity for public comment than required under CEQA" is misguided. (RB, p. 57.) Adverse comments submitted outside of a formal public comment period and appeals alleging CEQA violations cannot cure the City's failure to comply with CEQA.

 The question of prejudice due to the diminution of informed public participation is independent of whether the City would have approved the Revised Project had it fully complied with CEQA. (*Rural Landowners Assn. v. City Council* (1983) 143

485

Document received by the CA 2nd District Court of Appeal.

Cal.App.3d 1013, 1022 [Agencies cannot be allowed to "avoid compliance with various provisions of the law [by arguing] that compliance would not have changed their decision."].) Here, the public was deprived of an opportunity to engage in meaningful discussion about the Revised Project's potential impacts and benefits, design modifications to increase those impacts, and feasible mitigation measures to reduce or avoid those impacts. Nor did the agency decisionmakers have all relevant information prior to approving the Revised Project. No more is required to show prejudice under CEQA and the level of public support for the Revised Project is therefore irrelevant. (*San Joaquin Raptor Rescue Center v. County of Merced* (2007) 149 Cal.App.4th 645, 672 ["The ultimate decision of whether to approve a project, be that decision right or wrong, is a nullity if based upon an EIR that does not provide the decisionmakers, and the public, with the information about the project that is required by CEQA."] [internal quotation marks, brackets, and citations omitted].) As such, the City's approval of the Revised Project and certification of the FEIR must be set aside.

## III. LEAD AGENCIES HAVE FLEXIBILITY TO MODIFY PROJECTS CONSISTENT WITH CEQA'S INFORMATIONAL REQUIREMENTS

"CEQA compels an interactive process of assessment of environmental impacts and responsive project modification," and provides lead agencies with "flexibility to respond to unforeseen

Document received by the CA 2nd District Court of Appeal.

486

insights that emerge from the process." (*County of Inyo v. City of Los Angeles* (1984) 160 Cal.App.3d 1178, 1185 ("*County of Inyo II*").) But this project modification process "must be open to the public, premised upon a full and meaningful disclosure of the scope, purposes, and effect of a consistently described project[.]" (*Ibid.*)

The City asserts that its approval of the Revised Project is an example of "exactly how the CEQA process is expected to work," explaining that, "the Revised Project addressed public comments by reducing commercial square footage and removing certain commercial uses in favor of increased housing, thereby lessening significant traffic and air quality impacts." (OB, p. 14.)

It is undisputed that, following an 18-month environmental review process, including three rounds of public comment focused on the Original Project, the City adopted the Revised Project, increasing the number of residential units that would be developed by almost 50%. However, as discussed above, there was no public notice that the City was contemplating an increase in the number of residential units that would be developed, and the project description ultimately proved inaccurate. Accordingly, the process by which the City made this modification was not "open to the public, [and] premised upon a full and meaningful disclosure of the scope, purposes, and effect of a consistently

Document received by the CA 2nd District Court of Appeal.

described project[.]" (*County of Inyo II, supra*, 160 Cal.App.3d at 1185.)

Moreover, the City points to no public comments calling for such an increase in residential units. Rather, the City argues that the increase in residential development was made in response to "public comments expressing concerns regarding the traffic and air quality impacts of the [Original] Project." (OB, pp. 17-18.) CEQA encourages modifications that are responsive to public comments, especially where they reduce a project's significant environmental impacts. (*South of Market Community Action Network v. City and County of San Francisco* (2019) 33 Cal.App.5th 321, 335-336 ("*SoMa*") ["The whole point of requiring evaluation of alternatives in the DEIR is to allow thoughtful consideration and public participation regarding other options that may be less harmful to the environment"].) However, the lead agency cannot make drastic changes to a project's design outside of the public eye, rendering the project description inaccurate, under the guise of a supposed "small reduction in development." (OB, p. 19.)

As discussed briefly below, there are several ways in which a lead agency can significantly modify projects consistent with CEQA's informational requirements. Here, there were no cognizable impediments to the City utilizing one of these approaches. (Compare *Stopthemillenniumhollywood.com v. City*

488

Document received by the CA 2nd District Court of Appeal.

*of Los Angeles* (2019) 39 Cal.App.5th 1, 19 [emphasizing that there were "no practical impediments as to why [the project proponent] could not have provided an accurate, stable and finite description of what it intended to build"] with *Citizens for a Sustainable Treasure Island v. City and County of San Francisco* (2014) 227 Cal.App.4th 1036, 1054 [explaining that an EIR "cannot be faulted for not providing detail that, due to the nature of the Project, simply does not . . . exist"].) In fact, the City may be able to utilize one of the first two approaches described below, should this Court vacate the City's project approval and remand to the City so that it may comply with CEQA.

