EXHIBIT 9

2nd App. Dist. Civil No. B301374

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT, DIVISION 4

SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, *et al*;

Petitioners and Respondents.

V.

CITY OF LOS ANGELES, *et al*;

Respondents and Appellants.

THE ICON AT PANORAMA, LLC;

Real Party in Interest and Appellant.

**[PROPOSED] AMICUS CURIAE BRIEF OF THE NATURAL RESOURCES DEFENSE COUNCIL, PLANNING AND CONSERVATION LEAGUE AND COALITION FOR CLEAN AIR TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF PETITIONERS AND RESPONDENTS SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, ET AL**

Appeal from the Superior Court for the County of Los Angeles
Case No BS 175189
Honorable James C. Chalfant

David Pettit (SBN 67128)
1314 2nd St
Santa Monica, CA 90401
Telephone: (310) 434 - 2300
Fax: (310) 434 - 2399
Email: dpettit@nrdc.org

Attorneys for Amicus Curiae Natural Resources Defense Council

Document received by the CA 2nd District Court of Appeal.

Douglas P. Carstens (SBN 193439)
CHATTEN BROWN CARSTENS & MINTEER
2200 Pacific Coast Hwy, Ste 318
Hermosa Beach, CA 90254-2702
Telephone: (310) 798 - 2400
Fax: (310) 798 - 2404
Email: dpc@cbcearthlaw.com

Mitchell M. Tsai (SBN 277156)
MITCHELL M. TSAI, ATTORNEY AT LAW
155 South El Molino Avenue, Ste. 104
Pasadena, CA 91101
Ph: (626) 381 – 9248
Fx: (626) 389 – 5414
Email: mitch@mitchtsailaw.com

Attorneys for Amici Planning and Conservation League and Coalition for Clean Air

Document received by the CA 2nd District Court of Appeal.

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................... - 5 -
    A. CEQA's "Stable Project Description" Requirement Requires That Core Elements of a Proposed Project Be Described .................... - 5 -
    B. The City's Interpretation of CEQA Would Undermine Informed Public Participation and Environmental Decision-making ...... - 7 -
    C. The Number of Residential Units is Critical to Allow the Public to Comment Upon the Project's Impacts on Greenhouse Gas Emissions ................................................................................ - 9 -
    D. The Number of Residential Units is Critical to Allow the Public to Comment Upon the Project's Impacts on Land Use and Public Services .................................................................................. - 13 -
III. CONCLUSION ..................................................................................... - 15 -

Document received by the CA 2nd District Court of Appeal.

# TABLE OF AUTHORITIES

**Cases**

*Golden Door Properties LLC v. County of San Diego* (2020) 50
    Cal. App. 5th 467 ................................................................................. - 11 -

*Santiago County Water Dist. v. County of Orange* (1981) 118 Cal.
    App. 3d 818 .......................................................................................... - 6 -

*Sierra Club v. County of Fresno* (2018) 6 Cal. 5th 502 ................ - 7 -

*South of Market Community Action Network v. City and County
    of San Francisco* (2019) 33 Cal. App. 5th 321 .......................... - 7 -

**Statutes**

California Environmental Quality Act's , Cal. Public Resources
    Code § 21000 *et seq* ................................................................. - 5 -

**Regulations**

CEQA Guidelines § 15124 ......................................................... - 6 -

CEQA Guidelines § 15125 ....................................................... - 13 -

CEQA Guidelines Appendix G ................................................ - 13 -

CEQA Guidelines § 15064.4 ..................................................... - 8 -

Document received by the CA 2nd District Court of Appeal.

# [PROPOSED] AMICUS CURIAE BRIEF

## I. INTRODUCTION

The City of Los Angeles ("City") asks this Court to allow public agencies to "bait and switch" the public by allowing public agencies to take public comment on a Draft Environmental Impact Report only to then unveil and then approve an entirely different project afterwards.

