EXHIBIT 18



2568 Griffith Park Boulevard #277
Los Angeles, CA 90039
www.silverlakeheritage.org

May 27, 2022

**Supreme Court of California**
**Honorable Chief Justice Tani Cantil-Sakauye and Associate Justices**
350 McAllister Street, Room 1295
San Francisco, California 94102-4797

Re: Amicus Letter in Support of PETITION FOR REVIEW re *Southwest Regional Council of Carpenters, et al. v. City of Los Angeles*, Supreme Court Case No. S274474, Court of Appeal, Second Appellate District, Division Four, Case No. B301374

Dear Honorable Chief Justice Tani Cantil-Sakauye and Associate Justices:

This request is submitted by the Silver Lake Heritage Trust (SLHT), a 501c3 non-profit community organization, focused on historic preservation, housing justice, government accountability and transparency, including and related to land use and California Environmental Quality Act (CEQA) issues throughout the city of Los Angeles.

The subject of CEQA concerns significant issues ultimately affecting the lives of California's 38 million residents. Because the Legislature found "that the government of the state take immediate steps to identify any critical thresholds for the health and safety of the people of the state and take all coordinated actions necessary to prevent such thresholds being reached" (PRC 21000(d)), it is critical that significant project revisions be disclosed to the public. It is otherwise simply not possible to measure impacts.

The Legislature also found that it is policy of the state to "take all action necessary to protect, rehabilitate, and enhance the environmental quality of the state" (PRC 21001(a)). While ultimately, it is the judicial system that ensures public agencies are fulfilling their obligations under CEQA, this only becomes the case when the people are equipped with the financial means to bring CEQA violations to the attention of the judicial system, or the rare attorney is willing to assist pro bono, thereby seeking enforcement. Therefore only a very small percentage of CEQA violations ever see the light of day. This is what our local agencies rely on, knowing the odds are in their favor against the likelihood of being sued for violating CEQA.

While on paper, the CEQA Statutes and Guidelines read as an excellent, responsive, and proactive script to protecting our environment and its inhabitants, our city would look drastically different if

CEQA were actually followed. This is a much broader discussion that warrants the attention of the Honorable Chief Justice Cantil-Sakauye and Associate Justices, but we realize this is not the place to do so. However, this case that we are imploring you to review is one example of how CEQA is being abused and serves as one of the great conflicts that exist between our local decision making agencies, and us - the people.

The California Supreme Court has explained that:

"The EIR is . . . intended 'to demonstrate to an apprehensive citizenry that the agency has, in fact, analyzed and considered the ecological implications of its action.' [Citations.] Because the EIR must be certified or rejected by public officials, it is a document of accountability. If CEQA is scrupulously followed, the public will know the basis on which its responsible officials either approve or reject environmentally significant action, and the public, being duly informed, can respond accordingly to action with which it disagrees. [Citations.]" *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 392.

The Court of Appeal incorrectly reversed the Honorable Judge Chalfant's ruling, which determined the Final EIR certified by the city was to be set aside due to the newly introduced version of an "Alternative" project that had substantially changed since the public was last informed.

The Court of Appeal's reversal threatens to undermine the public participation process even further, while sending a message that contradicts the purpose and intent of CEQA. In this case, the mere introduction of an "Alternative" to the "Alternative 5" making a debut appearance only *after* public comment had closed is one example of how the city continues to chip away at CEQA.

Because an EIR had to be prepared in the first place for this Project, this warns us that there is substantial evidence in the record that the project may have a significant effect on the environment (PRC §21080(d)). When the city presents members of the public with varying versions of a project that have been thoroughly examined as to its impacts and mitigation measures, this is what allows us as members of the public to share what we see. We rely on those specific details in order to address them. When we have done so, and the city comes back with an entirely different proposal than what we have already examined, we as members of the public do not view this as being a good faith effort at full disclosure, as CEQA requires (*Kings County Farm Bureau* v. *City of Hanford* (1990) 221 Cal.App.3d 692, 711-12).

Precluding relevant information such as the number of proposed residential units, the square footage of commercial space, parking, open space, traffic, air, mitigation measures etc. - the comments made in the *initial* draft versions were in response to the specifics the public was provided. Those specifics changed. They were presented as a new "Alternative" *after* the city certified their FEIR. What purpose is CEQA serving if this is found to be acceptable?

*Document received by the CA Supreme Court.*

It is not possible to know what commenters *would have* brought to the table in response to the new proposal, other than the obvious transformation from what was initially advertised as responding to the needs of the community as a "commercial development". However, the needs of the community must have drastically and speedingly changed, as the newest version removed significant commercial aspects and added 250 residential units (as seen in the FEIR, which was not accounted for in any of the previous "Alternatives" or DEIR documents).

Other issues with the process here include the DEIR's failure to identify health risks, groundwater from soil contamination on the site from decades of industrial use, likely contamination of the site from polychlorinated biphenyls, a probable human carcinogen (AR 4522), failure to implement all feasible mitigation measures to reduce operational air emissions (AR 4529-30), failure to include a health risk assessment from diesel particulate matter, failure to calculate the Project's construction and that it would create a cancer risk <u>30 times above</u> the CEQA significance threshold of 10 per million (AR 4536), the Project's significant increase in Greenhouse Gas Emissions (AR 4545) -- the list goes on.

