1  | Desmond C. Lee (SBN 158952)        dlee@shanleyapc.com
2  | SHANLEY, APC
   | 533 S. Fremont Ave., 9th Floor
3  | Los Angeles, California, 90071
   | Telephone: (213) 488-4100
4  |
5  | Edward C. Reddington (*pro hac vice*)    ereddington@wc.com
   | Charles Davant (*pro hac vice*)          cdavant@wc.com
6  | William D. Ferraro (*pro hac vice*)      wferraro@wc.com
   | Danielle J. Barondess (*pro hac vice*)   dbarondess@wc.com
7  | WILLIAMS & CONNOLLY LLP
8  | 680 Maine Ave. S.W.
   | Washington, DC  20024
9  | Telephone: (202) 434-5000
10 |
11 | *Attorneys for Defendants Southwest Regional*
   | *Council of Carpenters, Pete Rodriguez, Ron*
12 | *Diament, Alexis Olbrei, and Daniel Langford*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

THE ICON AT PANORAMA, LLC,

                    Plaintiff,

          v.

SOUTHWEST REGIONAL
COUNCIL OF CARPENTERS, et
al.,

                    Defendants.

Case No. 2:19-cv-00181 CBM (MRW)

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**MEMORANDUM SUPPORTING CARPENTERS DEFENDANTS' MOTION FOR TERMINAL SANCTIONS OR TO EXCLUDE IMPROPERLY OBTAINED AND SELECTIVELY PRESERVED EVIDENCE**

Hearing Date: January 30, 2024
Time:    10:00 a.m.
Place:   Courtroom 8D
Before:  Hon. Consuelo B. Marshall

Dated:   January 2, 2024

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................. 1

FACTS ........................................................................................... 3

    A.   This Lawsuit Challenges the Unions' First Amendment Petitioning .......................................................................... 3

    B.   Attorney Fields Represented Icon in Its CEQA Approval Process and this CEQA/Antitrust Lawsuit ....................... 5

    C.   Attorney Fields Knew the Unions Were Represented by Counsel ................................................................................ 7

    D.   Attorney Fields Contacted Personnel of a Represented Party ............ 8

    E.   Attorney Fields Allowed Texts to be Deleted While Planning This Lawsuit ................................................ 13

    F.   Icon Filed This Lawsuit for Leverage in Labor Negotiations ........... 15

    G.   Icon Survived Dismissal by Relying on Tainted Communications ................................................................ 16

ARGUMENT ................................................................................ 18

I.    Icon's Lawyer Committed Repeated, Flagrant Ethical Violations .............. 18

II.   Icon's Lawyer's Misconduct Warrants Severe Sanctions ........................... 20

    A.   Dismissal is Warranted ................................................ 21

    B.   Exclusion of Evidence Is the Minimum Necessary Remedy ........... 23

CONCLUSION ............................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
    888 F.Supp.2d 976 (N.D. Cal. 2012) ............................................................. 22

*Dist. Ct. v. Sandlin*,
    12 F.3d 861 (9th Cir. 1993) ............................................................................. 3

*Edwards v. Junior State of America Foundation*,
    2021 WL 1600282 (E.D. Tex. Apr. 23, 2021) ................................................ 24

*Elkins v. Pelayo*,
    2020 WL 977931 (E.D. Cal. Feb. 28, 2020) .................................................. 19

*Gadda v. Ashcroft*,
    377 F.3d 934 (9th Cir. 2004) ......................................................................... 24

*Goswami v. DePaul Univ.*,
    8 F. Supp. 3d 1004 (N.D. Ill. 2014) .............................................................. 21

*Jerry Beeman & Pharmacy Services, Inc. v. Caremark Inc.*,
    322 F. Supp. 3d 1027 (C.D. Cal. 2018) .................................................... 20, 22

*Kinchen v. Brennan*,
    2020 WL 2374947 (C.D. Cal. Mar. 17, 2020) .................................... 19, 23, 24

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ......................................................................... 22

*Matter of Guardianship of J.W.*,
    991 N.W.2d 143 (Iowa 2023) ......................................................................... 21

*Mitton v. State Bar of Cal.*,
    455 P.2d 753 (Cal. 1969) ................................................................................. 2

*Moreton Rolleston, Jr. Living Tr. v. Viacom Outdoor, Inc.*,
    2007 WL 9710284 (N.D. Ga. Oct. 29, 2007) ................................................ 21

*Reynolds v. Shure*,
    148 F. Supp. 3d 928 (E.D. Cal. 2015) ......................................................... 2, 23

*RG Abrams Ins. v. Law Offices of C.R. Abrams*,
    342 F.R.D. 461 (C.D. Cal. 2022) ................................................................... 20

*Scott v. Chipotle Mexican Grill, Inc.*,
  2014 WL 4852063 (S.D.N.Y. Sept. 29, 2014) .................................................. 24

*Stedeford v. Wal-Mart Stores, Inc.*,
  2016 WL 3462132 (D. Nev. June 24, 2016) ..................................................... 22

*Sw. Regional Council of Carpenters v. City of Los Angeles*,
  96 Cal. App. 5th 1154 (Ct. App. 2d Dist. 2022) ............................................... 4

*United States ex rel. Holmes v. Northrop Grumman Corp.*,
  2015 WL 3504525 (S.D. Miss. June 3, 2015) .................................................. 21

*United States v. Carona*,
  2008 WL 1970218 (C.D. Cal. May 2, 2008) .................................................... 23

*United States v. Quest Diagnostics Inc.*,
  734 F.3d 154 (2d Cir. 2013) ........................................................................... 21

*United States v. Sierra Pac. Indus.*,
  759 F. Supp. 2d 1215 (E.D. Cal. 2011) .......................................................... 19

*United States v. Sierra Pacific Industries*,
  857 F. Supp. 2d 975 (E.D. Cal. 2011) ............................................................ 24

*Volcan Group, Inc. v. T-Mobile USA, Inc.*,
  940 F. Supp. 2d 1327 (W.D. Wash. 2012) ...................................................... 22

**FEDERAL RULES**

Fed. R. Civ. P. 12 ....................................................................................1, 17, 21