### A.   A Lead Agency Can Substantially Modify a Project Through the Revision and Recirculation of the Draft Environmental Impact Report

A lead agency can make substantial modifications to a project by revising an existing DEIR and presenting it to the public for review and comment prior to project approval. (See, e.g., *Dry Creek Citizens Coalition v. County of Tulare* (1999) 70 Cal.App.4th 20, 25 [explaining that preparation of a revised DEIR, including a revised project description and additional analysis of the proposed project's environmental impacts was necessary where the lead agency agreed to modify the proposed mining project to include water diversion structures not contemplated in the original DEIR].) Where project modifications

Document received by the CA 2nd District Court of Appeal.

are so extensive that they fundamentally and qualitatively change the nature of the project, the new proposal may be treated as a new project altogether for which preparation of a new DEIR is required.

Here, the City could have modified the ICON at Panorama project without violating the informational requirements of CEQA by revising the existing DEIR to describe and analyze a proposed project consistent with Alternative 5 or the Revised Project. The City could have then presented the revised or new DEIR to the public for review and comment prior to preparing and certifying an FEIR and approving the Revised Project.

In an attempt to justify its decision not to revise and recirculate the DEIR, the City explains "lead agencies necessarily need to work collaboratively with private developers during the CEQA review process," and points out that "for private developers, when it comes to CEQA review, 'time is money.'" (OB, pp. 37-38.) The City further explains that additional public review and comment periods may cause project proponents to become hostile to the adoption of project modifications or alternatives that reduce environmental impacts. (*Id.*)

Although the revision and recirculation of a DEIR may indeed cause further delay of a project, "we may not permit such considerations to eviscerate the fundamental requirement of public and agency review, [as] that is the strongest assurance of

490

Document received by the CA 2nd District Court of Appeal.

the adequacy of the EIR." (*Sutter Sensible Planning, Inc. v. Bd. of Supervisors* (1981) 122 Cal.App.3d 813, 823.) Ultimately, "the primary duty to comply with CEQA's requirements must be placed on the public agency," and the City cannot absolve itself of that duty to ward off the potential hostility of the project proponent. (*Costa Mesa*, *supra*, 42 Cal.3d at 939.)

### B. A Lead Agency Can Substantially Modify a Project Through the Selection of an Alternative Presented and Analyzed in the Draft Environmental Impact Report

A lead agency can reserve the flexibility to choose a substantially different project design by presenting and analyzing a wider range of project alternatives in the DEIR, where each is subject to public review and comment. Indeed, one of "CEQA's only purpose[s] is to guarantee that . . . insofar as practically possible, feasible alternatives . . . will be adopted to lessen or avoid adverse environmental impacts." (*San Franciscans Upholding the Downtown Plan v. City & County of San Francisco* (2002) 102 Cal.App.4th 656, 695 [original emphasis omitted].)

A lead agency may even adopt a variant of an alternative that was presented in the draft EIR, provided that the maximum possible scope of the project was fully disclosed to the public and analyzed, and all components of the adopted project were addressed in the draft EIR and subject to public comment. For

491

example, in *SoMa*, the draft EIR contained a proposed project
with two options for allocating residential and office space in a
proposed mixed-use development. (*SoMa*, *supra*, 33 Cal.App.5th
at 328.) The draft EIR also discussed nine alternatives to the
proposed project, including four that it deemed to be feasible.
(*Ibid*.) After circulating the draft EIR for public review and
comment, the lead agency prepared a final EIR that adopted a
variant of one of the project alternatives presented in the draft
EIR. (*Id*. at 328-329, 335.) The lead agency then certified the EIR
and approved the project. (*Id*. at 328-329.) Multiple interest
groups brought suit, arguing that the FEIR failed to provide a
stable, accurate, project description. (*Id*. at 332.)

The reviewing court left the lead agency's certification of
the FEIR and approval of the project undisturbed "because the
ultimate project approval adopted characteristics of one of the
proposed alternatives[.]" (*Id*. at 336.) In reaching its holding, the
*SoMa* Court noted that all components of the approved project
were addressed in the DEIR and were subject to public comment.
(*Id*. at 335.) As a result, the documents did not "conceal[]
information that was crucial to a review of the environmental
effects of the project, or . . . impacted public participation." (*Id*. at
334.)