The City's interpretation of the California Environmental Quality Act's , Cal. Public Resources Code § 21000 *et seq* ("CEQA") would undermine CEQA's statutory objective of fostering informed public participation and environmental decision-making by allowing an agency to describe and analyze one project for public review only to approve an entirely different one later.

Amici Natural Resources Defense Council, Planning and Conservation League, Coalition for Clean Air and Communities for a Better Environment (collectively "Amici") request that the Court deny the City's appeal and uphold CEQA's stable project description requirements.

## II. ARGUMENT

### A. CEQA's "Stable Project Description" Requirement Requires That Core Elements of a Proposed Project Be Described

In addition to requiring that a Project's environmental documents an accurate, stable and finite project description,

Document received by the CA 2nd District Court of Appeal.

CEQA requires that a CEQA environmental document <u>adequately</u> describe a Project by providing "sufficient information to evaluate and review the environmental impact of a project" by including"[t]he precise location and boundaries of the proposed project"," "[a] general description of the project's technical, economic and environmental characteristics" as well as a particular project's objectives and the intended uses of the environmental document, i.e. the specific decisions that will be before public agencies concerning the project at issue. CEQA Guidelines § 15124.[1]

    It is important to note that CEQA has very specific requirements as to what must be as opposed to what does not need to be included within an environmental impact report's description of a particular project. CEQA merely requires that "integral" components of a project be described." (*Santiago County Water Dist. v. County of Orange* (1981) 118 Cal. App. 3d 818, 829 ("*Santiago*") (finding an inadequate project description when integral components of the Project were not discussed).

---

[1] The CEQA Guidelines, codified in Title 14 of the California Code of Regulations, section 15000 *et seq*, are regulatory guidelines promulgated by the state Natural Resources Agency for the implementation of CEQA. (Cal. Pub. Res. Code § 21083.) The CEQA Guidelines are given "great weight in interpreting CEQA except when . . . clearly unauthorized or erroneous." *Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 62 Cal. 4th 204, 217.

Document received by the CA 2nd District Court of Appeal.

The City correctly concedes that the land uses planned to be permitted for a particular project must be described as part of a mixed-use development's project description. *See e.g.* Reply Brief at p. 19. In particular, the Court noted that the project description that the lead agency provided in *South of Market Community Action Network v. City and County of San Francisco* (2019) 33 Cal. App. 5th 321 was adequate since the project description described "**two options for different allocations of residential and office units**." (Emphasis added.) It is undisputed that the land uses proposed for a particular project is an integral component for a description of a development project and that therefore the City had an obligation to maintain a stable description concerning that the land uses proposed for the Project.

### B. The City's Interpretation of CEQA Would Undermine Informed Public Participation and Environmental Decision-making

The simple fact of the matter is that the project that the City approved in this instance was not analyzed in the City's environmental documents. As the California Supreme Court recently found in *Sierra Club v. County of Fresno* (2018) 6 Cal. 5th 502:

> The ultimate inquiry under the California Environmental Quality Act (CEQA), Pub. Resources Code, § 21000 et seq., is whether the environmental impact report (EIR) includes enough detail to enable

Document received by the CA 2nd District Court of Appeal.

> those who did not participate in its preparation to understand and to consider meaningfully the issues raised by the proposed project. Whether an EIR will be found in compliance with CEQA involves an evaluation of whether the discussion of environmental impacts reasonably sets forth sufficient information to foster informed public participation and to enable the decision makers to consider the environmental factors necessary to make a reasoned decision.

(*Id.* At 516.) Here, since the project that was ultimately approved by the City was not the same project that was described and analyzed through the Draft and Final EIR, the Project's environmental documents failed to foster informed public participation or informed environmental decision-making since the public never got a chance to review environmental analysis of the project that was ultimately approved. Here, it is difficult to understand how the Project's EIR could have meaningfully allowed the public to consider the issues raised by the proposed project if the project that was ultimately approved was never actually discussed or analyzed in the project's environmental impact report.

Document received by the CA 2nd District Court of Appeal.