There are serious and hazardous dangers accompanied by this proposal that the city, once again, doesn't acknowledge as important, or important enough to mitigate. People are not important enough. The entire CEQA process is moot when the governing body certifies the project they want, never having introduced said project in prior drafts, and only did so *after* public participation period is over. This causes a big problem for the people of California, whereas "The fundamental goals of environmental review under CEQA are **information**, **participation**, **mitigation**, and **accountability**." *Lincoln Place Tenants Ass'n. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 443-444.

Also: We note the Court of Appeal's Opinion made sure to include that the Project would <u>not</u> include <u>any</u> affordable housing units (COA Opinion, p5) and that "the State and region are in the midst of a housing shortage" (COA Opinion, p34). The COA Opinion goes on to say "The Project would create new housing to meet the needs of *existing* residents and projected population growth within the Mission Hills/Panorama City/North Hills Community Plan area". Yet the COA Opinion doesn't explain how the Project does this, nor does the version of the project the city certified. The Project falls within Council District 6. This is a district with more than 54% of its residents living **<u>200%</u> Below Poverty Level** (La County, 2022), living in an area with 1.78 Acres of Recreation Space, well below the median of 6.8 acres per 1,000 people (Harnik et al., 2016). 58% of residents in this area are experiencing a housing burden, meaning they are unable to pay their rent. While the Court of Appeal may believe the State is suffering from a housing shortage, Panorama City has no shortage of **market rate** housing, nor is there a long line or waiting list for residents looking to move into them.

Further, the most recently adopted housing element to the city's General Plan shows this specific

neighborhood continues to **decrease** in population (Housing Needs Assessment, 2021). These are examples of *some* of the facts that *could have* been made if members of the public were provided an opportunity to participate in what ultimately was certified. The COA Opinion also tells us after the City revised the DEIR, that Petitioners' expert soil consultant (Soil Water Air Protection Enterprise (SWAPE)) opined that an updated traffic analysis was required due to the underestimation of traffic (which was found to be reduced to an F level of service) and air pollution described in the RDEIR (COA Opinion, p8). These are impacts that were not examined in the certified FEIR against CEQA policy.

We also note the Honorable Judge Chalfant's ruling points out how agencies such as the Los Angeles Fire Department (LAFD) were precluded from submitting input as to safety and response times based on the Revised Project. The city was relying on comment letters directly related to a *different* project. This piece-meal type of review process where the city is permitted to cherry pick from comments and analysis that was submitted in response to *one* version of the project where it suits them, and applies those same, responsive submissions to one of the "Alternative" projects where it suits them - this can't be found to be acceptable within CEQA.

The CEQA process is difficult enough without adding obscure and ambiguous versions that result in no authentic CEQA review for the *actual* project, because it was never afforded the right to have one. Instead, it was assigned second hand findings that were never intended for it, nor did it apply to it. When there is a clear-cut and clean description of a Project, everyone knows what they are addressing; and although not everyone may agree, at least there is no confusion as to the project in question and what the scope is. This did not happen here.

The City of Los Angeles has a fairly impressive track record with CEQA. Essentially, the City rarely finds a project to have any significant impact on the environment. CEQA appeals filed to the City Planning Commission have a <u>100%</u> denial rate. Of the hundreds of projects we have seen over the last few years, most have been given a CEQA exemption. Many members of the public temporarily set aside their own lives in order to learn how to participate in the public CEQA process, only to learn no matter how much evidence you submit into the record, no matter how specific your photographs are, letters, reports, studies, case law, and even the city's own language pulled from their own ordinances - it all gets ignored as CEQA has proven to be the most blatantly ignored state law by LA city officials. And because of this, parts of our city are unrecognizable. Air pollution is worse, decades of mature tree canopies have been destroyed, treasured historic resources demolished, luxury housing lies plentiful and vacant, sunlit views, scenic beauty, sidewalks and open space are luxuries of the past, and the unique character defining features that once signaled what neighborhood you were in, no longer exist.

Despite all of the above, we still choose to participate because it is our responsibility to speak out against these injustices and life altering impacts. The reason this is important to include here is so

the Supreme Court knows just how difficult fighting for CEQA to be administered is. The thought of going forward in a way that hinders CEQA even more, is unimaginable. Which is why we are respectfully requesting the Supreme Court grant review of this Petition. The Court of Appeal's overturning of the trial Court's ruling in this case puts all Californians in deeper risk than we already are.

While we are not "experts" in the same manner a CEQA attorney would be, we are expert members of the public. We are expert residents and expert taxpayers whose expert experience as such should be the singular most important part of CEQA, as *we* are the primary species of living and breathing organisms of the environment. We are the ones on whom the "impacts" fall. We are the ones inhaling the polluted air. We are the ones who must schedule our days to include 2-4 hours of traffic, detours, or to account for other private construction related "impacts". We are the ones whose power goes out and whose plumbing backs up because overloaded infrastructure is never found to be significant in project approvals. It is our light that is lost due to the out-of-scale heat islands constructed that sit vacant. It is us and our environment in which we inhabit that CEQA was written for. And we remain in desperate need of all its protection as it was originally intended (PRC 21000.), now more than ever.