Fed. R. Civ. P. 26 ............................................................................................ 13

**STATE AUTHORITIES**

Cal. Environmental Quality Act,
  Cal. Pub. Res. Code § 21000 *et seq.* .......................................................*passim*

Cal. R. Prof'l Conduct 2-100.....................................................................18, 23

Cal. R. Prof'l Conduct 3.1 ............................................................................2, 20

Cal. R. Prof'l Conduct 3.4 .........................................................................*passim*

Cal. R. Prof'l Conduct 4.2 .........................................................................*passim*

Cal. R. Prof'l Conduct 5-220 .................................................................... 20

Cal. R. Prof'l Conduct 8.4 ........................................................................ 19

Cal. Rules of Ct. 9.7 ................................................................................. 18

**OTHER AUTHORITIES**

ABA Formal Opinion 06-443 ..................................................................... 19

# INTRODUCTION

Rule 4.2 of the California Rules of Professional Conduct codifies an ethics principle known to every practicing lawyer:

> In representing a client, a lawyer **shall not communicate** directly or indirectly about the subject of the representation **with a person the lawyer knows to be represented by another lawyer** in the matter, unless the lawyer has the consent of the other lawyer.

Cal. R. Prof'l Conduct 4.2(a). Rule 4.2 also prohibits a lawyer from communicating with officers and certain employees of an organization represented by counsel. Cal. R. Prof'l Conduct 4.2(b).

An in-house lawyer for plaintiff Icon, Eran Fields, repeatedly violated Rule 4.2, and Icon is basing its claims on the fruits of those illicit contacts. Attorney Fields knew that the defendant labor unions—the Southwest Regional Council of Carpenters and the Laborers International Union of North America Local 300— were represented by outside counsel. Nonetheless, attorney Fields repeatedly contacted the unions' nonlawyer personnel without their lawyers' consent—by text message, email, and telephone—to fish for "admissions" to support Icon's claims in this lawsuit. Through multiple illicit contacts, attorney Fields wrongfully extracted a series of statements by the unions' lay personnel that Icon made the centerpiece of its complaint and used to argue successfully against dismissal under Rule 12(b)(6). (At the time of attorney Fields's illicit contacts to the unions' nonlawyer personnel—and of Icon's court filings making use of these laypersons' supposed admissions—Fields hid that he was a lawyer representing Icon. Fields did not reveal he was an attorney representing Icon until late in discovery, when Icon invoked his attorney role and representation of Icon to withhold scores of his emails with colleagues on attorney-client privilege grounds.)

Lawyers get disbarred for wrongfully contacting represented parties. *See, e.g.*, *Mitton v. State Bar of Cal.*, 455 P.2d 753, 758 (Cal. 1969). In a judicial proceeding, dismissal should be the remedy. At an absolute minimum, the improperly obtained statements should be excluded from evidence. *Reynolds v. Shure*, 148 F. Supp. 3d 928, 934 n.1 (E.D. Cal. 2015).

In addition to committing serial Rule 4.2 violations, attorney Fields engaged in further lawyer misconduct that has irretrievably prejudiced the defense: spoliation. "A lawyer shall not … destroy or conceal a document or other material having potential evidentiary value." Cal. R. Prof'l Conduct 3.4(a). During the months when attorney Fields was preparing his client Icon's claims in this lawsuit, he allowed for the deletion of relevant text messages while selectively preserving those he believed would favor Icon. Icon quotes in its complaint the few he chose to preserve. Because attorney Fields allowed messages he judged not supportive of his client's positions to be deleted, the defense cannot use them to contextualize or contradict Icon's one-sided, attorney-manipulated version of the documentary record. Such intentional spoliation by an attorney who, according to Icon's privilege log, anticipated and was preparing this litigation at the time of the spoliation warrants the terminal sanction of dismissal. At a minimum, the messages that attorney Fields selectively preserved should be excluded from evidence.

Finally, a document Icon belatedly produced in discovery shows that attorney Fields caused his client to file this lawsuit "without probable cause and for the purpose of harassing or maliciously injuring" the unions, their personnel, and their families, in violation of Rule 3.1(a). Icon sued not just individual union members, but also their spouses, despite knowing that no legal or factual basis exists for suing individuals who played no part in relevant events. ████████████████████ ████████████████████████████████████ ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████. Icon withheld this key document for months, only giving it up the Saturday before Icon's agents' depositions.[1]

"As officers of the court, lawyers do not stand in the shoes of ordinary citizens." *Dist. Ct. v. Sandlin*, 12 F.3d 861, 865 (9th Cir. 1993). Every lawyer—Fields included—owes a special duty to the justice system. Fields shrugged off that duty in pursuit of a payout for his client and himself: he owns a roughly 40% interest in Icon and therefore stands to profit enormously if his illicit tactics produce the litigation windfall that his client Icon is seeking. Icon's improper litigation strategy—and the unethical tactics that attorney Fields employed in service of it—should not be rewarded or permitted to prejudice its targets.

The Carpenters defendants respectfully request that this case be dismissed. At a minimum, the Carpenters defendants request that the Court enter an order excluding from evidence the improperly gathered and selectively preserved evidence.

## FACTS

### A.   This Lawsuit Challenges the Unions' First Amendment Petitioning

Icon is a development company that needed City approval to build a mixed-use (commercial and residential) project in the Panorama City neighborhood of Los Angeles. Second Amended Complaint (ECF No. 47) ("SAC") ¶¶ 7, 29. The unions engaged in First Amendment petitioning—participating in the City's land use approval process by sending comment letters to the City under the California

---

[1] Icon claims to have withheld the document to protect purportedly confidential communications with its investors. Its true motivation was to avoid revealing its hypocrisy. Icon accuses the unions of using legal proceedings to increase leverage in labor negotiations—conduct it says amounts to an "antitrust violation"; yet discovery uncovered that Icon filed this lawsuit to increase its own leverage in those same labor negotiations.