As in *SoMa*, had the City here presented Alternative 5 in a
revised draft EIR circulated for public review and comment, it

Document received by the CA 2nd District Court of Appeal.

likely could have adopted the Revised Project, which is a variant of Alternative 5, in the FEIR prior to certification of the FEIR and approval of the Revised Project.[7] This process would have ensured that the maximum possible scope of the project was fully disclosed and that all components of the approved project – namely the development of up to 675 residential units – were addressed in the DEIR and were subject to public comment. As such, the City could have approved the modified project without violating the informational requirements of CEQA.

---

[7] The City argues "neither [*SoMa*] nor any other decision holds that approval of an alternative included in the FEIR instead of the DEIR is a distinguishing factor" in determining whether a project description is deficient. (RB, p. 31.) However, in discussing its rejection of the *SoMa* Plaintiffs' project description challenge, the *SoMa* Court explained that Plaintiffs failed to "identify any component of the revised project that was not addressed *in the DEIR or subject to public comment.*" (*SoMa*, *supra*, 33 Cal.App.5th at 335.) Indeed, "[t]he whole point of requiring evaluation of alternatives *in the DEIR* is to allow thoughtful consideration and *public participation*[.]" (*Id.* at 335-336.) An alternative included in the DEIR is subject to public comment, while an alternative included only in the FEIR is not. Thus, there is an important difference between an alternative included in the DEIR and one included only in the FEIR. Where, as here, an alternative included only in the FEIR differs so substantially from the proposed project and all alternatives subject to public comment, and that alternative or a variant thereof is ultimately approved, the informational requirements of CEQA have not been met.

Document received by the CA 2nd District Court of Appeal.

### C.   A Lead Agency Can Substantially Modify a Project Through the Preparation of a Supplemental or Subsequent Environmental Impact Report

A lead agency can make substantial modifications to a project after the project has been approved through the preparation and circulation of a supplemental or subsequent EIR. (Pub. Resources Code, § 21166, subd. (a).)

For example, in *Costa Mesa*, the 32nd District Agricultural Association approved an amphitheater construction project following preparation and certification of an associated EIR. (*Costa Mesa*, *supra*, 42 Cal.3d at 933.) The project described in the EIR included the construction of an amphitheater with 5,000 fixed seats and additional lawn seating, on six acres of land, facing away from nearby residences. (*Ibid*.) However, the amphitheater that was actually constructed included 7,000 fixed seats and 8,000 lawn seats, on ten acres of land, facing toward nearby residences. (*Id*. at 934.) The District gave no public notice of the project modifications and afforded no opportunity for public comment prior to the amphitheater's construction. (*Ibid*.) As a result, the plaintiff citizen's group filed suit asserting that the District had a duty to prepare a subsequent or supplemental EIR.

The reviewing court found that the project modifications, including the 40% increase in fixed seating, were "sufficiently important to require consideration of their effects in a later EIR,"

Document received by the CA 2nd District Court of Appeal.

and determined that the District's "failure to prepare a supplemental or subsequent EIR effectively deprived the public of any meaningful assessment of the actual project chosen by the agency."[8] (*Id.* at 938.) As the court explained, CEQA stresses the need for public participation "in the evaluation of the environmental effects of the project *as finally approved.*" (*Costa Mesa*, *supra*, 42 Cal.3d at 938 [emphasis added].)

Accordingly, had the City approved the ICON at Panorama project described in the draft EIRs, it could have prepared a supplemental or subsequent EIR prior to construction of the project describing and analyzing modifications to the project, including a significant increase in the number of residential units

---

[8] Notably, courts are more likely to order additional environmental review in project description challenges, which seek improvements to the original EIR, than in subsequent review challenges, which seek the preparation of a supplemental or subsequent EIR. (See *Mani Brothers Real Estate v. City of Los Angeles* (2007) 153 Cal.App.4th 1385, 1398 ["The rationale for limiting the circumstances under which a supplemental or subsequent EIR may be prepared is precisely because in-depth review has already occurred [and] the time for challenging the sufficiency of the original EIR has long since expired"] [citations and internal quotation marks omitted].) This is because once the original EIR has been certified and all challenges have been resolved, "the interests of finality are favored over the policy favoring public comment[.]" (*Id.* at 1399 [quoting *Friends of Davis v. City of Davis* (2000) 83 Cal.App.4th 1004, 1018 [internal quotation marks omitted].)