### C. The Number of Residential Units is Critical to Allow the Public to Comment Upon the Project's Impacts on Greenhouse Gas Emissions

CEQA Guidelines § 15064.4(a) requires a lead agency to "make a good-faith effort, based to the extent possible on scientific and factual data, to describe, calculate or estimate the amount of greenhouse gas emissions resulting from a project." But that did not happen here because of changes to the project made after the close of public comment.

Most GHG emissions in California are associated with the transportation sector, and vehicle miles traveled (VMT) is rising in California, as it is nationally. New housing developments that increase regional VMT will cause GHG emissions to rise further. As transportation-related GHG emissions increase, so do co-pollutants such as oxides of nitrogen (a precursor to ground-level ozone, or smog) and particulate matter emitted from vehicle tailpipes.[2]

Housing developments with either electric or gas-fueled space heating, stoves, and water heating, also contribute to GHG

---

1 *See, e.g.*, California Air Resources Board, Methods to Assess Co-Benefits of California Climate Investments, Air Pollutant Emissions, Sustainable Communities and Clean Transportation Sector and Energy Efficiency and Clean Energy Sector (Aug. 30, 2017), available at https://ww3.arb.ca.gov/cc/capandtrade/auctionproceeds/carb_air_pollutant_emissions_transenergy.pdf.

Document received by the CA 2nd District Court of Appeal.

emissions from their energy sources and use, including the storage and transport of natural gas (including methane leakage) where applicable, and such emissions can be calculated.[3] In the case at bench, these emissions were estimated for the original project using the CalEEMod model.[4]

The estimated annual construction-related and operational GHG emissions associated with the proposed project have been calculated utilizing the California Emissions Estimator Model (CalEEMod v.2013.2.2) recommended by the SCAQMD. *See* AR1413 (Appendix to DEIR GHG Impact Analysis).

Under CEQA, increases in GHG emissions, if significant, must be mitigated to the level of insignificance.[5] The state of the art in large housing developments now requires the project to be zero net energy and zero net GHGs. *See, e.g.*, the Newhall Ranch

---

3 *See, e.g.*, at https://www.theclimateregistry.org/protocols/GRP-V3-Quantification-Methods.pdf. Regarding methane leakage associated with the use of natural gas, see https://www.nrdc.org/onearth/natural-gas-industry-has-methane-problem.

4 The CalEEMod model, which is commonly used in California, can be found at http://www.caleemod.com/.

5 Unless there are no feasible mitigation measures or alternatives to do so, at which point an unavoidable significant adverse impact must be disclosed to the public and a valid Statement of Overriding Considerations adopted in order to approve the project.

Document received by the CA 2nd District Court of Appeal.

project, described at https://netzeronewhall.com/. More and more, building codes are requiring new construction to be all-electric in order to minimize GHG emissions associated with natural gas.[6] To reach zero net GHGs, new projects sometimes require GHG offsets to be acquired.

The intersection between CEQA and the analysis of GHGs and GHG offsets a developing issue in California. For example, in *Golden Door Properties LLC v. County of San Diego* (2020) 50 Cal. App. 5th 467, the Court of Appeal rejected the County of San Diego's Climate Action Plan because of the Plan's reliance on a flawed method of approving GHG offsets that gave the County Development Officer unfettered discretion to approve GHG offsets. But this analysis depends, in the first instance, on accurate data about what a project's GHG emissions are expected to be over the life of the project. That did not happen in the case at bench.

Instead, the substantial change in the project in this case, after the close of public comment, isolated the FEIR's analysis of criteria pollutants and GHGs from public review.

The FEIR concluded that criteria pollutants and GHGs will be reduced 44% with respect to the original project[7], based

---

6 *See, e.g.*, https://e360.yale.edu/features/to-cut-carbon-emissions-a-movement-grows-to-electrify-everything

7 *See* AR3173 (FEIR at III-9).

Document received by the CA 2nd District Court of Appeal.