That said, we find the court of appeal's reversal of the Honorable Judge Chalfant's ruling in this case highly disturbing and an absolute injustice - not only to us, but to all members of the public who are afforded the right to participate in response to <u>specific details</u> of a proposed project, which seeks to enter an established community and alter its landscape and impose a plethora of unavoidable impacts. Respectfully, The Supreme Court must consider this case in order to prevent even more ambiguity in what is already an uphill battle for members of the public. Exercising this right can be an exhausting trek but we do it because like the Legislature, we believe that the maintenance of a quality environment for the people of our state now and in the future, is a matter of statewide concern and as such, activities such as these must be regulated if we are going to sustain. Decision making bodies within the City of Los Angeles along with project applicants' have been chipping away at CEQA for a long time, seeking to impair the publics rights, little by little, within the last several years more than ever. Trying to get people who don't care about the environment to care, is extremely difficult. We have found it to be no easier of a task in getting those same people to follow the laws. CEQA is the apex of our state's environmental review process. We have nothing else as a matter of law that requires any consideration for the environment or for its residents.

An informed citizenry is vital to the preservation of our system of government (Chief Justice Cantil-Sakauye, 2019).

We thank the Supreme Court for taking the time to read our letter regarding this important matter.

~Sincerely,
Silver Lake Heritage Trust

Document received by the CA Supreme Court.

REFERENCES:

• Chief Justice Cantil-Sakauy, Tani G. (2019). *Containing the Internal Operating Practices and Procedures of the California Supreme Court.* The Supreme Court of California Seventh Edition

• City of LA, 2021. *2021-2029 Housing Element CH1: Housing Needs Assessment*

• Harnik, Peter, Martin, Abby (2016). *2016 City Park Facts.* The Trust For Public Land

• LA County (2022). *Los Angeles City Council District 6.* City and Community Health Profiles.

Document received by the CA Supreme Court.

| CA Supreme Court<br>Court Name | PROOF OF SERVICE | S274474<br>Case Number |
|---|---|---|

1. At the time of service, I was at least 18 years of age.
2. My email address used to e-serve: **jen@silverlakeheritage.org**
3. I served a copy of the following document(s) indicated below:

Title(s) of documents served:

**LETTER:** 2022_May27-SLHT-Amicus Letter-S274474

| Person Served | Service Address | Type | Service Date |
|---|---|---|---|
| William Parkin | amccarroll@wittwerparkin.com | e-Serve | 05-27-2022 3:14:15 PM |
| Wittwer Parkin LLP | | | de9e74a8-f7d6-42df-9b09-9b7ebeb9c530 |
| Mitchell Tsai | mitch@mitchtsailaw.com | e-Serve | 05-27-2022 3:14:15 PM |
| MITCHELL M. TSAI, ATTORNEY AT LAW | | | c1ef7395-9831-4161-8b9d-03469e35b2f7 |
| Michael Feuer | michael.feuer@lacity.org | e-Serve | 05-27-2022 3:14:15 PM |
| Office of the City Attorney | | | d4fe2a47-9e54-4f8a-9aae-5d2059cd4286 |
| Douglas Carstens | dpc@cbcearthlaw.com | e-Serve | 05-27-2022 3:14:15 PM |
| Chatten-Brown, Carstens & Minteer LLP | | | 5852f0e9-48b1-46d8-b390-9a3c7a313f0e |
| Rachel Doughty | rdoughty@greenfirelaw.com | e-Serve | 05-27-2022 3:14:15 PM |
| Greenfire Law, PC | | | 2018f397-8e55-4dd4-9533-8e70f306a54a |
| Damon Mamalakis | damon@agd-landuse.com | e-Serve | 05-27-2022 3:14:15 PM |
| Armbruster Goldsmith & Delvac LLP | | | a7cd0f17-167d-4c69-ab05-e70b45f23817 |
| Richard Drury | richard@lozeaudrury.com | e-Serve | 05-27-2022 3:14:15 PM |
| Lozeau Drury LLP | | | 14f9eb0d-b6e7-4578-bda7-d71b435a0f3b |
| Tina Thomas | tthomas@thomaslaw.com | e-Serve | 05-27-2022 3:14:15 PM |
| Thomas Law Group | | | f1043347-0012-4604-bfd7-aef9be3405bc |
| Christopher Butcher | cbutcher@thomaslaw.com | e-Serve | 05-27-2022 3:14:15 PM |
| Thomas Law Group | | | c320ddf3-2960-4f0f-965b-2f3e93bb912b |

TrueFiling created, submitted and signed this proof of service on my behalf through my agreements with TrueFiling.

The contents of this proof of service are true to the best of my information, knowledge, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

05-27-2022
**Date**

/s/Silver Lake Heritage Trust
**Signature**

614

| Heritage Trust, Silver Lake (Other) |
|---|
| Last Name, First Name (Attorney Number) |

| Silver Lake Heritage Trust |
|---|
| Firm Name |