Environmental Quality Act ("CEQA"). *Id.* ¶¶ 9, 18, 71–89. The unions also filed a lawsuit in state court against the City under CEQA after it approved Icon's project without issuing a new Environmental Impact Report ("EIR"), which the unions contended CEQA required. *Id.* ¶ 19. In this federal action, Icon sues the unions and their personnel over the foregoing petitioning activity, alleging that it violated federal antitrust and labor laws.

For all of the petitioning activity at issue, the unions were represented by lawyers from the law firm Lozeau Drury LLP, which drafted, signed, and filed the unions' submissions. *Id.* ¶ 21.

In the state-court CEQA lawsuit, the unions' legal position was supported by the California Attorney General and several environmental groups, including the Natural Resources Defense Council, which agreed that the City's "interpretation of CEQA would undermine public participation and informed decision-making." *Sw. Regional Council of Carpenters v. City of Los Angeles*, 96 Cal. App. 5th 1154, 1170–71 (Ct. App. 2d Dist. 2022).

The unions prevailed in the Superior Court, which set aside the City's approval of the project and ordered the City "to prepare a new or supplemental [EIR] for public comment." *Id.* at 1170. The Court of Appeal later reversed, but, in doing so, acknowledged the valid concerns underlying the unions' position. The court observed that the City's failure to issue a new EIR meant that "the public had no opportunity to comment on the specific project actually approved" and agreed that "decision-makers and the public would be better served" by that opportunity. *Id.* at 1181–82.

Despite the unions' victory in the Superior Court and support from the Attorney General and numerous *amici*, Icon now claims that the unions' CEQA petitioning was "frivolous." SAC ¶ 125. Icon paints the unions' petitioning as a means to extract labor concessions from developers in an attempted *quid pro quo*. To do so, Icon points to purported admissions—statements that attorney Fields

extracted from the unions' nonlawyer personnel regarding Lozeau Drury's petitioning on the unions' behalf. *Id.* ¶¶ 105–10, 116–18, 120–21. For its theory of damages, Icon blames the unions' long-concluded CEQA petitioning, years ago, for its failure to break ground on the Panorama City project (even as of 2024).

The unions deny Icon's claims and, as concerns causation, contend that Icon's failure to develop the project resulted not from the unions' petitioning but from Icon's inability to make the project financially viable. *E.g.*, Carpenters' Am. Ans. to SAC, Aff. Defs. (ECF No. 138) ¶¶ 10, 15–16, 19, 22. In June 2018, realizing that developing apartments in Panorama City might not prove as profitable as Icon had told its investors, Icon and attorney Fields (who indirectly owns roughly 40% of Icon) pivoted to exploring claims against the unions in hope that litigation would yield the desired return. Because California's broad litigation privilege and anti-SLAPP statute precluded claims in state court under a malicious prosecution or abuse-of-process theory, Icon resorted to the novel federal antitrust claims asserted here.

### B. Attorney Fields Represented Icon in Its CEQA Approval Process and this CEQA/Antitrust Lawsuit

Attorney Fields is an active member of the California bar, and he serves as Icon's "de facto in-house counsel." Ex. 2 (Icon 30(b)(6) Depo.) at 170. In sworn testimony, Attorney Fields described the breadth of his representation of Icon:

> [ATTORNEY FIELDS]: I was acting as in-house coun—
> well, de facto in-house counsel, but I was acting as an
> attorney on behalf of Icon on a lot of matters, including
> litigation strategy related to this case.

*Id.*

> [DEFENSE COUNSEL]: And at what stage in the process
> did you begin acting as an attorney for ICON?

1    [ATTORNEY FIELDS]: I mean, I don't—I don't—I've

2    always been an attorney as part of ICON.

3  Ex. 3 (Fields Depo.) at 382–83.

4        [DEFENSE COUNSEL]: Were you acting as a lawyer for

5        Icon when you were engaging with the unions about the

6        Icon project?

7        [ATTORNEY FIELDS]: I was representing Icon as an

8        attorney, a transactional attorney, and it relates to these

9        type[s] of documents.[2]

10  Ex. 2 (Icon 30(b)(6) Depo.) at 75.



20  *Id.* at 84. Icon has withheld as privileged dozens of attorney Fields's emails regarding

21  Icon's entitlement approval, *see, e.g.*, Ex. 4 (Icon Priv. Log) at Nos. 225, 276, 409, 415,

22  425, 428, 442, 453, and Icon maintained its claim of attorney-client privilege with

23  Fields even after defendants questioned it, *see* Ex. 5 at 4.

24

25

26

27
_____
[2] The documents referenced are draft agreements that, according to Icon's complaint, involved "the Union Defendants … withdraw[ing their] CEQA challenges." SAC ¶ 116.

### C. Attorney Fields Knew the Unions Were Represented by Counsel

Attorney Fields knew that the unions were represented by counsel as to Icon's CEQA approval process. On May 22, 2017, Lozeau Drury emailed the City a letter concerning the City's Draft EIR for Icon's project. Ex. 6. The letter was on law firm letterhead; was submitted "on behalf of" the unions; contained legal argument; and was signed by a lawyer. *Id.* The City forwarded the letter to attorney Fields. *Id.* Fields at the time acknowledged receiving not only the letter showing that the unions were represented by counsel, but also a cover email prominently identifying the sender as a Lozeau Drury "associate attorney":



*Id.*; Ex. 7.

From May 22, 2017, then, attorney Fields—by his own admission—knew that the unions were represented by a lawyer in the matter of the City's approval process for the Icon project. Ex. 2 (Icon 30(b)(6) Depo.) at 174. In 2017 and 2018 writings, he described a Lozeau Drury lawyer as "an attorney representing both" unions (Ex. 8) and, in communicating with union personnel, described Lozeau Drury as "your attorneys" (Ex. 9). He also testified as Icon's 30(b)(6) designee that he knew the unions were "represented by an attorney in

the CEQA petition" in the Superior Court: "yes, I think [Mr. Drury] represented both" unions. Ex. 2 (Icon 30(b)(6) Depo.) at 175.