Document received by the CA 2nd District Court of Appeal.

that would be developed. Through this process, the City could have modified the project without violating the informational requirements of CEQA.

In sum, CEQA recognizes that project changes may be necessary at different points in the environmental review process and provides mechanisms, including those discussed above, that allow changes to be made, while still insuring public participation and informed and accountable agency decisionmaking.

## CONCLUSION

For the foregoing reasons, the Superior Court's judgment vacating the City's approval of the revised ICON at Panorama project and certification of the associated FEIR should be affirmed.

Document received by the CA 2nd District Court of Appeal.

496

Dated: August 24, 2020        Respectfully submitted,

XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Senior Assistant Attorney General
SARAH E. MORRISON
Supervising Deputy Attorney
General
SCOTT J. LICHTIG
Deputy Attorney General


*/s/ Lani M. Maher*
LANI M. MAHER
Deputy Attorney General
*Attorneys for Amicus Curiae the*
*California Attorney General*

Document received by the CA 2nd District Court of Appeal.

41            497

## CERTIFICATE OF WORD COUNT

Per California Rule of Court § 8.204(c), I certify that the text of this brief, including footnotes, contains 7,848 words, according to Microsoft Word, the computer program used to prepare this brief.

Dated: August 24, 2020          XAVIER BECERRA
                                Attorney General of California
                                EDWARD H. OCHOA
                                Senior Assistant Attorney General
                                SARAH E. MORRISON
                                Supervising Deputy Attorney General
                                SCOTT J. LICHTIG
                                Deputy Attorney General


                                */s/ Lani M. Maher*
                                LANI M. MAHER
                                Deputy Attorney General
                                *Attorneys for Amicus Curiae the*
                                *California Attorney General*

Document received by the CA 2nd District Court of Appeal.

## PROOF OF SERVICE

I am a resident of the State of California, employed in Los Angeles, California. I am over the age of 18 and am not a party to the above-entitled action. My business address is 300 South Spring Street, Suite 1702, Los Angeles, CA 90013.

On August 24, 2020, a true copy of the **Amicus Brief of the California Attorney General in Support of Plaintiffs and Respondents** was electronically filed with the Court of Appeal, Second Appellate District, Division 4, through TrueFiling.com. Notice of this filing will be served to those below via TrueFiling.

| | |
|---|---|
| Tina A. Thomas<br>Amy R. Higuera<br>Christopher J. Butcher<br>Thomas Law Group<br>455 Capitol Mall, Suite 801<br>Sacramento, CA 95814<br>tthomas@thomaslaw.com<br>ahiguera@thomaslaw.com<br>cbutcher@thomaslaw.com | Attorneys for CITY OF LOS ANGELES, LOS ANGELES CITY COUNCIL, and LOS ANGELES DEPARTMENT OF CITY PLANNING |
| Michael N. Feuer<br>Leonard P. Aslanian<br>City of Los Angeles<br>200 N. Main St.,<br>701 City Hall East<br>Los Angeles, CA 90012<br>michael.feuer@lacity.org<br>len.aslanian@lacity.org | Attorneys for CITY OF LOS ANGELES, LOS ANGELES CITY COUNCIL, and LOS ANGELES DEPARTMENT OF CITY PLANNING |

Document received by the CA 2nd District Court of Appeal.

| | |
|---|---|
| Damon P. Mamalakis<br>Armbruster Goldsmith &<br>Delvac, LLP<br>12100 Wilshire Blvd., Ste. 1600<br>Los Angeles, CA 90025<br>damon@agd-landuse.com | Attorneys for THE ICON AT<br>PANORAMA, LLC |
| Richard T. Drury<br>Rebecca L. Davis<br>Lozeau Drury, LLP<br>1939 Harrison St., Ste. 150<br>Oakland, CA 94612<br>richard@lozeaudrury.com<br>rebecca@lozeaudrury.com | Attorneys for SOUTHWEST<br>REGIONAL COUNCIL OF<br>CARPENTERS; and<br>LABORERS<br>INTERNATIONAL UNION<br>OF NORTH AMERICA<br>LOCAL 300 |

I declare under penalty of perjury that the foregoing is true and correct, and that this Proof of Service was executed this 24th day of August, 2020 at Los Angeles, California.

*/s/ Lois E. Smith*
LOIS E. SMITH

Document received by the CA 2nd District Court of Appeal.