- 11 -

entirely on the unsupported assumption that those pollutant levels vary in a directly linear way with the number of vehicle trips. The FEIR has a brief level of service analysis of traffic patterns but does not contain any EMFAC or other modeling runs showing changes in emissions, notwithstanding the fact that the EMFAC manual suggests multiple runs to support a project-level analysis.[8]

But neither the FEIR Alternative 5 nor the final project took into account emissions associated with the additional space and water heating and cooking in the larger residential project, which would be expected to increase. Instead, the FEIR states:

> The less-than significant impact of the Reduced Commercial Project Alternative with respect to GHG emissions would be less than the Project's less-than-significant impact due to fewer vehicle trips[9].

This lazy conclusion ignores how the CalEEMod program works. CalEEMod Appendix A, Calculation Details for CalEEMod,[10] explains at p. 37:

The program uses data collected during the Residential Appliance Saturation Survey (RASS) to develop

---

8 *See .* EMFAC handbook at Section 2.1: https://ww3.arb.ca. gov/msei/downloads/emfac2017-volume-ii-pl-handbook.pdf.
9 AR3174 (FEIR at III-10).
10 http://www.aqmd.gov/docs/default-source/caleemod/02 appendix-a2016-3-2.pdf?sfvrsn=6

Document received by the CA 2nd District Court of Appeal.

energy intensity values (electricity and natural gas usage per square foot per year) for residential buildings.

Here, where the total residential square footage increases substantially, the residential energy use estimated by CalEEMod will increase substantially as well. This is common sense: more units, more heating and air conditioning, more cooking etc. But common sense did not come into play in the GHG analysis here. Instead we have a back of the envelope effort at best – but there is no envelope. The conclusion in the FEIR that GHG emissions will be lower than in the original project was pulled out of thin air.

This analysis, such as it is, was insulated from public comment because the final alternative was presented by the City without prior notice or opportunity to comment about GHG emissions. Thus, whether the ICON project is, or is not, consistent with the State's tough climate change goals is unknown. Nor is the GHG mitigation analysis complete or reliable.

### D. The Number of Residential Units is Critical to Allow the Public to Comment Upon the Project's Impacts on Land Use and Public Services

CEQA requires that an EIR disclose any "[c]onflict with any applicable land use plan, policy, or regulation of an agency with jurisdiction over the project " and discuss "any

Document received by the CA 2nd District Court of Appeal.

inconsistencies between the proposed project and applicable general plans, specific plans and regional plans. . . . [including] regional housing allocation plans." (CEQA Guidelines Appendix G at X.b; CEQA Guidelines § 15125(d).)

      The number of housing units, i.e. residential density of the Project as well as the ultimate configuration of where residential versus commercial uses are placed, especially at street level, impact a Project's consistency with local land use plans. The Draft EIR extensively discussed both the location of the residential and commercial uses in relation to the surrounding community, analyzing whether the Project's configuration "complements the scale and grain of the regional commercial area along the Van Nuys Boulevard corridor" and their consistency with the City's land use plans for the area, as well as the number of residential units and amount of commercial square footage as it relates to the City's density limits in and around the Project Site. *See* e.g. AR626 – 28 (DEIR finding that "[t]he Project's density would be consistent with the C2 zoning which allows for development of 1 unit per 400 square feet of lot area. The Project would construct **422 residential units and would be consistent with the zoning and, therefore, permitted density on the site**.") (emphasis added).

      The number of residential units planned for the Project is not just a merely trivial matter, it affects not only the Project's

- 14 -

Document received by the CA 2nd District Court of Appeal.

impacts on greenhouse gas emissions and transportation, but also the Project's land use impacts and by extension the Project's impacts on public services such as fire, police, schools, parks and recreation as well as libraries. (AR3177 – 79 [noting that had the City adopted the Reduced Commercial Project Alternative added in the Final EIR, "[t]here would be an approximately 48 percent increase in the number of residential units . . . . [and that [t]ypically, residential developments have the greatest potential to result in impacts to parks and recreation facilities."]) These were all potentially significant impacts that the public never had an opportunity to review and comment upon due to the City's decision to add the Reduced Commercial Project Alternative only after the Draft EIR's public review period.