### D.      Attorney Fields Contacted Personnel of a Represented Party

Attorney Fields never sought or obtained Lozeau Drury's consent to communicate with the unions' personnel about the CEQA approval process—indeed, he never communicated with the unions' lawyers at all, except to exchange "pleasantries" at a hearing. Ex. 3 (Fields Depo.) at 332–33 ("So we may have said—you know, spoken briefly, but nothing that I specifically remember."); *id.* ("Q. …[N]othing substantive, just exchanging pleasantries? A. I think so."); *see also* Ex. 2 (Icon 30(b)(6) Depo.) at 175–77 (admitting that attorney Fields never contacted Lozeau Drury).

Nonetheless, attorney Fields on at least five occasions communicated directly with nonlawyer union officers and employees about the CEQA submissions filed by the unions' Lozeau Drury lawyers. He presented himself as an Icon representative but did not disclose that he was Icon's lawyer. Ex. 2 (Icon 30(b)(6) Depo.) at 173.

### 1.      October 16, 2017

On October 16, 2017, attorney Fields emailed nonlawyer Carpenters employee (and now defendant) Ron Diament about a letter that Lozeau Drury had submitted to the City on behalf of the unions. Ex. 8. Attorney Fields admitted knowing that the unions were represented by "an attorney"; nevertheless, he carbon-copied no one and goaded Mr. Diament into responding:



**From:** Eran Fields <efields@theiconcompany.com>
**Date:** October 16, 2017 at 2:15:47 PM PDT
**To:** Ron Diament <rdiament@swcarpenters.org>

Ok. Thanks. Frustrating and ironic that the City received a letter opposing the project from an attorney representing both while in parallel these two unions are trying to get us to use them on this same project.

I understand that it's using CEQA to try to gain leverage over us to use union but it's just unfortunate that these are the tactics that are used.

*Id.* Mr. Diament felt compelled to respond: "I have some influence with these folks." Ex. 9. Icon's complaint mischaracterizes this response as proof of the unions' supposed improper intent underlying their petitioning. SAC ¶ 106.

At the same time attorney Fields was emailing Mr. Diament to complain about the unions' CEQA filings, he was giving Icon legal advice related to its "land use matter." Ex. 4 (Icon Priv. Log) at Nos. 276, 439, 442. Attorney Fields also testified that he spoke by telephone with Mr. Diament about "ways to help [Icon] get approved" by the City (Ex. 3 (Fields Depo.) at 338)—the matter for which Lozeau Drury was representing the unions and attorney Fields was representing Icon.

### 2. January 25, 2018

A few months later, attorney Fields again emailed nonlawyer union employee Mr. Diament (carbon-copying no one) renewing his gripe about the legal work being done by "your attorneys" at Lozeau Drury:



Ex. 9. Attorney Fields should have contacted the unions' lawyers but instead wrote to a nonlawyer employee of a represented party. Again, Mr. Diament felt compelled to respond: "I understand your frustration, so let's get together and figure it out." *Id.*

### 3. March 14, 2018

Mr. Diament texted attorney Fields on March 14, 2018, before a City hearing in Icon's CEQA approval process: "I think we should try to meet before Tuesday's hearing." Ex. 10. Contemporaneously, Attorney Fields was providing Icon legal advice related to the same "land use matter" (Ex. 4 (Icon Priv. Log) at Nos. 444, 446, 453) as the hearing, at which Lozeau Drury appeared on behalf of the unions. Rather than terminating the text exchange immediately and telling Mr. Diament to have the

1  unions' lawyer contact him—as required by Rule 4.2—attorney Fields went fishing.

2  His words are in blue, on the right:

3
4
5
6
7  Why?

I know the road you need to be on to get the job to move forward.

Sorry, no idea what that means.

You mean opposition from union if we don't?

I know that there's been some of that from a few, including the carpenters.

As I mentioned to you in the past, we won't be coerced into using union labor due to threats of opposition but are willing to explore ways to include union labor on this job if feasible. Meeting before our hearing should have no bearing on that.

I'm just making suggestions on how to navigate through the woods. If you hire good contractors that participate in apprenticeship programs and are tikkun olamniks, it makes everyone smile.

26  Ex. 10.

27

Attorney Fields preserved this text exchange (but, as shown below, not others). Ex. 2 (Icon 30(b)(6) Depo.) at 146. Icon's complaint quotes Mr. Diament's responses to attorney Fields's messages as admissions supposedly supporting Icon's distorted allegation that the unions "would drop their CEQA challenges only if Icon agreed to use exclusively union contractors." SAC ¶¶ 107–10. (An allegation that is clearly untrue, given the Carpenters' written proposal that contemplated allowing Icon to entertain bids from non-union contractors.[3])

### 4.   May 25, 2018

On May 25, 2018, Lozeau Drury filed an administrative CEQA appeal on behalf of the unions to the City Council. Within a day, attorney Fields called Ernesto Pantoja, a nonlawyer employee of the Laborers Union, and accused him of filing the appeal as a "ploy." Ex. 12 (Pantoja Depo. at 114–15). Mr. Pantoja testified: "Mr. Fields called me, and he brought that up. And that's why I said, it's no ploy. Because he's the one that brought it up, not me." *Id.* Mr. Pantoja was so upset by the accusation that he followed up over email: "Once again I would like to apologize for all the confusion and the inconvenience this all has caused. I do assure you though it was no ploy…." Ex. 13.

Icon quoted this unethically extracted email in its complaint (SAC ¶ 119); cited it as "evidence" that the unions "refused to negotiate with Icon over an alternative labor arrangement" (*id.* ¶ 17); and based one of its antitrust claims on it (*id.* ¶ 157).

### 5.   October 1, 2018

On October 1, 2018, the unions, represented by Lozeau Drury, filed a lawsuit in the Superior Court against the City and named Icon as a real party in interest.

---

[3] Icon's complaint alleged that the unions "refused to negotiate with Icon" and "demanded that Icon use exclusively union contractors on the Project." SAC ¶ 16. Discovery has shown that to be decidedly false. (Not that such conduct—if true—would amount to an antitrust violation anyway.) Attorney Fields would have known—given the Carpenters' December 2018 proposal—these allegations to be false when he helped his client draft and file the complaint. Ex. 11.

1         That same day, attorney Fields expressed his displeasure not by contacting

2   counsel at Lozeau Drury, but by telephoning a nonlawyer officer of the Carpenters—

3   the union's Executive-Secretary Treasurer (and now defendant) Dan Langford.