### III. CONCLUSION

For the above-mentioned reasons, Amici request that the Court deny the City's appeal.

Respectfully Submitted,

Dated: July 24, 2020        NATURAL RESOURCES DEFENSE
                            COUNCIL


                            By: /s/_____
                            David Pettit
                            Attorneys for Amicus Curiae,
                            NATURAL RESOURCES DEFENSE
                            COUNCIL

Document received by the CA 2nd District Court of Appeal.

Dated: July 24, 2020        CHATTEN-BROWN, CARSTENS & MINTEER

             By: /s/_____
             Douglas P. Carstens

Dated: July 24, 2020        MITCHELL M. TSAI, ATTORNEY AT LAW

             By: /s/_____
             Mitchell M. Tsai

             Attorneys for Amici,
             PLANNING AND CONSERVATION LEAGUE and COALITION FOR CLEAN AIR

Document received by the CA 2nd District Court of Appeal.

## CERTIFICATE OF WORD COUNT

This appellant's opening brief is prepared in 13 point Century School font (proportionally spaced "serif" type style) and contains approximately 2,160 words per computer-generated word count.

Dated: July 24, 2020    NATURAL RESOURCES DEFENSE COUNCIL

By: /s/_____
David Pettit
Attorneys for Amicus Curiae,
NATURAL RESOURCES DEFENSE COUNCIL

Dated: July 24, 2020    CHATTEN-BROWN, CARSTENS & MINTEER

By: /s/_____
Douglas P. Carstens

Dated: July 24, 2020    MITCHELL M. TSAI, ATTORNEY AT LAW

By: /s/_____
Mitchell M. Tsai

Attorneys for Amici,
PLANNING AND CONSERVATION LEAGUE and
COALITION FOR CLEAN AIR

Document received by the CA 2nd District Court of Appeal.

# PROOF OF SERVICE

I, Leon Ramsey, Jr., declare as follows:

I am a resident of the State of California, and employed in Pasadena, California. I am over the age of 18 years and am not a party to the above-entitled action. My business address is: 155 South El Molino Avenue, Ste. 104, Pasadena, California 91101. On August 24, 2020, I served a copy of the foregoing document(s) entitled:

**[PROPOSED] AMICUS CURIAE BRIEF OF THE NATURAL RESOURCES DEFENSE COUNCIL, PLANNING AND CONSERVATION LEAGUE AND COALITION FOR CLEAN AIR TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF PETITIONERS AND RESPONDENTS SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, ET AL**

on the following parties:

**On Behalf of Appellants CITY OF LOS ANGELES, LOS ANGELES CITY COUNCIL, and LOS ANGELES DEPARTMENT OF CITY PLANNING**

Christopher J. Butcher
Amy Higuera
Tina Thomas
Thomas Law Group
455 Capitol Mall, Suite 801
Sacramento, CA 95814
cbutcher@thomaslaw.com
ahiguera@thomaslaw.com
tthomas@thomaslaw.com

Leonard P. Aslanian
Michael Feuer
City of Los Angeles
200 N. Main St.
Los Angeles, CA 90012
len.aslanian@lacity.org
Michael.feuer@lacity.org

Document received by the CA 2nd District Court of Appeal.

**On Behalf of Real Party In Interest THE ICON AT PANORAMA, LLC**

Damon P. Mamalakis
Armbruster Goldsmith &
Delvac, LLP
12100 Wilshire Blvd., Ste. 1600
Los Angeles, CA 90025
damon@agd-landuse.com

By electronic service, via either electronic transmission or notification.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on August 24, 2020 at Pasadena, California.

/s/_____
Leon Ramsey, Jr.

Document received by the CA 2nd District Court of Appeal.