4   Attorney Fields testified: "I reached out to [Mr. Langford] to discuss the—that I was

5   upset at the fact that they chose to file a CEQA petition." Ex. 2 (Icon 30(b)(6) Depo.)

6   at 177. The content of that telephone call is disputed, but attorney Fields (with an eye

7   toward this planned federal lawsuit) created (and preserved) a text message and email

8   setting forth his version:

9

10  

11

12

13

14

15

16  Ex. 14. Attorney Fields told a similar story in an unsolicited text message to

17  Mr. Diament the same day, hoping to extract an admission. Ex. 15. Again, attorney

18  Fields chose to preserve this text message (but not others). Ex. 2 (Icon 30(b)(6) Depo.)

19  at 146.

20        Mr. Langford disputes attorney Fields's self-serving account of the call, which

21  Fields drafted while actively strategizing this CEQA/antitrust lawsuit. Indeed, the

22  same day Fields phoned Mr. Langford, he sent or received 15 emails—all withheld

23  by Icon on privilege grounds—involving "legal advice" related to "federal lawsuit,"

24  "antitrust litigation strategy," and "litigation strategy." Ex. 4 (Icon Priv. Log) at

25  Nos. 72, 168, 329–34, 400, 1123–24, 1280, 1301, 1499–1500. A few days before,

26  Fields had discussed "litigation strategy" with the outside lawyers who later filed

27  Icon's federal complaint. *Id.* at No. 1498 (Sept. 18, 2018). And in the days after his

MEMO. SUPPORTING MOTION FOR TERMINAL SANCTIONS OR TO EXCLUDE EVIDENCE

call with Mr. Langford, attorney Fields—in conversations with Icon's principal Mr. Ruvelson—provided legal advice to Icon "related to antitrust litigation strategy" (*id.* at No. 363 (Oct. 3, 2018); *id.* at No. 323 (Oct. 4, 2018)), as well as "related to CEQA litigation strategy" (*id.* at No. 225)—the underlying state-court proceedings about which he had phoned Mr. Langford and in which he knew Lozeau Drury represented the unions.

Icon's complaint repeats attorney Fields's litigation-crafted "documentation" of his call to Mr. Langford, concluding that the "admissions" by Mr. Langford prove that "the Union Defendants did not truly believe in the substance of their CEQA claims," and the "true goal was to delay the Project and drive up costs." SAC ¶ 120.

### E.  Fields Allowed Texts to be Deleted While Planning This Lawsuit

This CEQA/antitrust lawsuit was filed on January 9, 2019. But Icon and attorney Fields had been planning it since at least ***June 20, 2018***, when—according to Icon's privilege log—Fields was "providing legal advice related to antitrust litigation strategy." Ex. 4 (Icon Priv. Log) at No. 337. Fields continued sending and receiving emails "related to antitrust litigation strategy" or "litigation strategy" every month from June 2018 through the filing of the complaint. *See id.* at Nos. 188, 209, 283, 299, 337–38, 340–42, 345, 396, 401, 1498. Icon has withheld documents from June 20, 2018, forward not only on attorney-client privilege grounds, but also on work-product grounds, meaning that the documents were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A).

Attorney Fields used text messages to communicate about the Panorama City project and the unions. *See* Exs. 10, 15, 16. He has admitted that he "communicate[s] from time to time with [Icon principal] Mr. Ruvelson by text message." Ex. 3 (Fields Depo.) at 160. Mr. Ruvelson agreed that it was "likely" that he and attorney Fields texted about the Carpenters, and that he was "sure" he "text[ed]" with Mr. Fields about CEQA." Ex. 17 (Ruvelson Depo.) at 107. These text messages have

vanished—Icon has not produced or logged a single text message between attorney Fields and Mr. Ruvelson.

Attorney Fields and his colleagues deleted, or allowed for the automatic deletion of, nearly all of their relevant text messages. That is despite attorney Fields's and Icon's planning—or, at the least, anticipating—this litigation as early as June 2018. After this litigation was filed, attorney Fields testified that he "went into [his] text messages to look at anything related to this lawsuit" and conveniently "didn't find anything." Ex. 3 (Fields Depo.) at 161.

Attorney Fields also exchanged text messages about the Panorama City project with defendant Ernesto Pantoja from September 17, 2018, to September 30, 2018. Ex. 16. We know this because Mr. Pantoja fortuitously never deleted those texts, despite having no inkling that attorney Fields and Icon were actively preparing to sue him. Attorney Fields obviously possessed these texts in the fall of 2018: he was their sender and recipient. *Id.* Still, attorney Fields allowed them to be deleted, sometime after September 30, 2018, the date of the last message. Ex. 3 (Fields Depo.) at 161. That attorney Fields was anticipating litigation at the time is indisputable: he had just met with outside antitrust counsel on September 18 (Ex. 4 (Icon Priv. Log) at No. 1498); he sent or received 15 privileged emails about the planned "federal lawsuit," "antitrust litigation," or "litigation strategy" the day after the last of the texts (*id.* at Nos. 72, 168, 329–34, 400, 1123–24, 1280, 1301, 1499–1500); and Icon's privilege log asserts that many of these emails were prepared in anticipation of litigation. Yet he allowed the texts to be deleted.

Attorney Fields's misconduct prevents anyone from knowing what other relevant text messages he deleted during the months he was planning this litigation or in the years since it was filed—messages central to the unions' causation defenses, some of which may not be privileged. For example, by his own admission, Fields may have texted about a neighboring business's own, parallel CEQA submission on

the Panorama City project. Ex. 3 (Fields Depo.) at 94–99. And even after Icon filed this litigation, he may have texted about Icon's failure to begin construction or to sell the site, which are disputed causation issues over which Icon is claiming tens of millions of dollars of damages. *Id.* at 125–36.

Attorney Fields was careful, however, to take "screenshots" of and selectively preserve the text messages that he extracted from nonlawyer union personnel and believed favored Icon's claims. Ex. 2 (Icon 30(b)(6) Depo.) at 146.

### F.   Icon Filed This Lawsuit for Leverage in Labor Negotiations

Attorney Fields represented Icon for its "litigation strategy related to this case." Ex. 2 (Icon 30(b)(6) Depo.) at 170. His actions led to this CEQA/antitrust lawsuit against not only the individual union defendants, but also their *spouses*, *see* ECF No. 1, even though no legal or ethical basis exists for suing spouses who engaged in no relevant conduct. ████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████

Ex. 1.

Icon's claim that the unions' alleged use of legal proceedings for leverage in labor negotiations amounts to "antitrust violations" is the height of hypocrisy. Attorney Fields's own playbook has always been to use litigation, however specious, for leverage in labor negotiations. In March 2017, an organization called "CREED LA"—unrelated to defendants here—contacted Icon about hiring union pipefitters. Ex. 18. Attorney Fields reflexively threatened a $100 million legal claim against the organization, which had done nothing but propose a labor agreement: "If they sue," he wrote, "we will countersue them for $100M. That's part of the risk of development." *Id.*

## G.   Icon Survived Dismissal by Relying on Tainted Communications

Icon loaded its vexatious and inaccurate complaint with alleged statements that attorney Fields gathered through his improper contacts with the unions' nonlawyer officers and employees about the very CEQA matters for which he knew Lozeau Drury was representing the unions. *E.g.*, SAC ¶¶ 105–110, 120–121. Icon

also quoted in its complaint the text messages that attorney Fields selectively chose to preserve, while allowing all others to be deleted.

Icon then trumpeted those illicitly gathered and selectively preserved communications in its oppositions to the unions' pre-discovery dispositive motions. *E.g.*, ECF No. 72 at 10–11, 15, 25; ECF No. 70 at 26, 30. Icon argued that these communications were evidence the unions had "demanded union exclusivity from Icon; in exchange, they promised the CEQA litigation … would end." ECF No. 72 at 31. In opposition to a pre-discovery summary judgment motion, attorney Fields submitted a declaration touting the communications he had illicitly extracted from defendants' employees. ECF No. 114-1 at ¶¶ 4–8, 10.

At the time defendants filed their dispositive motions, they did not know that Fields had been Icon's attorney, that these communications had been gathered in violation of the ethics rules, or that Icon had engaged in spoliation. Indeed, Fields had concealed from nonlawyer union personnel that he was an attorney for Icon. It was not until fact discovery that Icon's privilege log and depositions revealed that Fields was representing Icon as its lawyer.

As a result of Icon's deception, the communications that attorney Fields improperly gathered and selectively preserved were central to this Court's decision to deny the motions to dismiss. The Court cited the union laymen's alleged statements as possible evidence of a *quid pro quo* and of the unions' "subjective intent" in petitioning the City of Los Angeles, supporting Icon's argument that the case was not subject to Rule 12(b)(6) dismissal on First Amendment/*Noerr-Pennington* grounds:

> Specifically, the complaint alleges that ***the Unions agreed to drop their petition if Icon agreed to exclusively use union labor*** on the project, regardless of whether the petition's purported environmental issues were addressed. ***This subjective intent was purportedly communicated to Icon by***

***Union representatives (i.e., the Individual Defendants) on multiple occasions***.

ECF No. 95 at 7–8 (emphasis added).

## ARGUMENT

This lawsuit exists because attorney Fields engaged in a pattern of unethical conduct, the fruits of which he and his client have used to support and sustain unfounded claims that never should have been filed. Moreover, attorney Fields and his client allowed for the deletion of relevant text messages in a manner that now hinders the unions from defending themselves fairly against claims in which Fields has an enormous, personal financial interest. The Court should not permit Icon to continue to benefit from the unethical conduct of its attorney.

## I.    Icon's Lawyer Committed Repeated, Flagrant Ethical Violations

As a California lawyer, Fields took an oath: "As an officer of the court, I will strive to conduct myself at all times with dignity, courtesy and integrity." Cal. Rules of Ct. 9.7. He has broken that oath. He violated the ethics rules in an effort to further his client's case and prejudice the defense.

***Rule 4.2***. "In representing a client, a lawyer shall not communicate…about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." Cal. R. Prof'l Conduct 4.2(a).[4] As Icon's lawyer, Fields provided legal advice on CEQA land use and litigation matters; he knew the unions were represented by Lozeau Drury on those matters; and he nevertheless communicated with union personnel about those matters without their lawyers' consent. Those communications were textbook Rule 4.2 violations.

---

[4] Current Rule 4.2 took effect on November 1, 2018, and replaced the substantively identical Rule 2-100. For simplicity, we cite the current rule.

Such communications violated Rule 4.2 even if the union laymen "initiate[d] or consent[ed] to" them, *see* Cal. R. Prof'l Conduct 4.2 cmt., and even if Icon invents some "good faith" explanation for why attorney Fields believed he could contact a represented party. Rule 4.2 applies not just to "intentionally improper" contact, but also to a lawyer's "well-intended but misguided" communications. *Elkins v. Pelayo*, 2020 WL 977931, at *7 (E.D. Cal. Feb. 28, 2020) (quoting *San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 213 Cal. App. 4th 1212, 1230 (2013)). This Court has found a Rule 4.2 violation—and excluded the resulting evidence—even when a lawyer made a "good faith judgment" that he "could permissibly interview" a witness. *Kinchen v. Brennan*, 2020 WL 2374947, at *3 (C.D. Cal. Mar. 17, 2020) (Anderson, J.). The rule is exacting because its purpose "is to prevent a skilled advocate from taking advantage of a nonlawyer," regardless of the circumstances. ABA Formal Opinion 06–443.

Not that any such "good faith" belief would be plausible here. Attorney Fields has asserted that he represented Icon in both its land use entitlement process and its CEQA-related litigation strategy. Icon has refused to produce responsive communications between Fields and Icon on those subjects on attorney-client privilege grounds. Yet, when interacting with lay personnel from the unions, Fields never identified himself as a lawyer—a tactic that likely constituted an independent violation of Rule 8.4(c)'s prohibition on conduct involving "dishonesty" or "deceit." *See United States v. Sierra Pac. Indus.*, 759 F. Supp. 2d 1215, 1218 (E.D. Cal. 2011) (noting attorney's failure to tell represented party's employee that he represented its opponent was an "ethical lapse"). Attorney Fields's deceptive contacts with laymen—to extract admissions Icon could use against the unions—violated Rule 4.2.

***Rule 3.4***. Attorney Fields compounded his ethical misdeeds by allowing relevant evidence to be destroyed, while selectively preserving messages he considered supportive of his client's claims. A lawyer may not "unlawfully alter,

destroy or conceal a document or other material having potential evidentiary value."
Cal. Rule 3.4(a).[5] And his "duty to preserve" evidence "extends to that period before
the litigation when [he] reasonably should know that the evidence may be relevant
to anticipated litigation." *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D.
461, 503 (C.D. Cal. 2022) (citation omitted). Attorney Fields was ethically obligated
to preserve the text messages on his personal device, and he is "responsible" for their
destruction. *See Jerry Beeman & Pharmacy Services, Inc. v. Caremark Inc.*, 322 F. Supp.
3d 1027, 1035–36 (C.D. Cal. 2018) (terminal sanctions).

    ***Rule 3.1***. Fields caused Icon to bring this lawsuit to harass the unions, their
personnel, and their families. But a "lawyer shall not…bring or continue an
action…without probable cause and for the purpose of harassing or maliciously
injuring any person." Cal. R. Prof'l Conduct 3.1(a). Here, attorney Fields used the
special position of trust conferred upon him as an officer of the Court to prepare a
complaint and cause Icon to sue not only the union defendants, but also their
obviously innocent spouses, ███████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████

## II.     Icon's Lawyer's Misconduct Warrants Severe Sanctions

    Attorney Fields's repeated ethical violations in service of his client's dubious
claims (from which he would financially benefit) warrant dismissal. At a minimum,
the wrongfully obtained evidence should be excluded.

---

[5] To the extent that attorney Fields deleted relevant text messages before November 1, 2018, when
Rule 3.4(a) took effect, his conduct violated former Rule 5-220.

### A.      Dismissal is Warranted

The terminal sanction of dismissal is warranted when an attorney's misconduct has tainted a proceeding. *See Matter of Guardianship of J.W.*, 991 N.W.2d 143, 146 (Iowa 2023) (affirming dismissal after attorney violated conflicts rules and Rule 4.2); *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 158 (2d Cir. 2013) (dismissal in light of conflicts and misuse of confidences). In *United States ex rel. Holmes v. Northrop Grumman Corp.*, 2015 WL 3504525 (S.D. Miss. June 3, 2015), the court ruled that any sanction short of dismissal "would greatly prejudice" the movant, given that "the case would be tried on a record developed primarily through the fruits of [a lawyer's] unethical conduct." *Id.* at *10. So too here: attorney Fields's ethical misconduct has permeated these proceedings such that only dismissal can remove the stain.

His Rule 4.2 violations would warrant dismissal even if he had not committed other violations. In *Moreton Rolleston, Jr. Living Tr. v. Viacom Outdoor, Inc.*, 2007 WL 9710284 (N.D. Ga. Oct. 29, 2007), the court dismissed a plaintiff's claims with prejudice because its lawyer "contacted [a defendant's] officers and employees" on "numerous occasions." *Id.* at *1. Attorney Fields's ethical violations were even worse because the "causal connection" between his unethical contact and the resulting record is manifest. *See Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1004, 1018 (N.D. Ill. 2014). Icon bases its legal claims on attorney Fields's illicitly gathered communications (*see* SAC ¶¶ 105–110, 116–121), and Icon used those communications to avoid pre-discovery dismissal (ECF No. 72 at 10–11, 14, 25, 31; ECF No. 70 at 26, 30; ECF No. 114-1 at ¶¶ 4–10). That trickery led this Court to rule, applying the lenient standards of Rule 12(b)(6), that the alleged communications could evidence a *quid pro quo* or the unions' subjective intent, preventing dismissal before discovery on First Amendment/*Noerr-Pennington* grounds. *See* ECF No. 95

at 7–8. Absent attorney Fields's unethical conduct (and Icon's amplification of the fruits of his misconduct), this case would have been rightfully dismissed years ago.

Attorney Fields's violation of Rule 3.4(a) and his (and his client's) spoliation also independently warrant dismissal. Dismissal is appropriate where spoliation was "willful," meaning the wrongdoer "ha[d] some notice that the documents were potentially relevant to the litigation before they were destroyed." *Jerry Beeman*, 322 F. Supp. at 1035 (cleaned up) (terminal sanctions for spoliation); *see Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (same). Attorney Fields did not merely have "notice" of potential litigation; he was its author and personally had been planning it from at least June 20, 2018, according to Icon's privilege log and Field's testimony. *E.g.*, Ex. 2 (Icon 30(b)(6) Depo.) at 170–71. Yet he chose to preserve only the text messages he believed favored Icon's anticipated claims, allowing other texts to be deleted.

"In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F.Supp.2d 976, 993 (N.D. Cal. 2012). Icon has made attorney Fields its "central witness," whose testimony is "among the most critical evidence [to be] considered by the finder of fact," and Fields's messages would have been critical to challenge the credibility of his testimony. *See Volcan Group, Inc. v. T-Mobile USA, Inc.*, 940 F. Supp. 2d 1327, 1336 (W.D. Wash. 2012) (dismissing case when central witness destroyed "potentially relevant" notes). And "because the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist," Icon "can hardly assert any presumption of irrelevance as to the destroyed documents." *See Leon*, 464 F.3d at 959. Instead, the unions "must only come forward with plausible concrete suggestions about what the spoliated evidence might have been." *Stedeford v. Wal-Mart Stores, Inc.*, 2016 WL 3462132, at *8 (D. Nev. June 24, 2016).

Attorney Fields's now-deleted text messages, and those of his colleagues, could have disproven Icon's theory of damages causation, which is that the unions' 2017 and 2018 petitioning is the reason Icon still has not broken ground on the Panorama City project. There is no substitute for candid, contemporaneous text messages to show the *real reasons* Icon has not broken ground. The text messages may have shown that Icon was struggling to recruit suitable anchor tenants that would have made the project financially viable. They may have confirmed that Icon struggled to recruit investors, raising only a fraction of the money needed for the project. They may have shown Icon struggling to obtain a construction loan. In short, the missing text messages could have discredited Icon's central damages allegation that the project would have been built but for the unions' petitioning. Because of Field's misconduct, we will never know the truth.

Attorney Fields's and his client's deletion of evidence during the months they were planning this lawsuit has irredeemably tainted the factual record. What remains is a one-sided, distorted version of events, curated by attorney Fields to benefit his client and himself at the expense of the labor unions and their hard-working members. The Court should not countenance such manipulation by a plaintiff seeking to use the misconduct for its own profit, let alone by an officer of the Court.

Especially in conjunction with attorney Fields's other ethics violations, the appropriate remedy is clear: Icon's complaint should be dismissed with prejudice.

**B.   Exclusion of Evidence Is the Minimum Necessary Remedy**

At a minimum, the Court should exclude from evidence the communications that attorney Fields wrongfully obtained or selectively preserved.

"In the Ninth Circuit, a district court may exercise its supervisory powers to exclude evidence obtained through a violation of Rule 2-100" (the predecessor to Rule 4.2). *United States v. Carona*, 2008 WL 1970218, at *7 (C.D. Cal. May 2, 2008); *see Reynolds v. Shure*, 148 F. Supp. 3d 928, 934 n.1 (E.D. Cal. 2015). In *Kinchen v.*

*Brennan*, a judge in this Court deemed "evidentiary sanctions" appropriate to remedy a single violation of Rule 4.2 and therefore excluded a fact declaration obtained from a represented party. 2020 WL 2374947, at *4 (Anderson, J.). In *United States v. Sierra Pacific Industries*, 857 F. Supp. 2d 975 (E.D. Cal. 2011), the court excluded not only all evidence that the offending lawyer "learned…through the improper contacts," but also "any other evidence" gained or derived from "information…obtained through these contacts." *Id.* at 984. To paraphrase another court that excluded evidence obtained in violation of New York's substantively identical rule, "it would be improper and would provide undesirable incentives for the Court to allow [Icon] to benefit from" contacts that never should have happened. *Scott v. Chipotle Mexican Grill, Inc.*, 2014 WL 4852063, at *5 (S.D.N.Y. Sept. 29, 2014). All evidence obtained by attorney Fields in violation of Rule 4.2(a), and any evidence derived from those violations, should be excluded.

Attorney Fields's selectively preserved text messages should be excluded for the independent reason that attorney Fields violated Rule 3.4(a) and engaged in spoliation by allowing other texts to be deleted. The "obvious relief" when a party has cherrypicked messages for use in litigation is to prohibit that party "from offering any evidence of the alleged Messages." *See Edwards v. Junior State of America Foundation*, 2021 WL 1600282, *9–10 (E.D. Tex. Apr. 23, 2021). Allowing Icon to introduce selectively preserved messages would license it to present a counterfeit, one-sided version of events. The Court should exclude the text messages that attorney Fields selectively preserved and any testimony related to them.

## **CONCLUSION**

"Membership in the bar is a privilege burdened with conditions. An attorney is received into that ancient fellowship for something more than private gain. He becomes an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice." *Gadda v. Ashcroft*, 377 F.3d 934, 942–43 (9th Cir. 2004)

(quoting *In re Snyder,* 472 U.S. 634, 644 (1985)). Attorney Fields has repeatedly thwarted the ends of justice and incurably tainted these proceedings in the interests of his client Icon and himself.

For these reasons, the Carpenters defendants respectfully request that the Court dismiss Icon's Second Amended Complaint with prejudice.

Alternatively, the Carpenters defendants respectfully request that the Court issue an Order excluding from evidence:

1.  attorney Fields's October 16, 2017 email to Mr. Diament (Ex. 8);

2.  attorney Fields's January 25, 2018 email to Mr. Diament (Ex. 9);

3.  the March 14, 2018 text messages between attorney Fields and Mr. Diament (Ex. 10);

4.  the May 26, 2018 email by Mr. Pantoja (Ex. 13);

5.  the October 1, 2018 email and text message in which attorney Fields purportedly describes the phone call he initiated to Mr. Langford (Exs. 14–15); and

6.  any documents or testimony concerning communications between attorney Fields and any defendant on the matters for which Lozeau Drury represented the unions, namely the City land use approval/CEQA process and state-court litigation.

    Respectfully submitted,

SHANLEY APC

*/s/ Desmond C. Lee*
Desmond C. Lee (SBN 158952)
dlee@shanleyapc.com
SHANLEY, APC
533 South Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone:  (213) 488-4100

Edward Reddington (pro hac vice)
ereddington@wc.com
Charles Davant (pro hac vice)
cdavant@wc.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

William D. Ferraro (pro hac vice)
wferraro@wc.com
Danielle J. Barondess (pro hac vice)
dbarondess@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Ave. S.W.
Washington, DC 20024
Telephone:  (202) 434-5000

*Attorneys for Defendants Southwest Reg'l Council of
Carpenters, Daniel Langford, Alexis Olbrei, Ron
Diament and Pete Rodriguez*

MEMO. SUPPORTING MOTION FOR TERMINAL SANCTIONS OR TO EXCLUDE EVIDENCE

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 6895 words, which complies with the word limit of L.R. 11-6.1.


Dated:  January 2, 2024                    ___/s/  Desmond Lee_____
                                           Desmond Lee (SBN 158952)

                                           SHANLEY, APC
                                           533 South Fremont Avenue, Ninth Floor
                                           Los Angeles, California 90071-1706
                                           Telephone: (213) 488-4100

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum and supporting exhibits were served on all counsel of record via CM/ECF.


Dated:  January 2, 2024                         _/s/  Desmond Lee_____
                                                Desmond Lee (SBN 158952)

                                                SHANLEY, APC
                                                533 South Fremont Avenue, Ninth Floor
                                                Los Angeles, California 90071-1706
                                                Telephone: (213) 488-4100