# EXHIBIT 2

# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

THE ICON AT PANORAMA, LLC, Plaintiff,

vs. No. 2:19-cv-00181 CBM (MRWx)

SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, et al., Defendants.

REMOTE VIDEOTAPED DEPOSITION OF
ERAN FIELDS
Monday, October 16, 2023
Volume I

Reported by:
ALEXIS KAGAY
CSR No. 13795
Job No. 6150583
PAGES 1 - 184

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

THE ICON AT PANORAMA, LLC,

Plaintiff,

vs. No. 2:19-cv-00181 CBM (MRWx)

SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, et al.,

Defendants.

Remote Videotaped deposition of ERAN FIELDS, Volume I, taken on behalf of Defendants, with all participants appearing remotely, beginning at 9:28 a.m. and ending at 2:55 p m. on Monday, October 16, 2023, before ALEXIS KAGAY, Certified Shorthand Reporter No. 13795.

APPEARANCES (via Zoom Videoconference):

For Defendants Southwest Regional Council of Carpenters, Pete Rodriguez, Ron Diament, Alexis Olbrei and Daniel Langford:
WILLIAMS & CONNOLLY, LLP
BY: EDWARD C. REDDINGTON
BY: DANIELLE BARONDESS
BY: WILLIAM FERRARO
Attorneys at Law
680 Maine Avenue
Washington, DC 20024
292.434.50000
EReddington@wc.com
DBarondess@wc.com

APPEARANCES (Continued):

For Laborers' International Union of North America, Local 300, Sergio Rascon, Ernesto Pantoja, Angel Olvera Smith Engineering & Management:
REICH ADELL & CVITAN
BY: AARON LAWRENCE
Attorney at Law
330 North Brand Boulevard
Suite 250
Glendale, California 91203
Aaronl@rac-law.com

For SWAPE, LLC:
TYSON & MENDES, LLP
BY: MITCHELL B. MALACHOWSKI
Attorney at Law
4695 MacArthur Court
11th Floor
Newport Beach, California 92660
Mmalachowski@tysonmendes.com

APPEARANCES (Continued):

For Plaintiff:
MORRISON & FOERSTER, LLP
BY: HENRY HUTTINGER
BY: RACHEL FELDMAN
Attorneys at Law
707 Wilshire Boulevard
60th Floor
Los Angeles, California 90017
HHuttinger@mofo.com
RFeldman@mofo.com

Also Present:
MATTHEW LAWRENCE (VERITEXT CONCIERGE)

Videographer:
SEAN GRANT

INDEX

| WITNESS | EXAMINATION |
|---|---|
| ERAN FIELDS | |
| Volume I | |
| BY MR. REDDINGTON | 11 |

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 765 | Excel Spreadsheet | 108 |
| Exhibit 766 | Email Chain Bates-stamped ICON0075311 | 130 |
| Exhibit 767 | Email Chain Bates-stamped ICON0075320 | 132 |
| Exhibit 768 | Text Messages Bates-stamped ICON0008607 | 140 |
| Exhibit 769 | Text Messages Bates-stamped ICON0014593 | 142 |
| Exhibit 770 | Email Chain Bates-stamped ICON0074454 | 149 |

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 771 | Defendants' Notice of Deposition of Plaintiff the Icon at Panorama, LLC | 167 |
| Exhibit 772 | Plaintiff's Amended Privilege Log | 168 |

PREVIOUSLY MARKED EXHIBITS

| NUMBER | PAGE |
|---|---|
| Exhibit 670 | 38 |
| Exhibit 672 | 126 |

Monday, October 16, 2023

9:28 a.m.

THE VIDEOGRAPHER: Good morning. We're going on the record. The time is 9:28 a.m., and the date is 09:28:16 October 16, 2023.

Please note that this deposition is being conducted virtually. Quality of the recording depends on the quality of the camera and Internet connection of participants. What is seen from the witness and heard 09:28:31 onscreen is what will be recorded.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is media unit number 1 of the 09:28:41 video-recorded deposition of The Icon at Panorama, LLC, pursuant to Rule 30(b)(6) Eran Fields, taken by counsel for defendant in the matter of The Icon at Panorama, LLC, versus Southwest Regional Council of Carpenters, et al., filed in the United States District Court, 09:29:01 Central District of California, case number 2:19-cv-00181 CBM, and it is being conducted remotely using virtual technology.

My name is Sean Grant from the firm Veritext. I'm the videographer. The court reporter is Alexis 09:29:18

Kagay also from Veritext I am not related to any party in this action, nor am I financially interested in the outcome

If there are any objections to proceeding, please state them at the time of your appearance 09:29:30

Counsel present, including remotely, will now state their appearances and affiliations for the record, beginning with the noticing attorney, Mr Reddington

MR REDDINGTON: Good morning Good afternoon 09:29:41 my time This is Ed Reddington from Williams & Connolly With me is Will Ferraro And we represent the Carpenters defendants

MR LAWRENCE: Good morning Aaron Lawrence appearing on behalf of Laborers' International Union of 09:29:57 North America Local 300, Sergio Rascon, Angel Olvera and Ernesto Pantoja and Smith Engineering & Management

THE VIDEOGRAPHER: Mr Huttinger?

MR HUTTINGER: Henry Huttinger of Morrison & Foerster, LLP, for the plaintiff and the witness 09:30:19

THE VIDEOGRAPHER: Mr Ferraro?

MR REDDINGTON: So I -- I already got Mr Ferraro on the record, but I think you need Mitchell yet

MR MALACHOWSKI: Yep This is 09:30:31

and what we felt at that time we can afford to commit to and trying to find a way to make that work.

MR. REDDINGTON: All right. Thank you.

I think this would be a good time to take a break. 11:09:37

THE WITNESS: Okay. Is this a lunch break or -- oh, no, not yet.

MR. REDDINGTON: We can go off the record.

THE VIDEOGRAPHER: Off the record. The time is 11:09 a.m. 11:09:43

(Recess.)

THE VIDEOGRAPHER: Back on the record. The time is 11:25 a.m.

BY MR. REDDINGTON:

Q All right. Mr. Fields, when we -- we broke, 11:25:31 we were having a conversation about the December 2018 Memorandum of Understanding.

You did not draft that December 2018 Memorandum of Understanding; correct?

A That's -- 11:25:49

MS. FELDMAN: Objection; vague and ambiguous.

Go ahead.

THE WITNESS: That's correct.

BY MR. REDDINGTON:

Q And no one from Icon drafted that Memorandum 11:25:55

of Understanding; correct?

A That's correct.

Q Were you acting as a lawyer for Icon when you were engaging with the unions about the Icon project?

A I was representing Icon as an attorney, a 11:26:08 transactional attorney, and it relates to these type of documents.

Q Okay. And I want to move to another topic for -- for the 30 minutes we're going to try to cover before lunch. 11:26:36

Did Icon have a budget in 2016?

A So just define budget, meaning budget for the project or budget, like, an actual budget for operations of the company itself?

Q Yeah, I think the latter. So -- so a -- a 11:27:01 budget for operations of the company.

A No.

Q And did it have a budget at -- for the operations of the company at any time in 2017, '18 or 2019? 11:27:20

MS. FELDMAN: Objection; compound.

Go ahead.

THE WITNESS: General --

BY MR. REDDINGTON:

Q I'll break it up. Well, actually, I think you 11:27:23

can answer it.

MS. FELDMAN: I know you're trying to be easy on him.

THE WITNESS: I think I can answer it.

Not -- not necessarily a formal budget, no. 11:27:34

BY MR. REDDINGTON:

Q And what about today? Does Icon have a budget for operations today?

A No.

Q Okay. 11:27:44

A Can I ask you a follow-up question on that?

Q Sure. Go ahead.

A When you say "budget," again, you mean just as a corporate entity versus on a project? Is that what -- 11:28:10

Q Well, yeah, I guess. Are -- are you drawing a distinction between -- at some point, I'm sure, Icon would have a construction budget for a project that it was building. Is that what you're -- is that what you're -- why you're saying -- asking that? 11:28:24

A Yeah, no, but we also have a general sense of what would cause us to entitle a project before and then, of course, building permits and then so on. So there -- there's always a sense -- we can always get a -- an under- -- we -- we always have an understanding 11:28:43

of.

And I think your colleague asked me -- went through thoroughly over certain budgets that we put together for the project itself.

But it's not as if we just floated around with 11:28:53 no idea of monies and what it cost to do things, I guess, is another way of saying it.

Q Yeah. And -- and I'm not asking right now about construction budgets or pre-construction budgets. I'm trying to get an understanding of whether Icon, as 11:29:09 an entity, like some businesses do, has its own internal budget for operations.

MS. FELDMAN: Sorry, is it Icon or Icon at Panorama?

MR. REDDINGTON: Well, I -- we defined -- 11:29:25

THE WITNESS: At Panorama.

MR. REDDINGTON: -- Icon up front as Icon at --

MS. FELDMAN: Okay.

MR. REDDINGTON: -- Panorama; right? 11:29:30

THE WITNESS: Right.

No, not a formal budget necessarily.

BY MR. REDDINGTON:

Q Does The Icon Company, the manager of Icon, does it have a budget? 11:29:43

[redacted]

Page 82

[redacted]

Page 83

[redacted]

Page 84

[redacted]

Page 85

second page of the screen text?
A Yes.
Q And it -- it appears that you were writing something there, but it's cut off.
A Correct. 01:58:36
Q So something came after that?
A Yes. And -- so this seems like it was a screenshot and there was something after that.
Q Right. And my question is, where is what comes after that? 01:58:53
MS. FELDMAN: Assuming facts not in evidence.
THE WITNESS: I think that we provided that. So I don't know why that's not in here. The -- the completion of that bubble, anyway. So...
BY MR. REDDINGTON: 01:59:17
Q Did you just take two -- a couple of screenshots of your texts and -- and give them to your lawyers to -- to draft the Complaint?
A It sounds like -- it seems like that's what it was, so -- but I'm certain that there's the extension 01:59:27 of this bottom piece.
Q And could there be dialogue between you and Mr. Diament below this -- this passage that's at the bottom of page 2 here?
MS. FELDMAN: Objection to the extent it calls 01:59:59

Page 146

for a hypothetical.
THE WITNESS: So I think at the bottom -- is the bottom the first or the top the first?
Sorry, I just -- I'm trying to think that maybe the -- (as read): 02:00:04
"I'm just making suggestions..."
Let me just see the top. Hold on. Let me just see where it starts.
(Reading to self.)
Okay. So I don't know where the remaining 02:00:33 piece of this is.
Q Okay. There could be texts after this or texts before this that aren't captured on this particular document?
A I don't know that. It's -- what I can tell 02:00:44 you, it seems as if my response is -- is the end of it all, but it's cut off.
So once you get -- "to work together that would be great. If we can't, then it won't." And then I don't know why it's not showing the rest. 02:01:06
And I thought that I sent the full text response, but I don't know. This is from a long time ago, so...
I guess I'm saying I don't know if I can answer that question as to -- I'm guessing if there 02:01:23

Page 147

were more, I would send another -- I would have sent another page, but I'm just surprised that it's not showing the full text.
MS. FELDMAN: Could we go off the record real quick? I think Ed is -- is having some technical 02:01:56 difficulties.
MS. BARONDESS: Sure. Sure thing.
MR. REDDINGTON: Okay. I -- I'm back. You were -- you locked up at some point there. I -- I don't know if it locked up for everybody or just me. 02:02:07
THE WITNESS: I think just you.
MR. REDDINGTON: Okay. And -- and did Alexis get your answer that you were giving as I got locked up?
THE WITNESS: Do you want to know what the 02:02:25 answer is?
MR. REDDINGTON: Sure. Go ahead.
THE WITNESS: It doesn't matter. It doesn't -- none of this matters; right?
MR. REDDINGTON: Well, as long as it's on the 02:02:30 record, I guess -- I guess it's fine.
THE WITNESS: It's on the record. How's that?
MR. REDDINGTON: Okay.
THE WITNESS: Okay.
MR. REDDINGTON: All right. Let me ask you 02:02:37

Page 148

about another document that I don't think I've shown you yet. This is going to be ICON0074454 through 55.
THE WITNESS: So it will be Exhibit 770?
MR. REDDINGTON: Exhibit 770, yep.
(Exhibit 770 was marked for identification 02:03:28 by the court reporter and is attached hereto.)
BY MR. REDDINGTON:
Q All right. And if you want to take a minute to read it, I -- I'm -- I'm just going to point you to certain places and ask you what they mean. 02:03:42
This was another document that I believe was just recently produced.
MR. REDDINGTON: And, for the record, this one is also marked highly confidential.
THE WITNESS: Okay. I read it. 02:04:38
BY MR. REDDINGTON:
Q Okay. So in the first paragraph --
A In general.
Q Understood. The first paragraph talks about making excellent project [sic] on The Icon Panorama 02:04:47 plans and designs, submitting plans to the City early next year, and then it gives a description of the -- the project, I guess, as it's intended in the future.
So has -- is the -- is the current intent to build the project consistent with described here in 02:05:07

Page 149

communications with Mr. Feldman to you and you to Mr. Feldman related to antitrust litigation strategy; correct?
A Yes.
Q And then in 337, there's a -- there's an 02:43:04 e-mail just between you and Mr. Ruvelson --
A Uh-huh.
Q -- that is also described as (as read):
"Email providing legal advice related to antitrust litigation strategy." 02:43:17
Do you see that?
A I do.
Q Were you acting as an in-house lawyer for Icon with regard to the antitrust litigation strategy?
A I was acting as an in-house coun- -- well, 02:43:30 de facto in-house counsel, but I was acting as an attorney on behalf of Icon on a lot of matters, including litigation strategy related to this case.
Q Okay. And when did you decide to file this lawsuit? 02:43:55
MS. FELDMAN: Objection to the extent it calls for attorney-client and work product privilege.
If you can answer that question without spilling any of that.
THE WITNESS: I don't know if I can. 02:44:11

Page 170

BY MR. REDDINGTON:
Q Well, I'm just asking for a date. I'm not asking for any -- any advice or strategy.
MS. FELDMAN: Well, a date can be strategy.
THE WITNESS: I -- I don't recall the exact 02:44:27 date. Sorry.
BY MR. REDDINGTON:
Q No worries.
But it appears that at least by June of 2018, you were neither getting or giving legal advice related 02:44:38 to the antitrust litigation strategy; is that right?
MS. FELDMAN: To the extent it calls for some sort of attorney-client or work product privilege.
THE WITNESS: That -- it appears that way, yes. 02:44:52
BY MR. REDDINGTON:
Q Okay. Do you act as -- as an in-house or de facto attorney for any entities besides Icon?
A I do.
Q And what are the other entities? 02:45:06
A I think I -- I may have mentioned this in the last deposition. Fields Holdings, which is my entity, of which I'm principal. And then any other special purpose entities that I own that I develop myself as well. 02:45:39

Page 171

Q And so would all the entities for which you act as an in-house or de facto attorney be entities that you -- that you own or control?
MS. FELDMAN: And to clarify, for "you," it's Mr. Fields, not Icon? 02:46:02
MR. REDDINGTON: Well, yeah, obviously Icon --
MS. FELDMAN: Okay. Yeah.
MR. REDDINGTON: -- is not an attorney. So I'm asking --
MS. FELDMAN: Well, yeah. 02:46:07
MR. REDDINGTON: -- in his person- --
MS. FELDMAN: Okay.
THE WITNESS: So the entities that I own or control, do I act as counsel representing those entities in numerous matters, I guess, is the question? 02:46:18
BY MR. REDDINGTON:
Q Well, no. I -- I think I was ask- -- I mean, you're welcome to answer that -- that question, too, but I --
A No, but please -- 02:46:30
Q -- was answering -- answering it -- asking it slightly different.
I'm -- I -- I asked you about being an attorney for Icon, and you told me about that.
I asked you if you were an attorney for any 02:46:37

Page 172

other entities, and you mentioned some of the other entities that you have some sort of interest ownership or controlling interest in.
And what I'm asking you is, do you act as a de facto or in-house attorney for any entities other 02:46:50 than the ones that you have some sort of ownership or controlling interest in?
A Okay.
MS. FELDMAN: Object as to vague.
THE WITNESS: No. 02:47:03
MR. REDDINGTON: Okay.
THE WITNESS: I do not.
BY MR. REDDINGTON:
Q Now, you never told Mr. Langford you were an attorney; correct? 02:47:19
MS. FELDMAN: Object; calls for facts not in evidence.
THE WITNESS: I don't recall telling him that I was an attorney. It does come up.
BY MR. REDDINGTON: 02:47:35
Q Do you ever -- do you recall ever telling Mr. Diament you were an attorney?
MS. FELDMAN: Same objection.
THE WITNESS: I don't recall. It doesn't mean that I didn't, but I don't recall. 02:47:42

Page 173

BY MR. REDDINGTON:
Q And you knew that the Lozeau | Drury firm represented the union with regard to the CEQA comments that had been submitted in the L.A. planning process; correct? 02:47:53
MS. FELDMAN: Vague as to time.
THE WITNESS: As it relates to the CEQA comments?
MR. REDDINGTON: Yes.
THE WITNESS: Yes. 02:48:00
BY MR. REDDINGTON:
Q You knew that as of May 2017 when Lozeau | Drury found comments on behalf of the unions related to the Icon project; correct?
A Did I know that the Drury represented the 02:48:13 Carpenters and LIUNA as it relates to their comment letters.
MS. FELDMAN: Object to the extent it calls for a legal conclusion.
THE WITNESS: At that time, I'm not sure I 02:48:39 knew the exact relationship and how it all worked. I'm learning now, but -- so I'm not sure I can necessarily answer that with a totally definitive answer.
BY MR. REDDINGTON:
Q Well, and I think we talked about this at -- 02:48:51

at your personal deposition. You -- you received the comment letters that Lozeau | Drury filed on behalf of the unions from the City; correct?
A Yes, we did.
Q In fact, we may have even looked at one that 02:49:02 you received in May of 2017.
That would not surprise you; correct?
A Correct.
Q And you knew that the union was represented by an attorney in the CEQA petition; correct? 02:49:17
A In the CEQA petition, yes, I think he represented both of them.
Q You never reached out to Lozeau | Drury to discuss the union's CEQA comments, did you?
MS. FELDMAN: Object; facts not in evidence. 02:49:34
THE WITNESS: That was not our -- the CEQA comments were related to the City drafting of an EIR. That is a city document that we, as developers, work on, but ultimately they certify. And it is the City who was responding to comment letters to their counsel, 02:50:08 not the developer.
BY MR. REDDINGTON:
Q I appreciate that, but that's -- that's not exactly the question I -- I asked you.
My question was, you never reached out to 02:50:20

Lozeau | Drury to discuss the union's CEQA comments, did you?
MS. FELDMAN: Same objection and calls for a legal conclusion.
THE WITNESS: I don't know how to answer this 02:50:32 question. No, no, just without it, there was not -- our -- I don't know if we even had the right to respond -- or reach out to Drury when it came to that. This was -- those was comments to a City drafted -- draft EIR and entitlements, not to us. So I don't know 02:50:52 if it's even -- we were even permitted.
BY MR. REDDINGTON:
Q You never reached out to Lozeau | Drury to discuss anything about the Carpenters; correct?
A That's -- 02:51:10
MS. FELDMAN: Vague as to time subject.
THE WITNESS: Well, I mean, I guess indirectly through our counsel and the City --
BY MR. REDDINGTON:
Q I'm asking about you personally. 02:51:20
A Me personally --
Q Did you pers- -- did -- all right.
A No, I did not.
Q And you personally never reached out to Lozeau | Drury to discuss the state court CEQA petition; 02:51:29

correct?
A Personally?
Q Yes.
MS. FELDMAN: Calls for a legal conclusion.
THE WITNESS: That's correct. 02:51:37
BY MR. REDDINGTON:
Q But you did reach out to Mr. Langford to discuss the union CEQA petition; right?
MS. FELDMAN: Objection; mischaracterizes testimony. 02:52:03
THE WITNESS: Did I reach out to Dan Langford to discuss the CEQA petition?
BY MR. REDDINGTON:
Q You did; correct? You've already told me about that conversation. 02:52:17
A I reached out to him to discuss the -- that I was upset at the fact that they chose to file a CEQA petition.
Q And you also communicated with Mr. Diament about your displeasure about how you perceived the 02:52:34 union used CEQA; correct?
MS. FELDMAN: Objection; mischaracterizes testimony.
THE WITNESS: That's correct.
///

BY MR. REDDINGTON:
Q Now, as an attorney, you have an ethical obligation not to engage with a represented party on the subject of that party's representation; isn't that right? 02:53:03
MS. FELDMAN: Calls for a legal conclusion.
THE WITNESS: I'm -- I'm not sure I understand the question. And --
MR. REDDINGTON: Okay. I have no --
THE WITNESS: -- I think that -- I think 02:53:24 you -- we -- we -- we -- it doesn't matter. Go ahead.
MR. REDDINGTON: All right. I think I'm -- I think those are all the questions, I have, Mr. Fields.
Give me -- give me two minutes to look at my notes. We don't even have to go off the record. And 02:53:33 if so, I think -- I think we might be complete.
THE WITNESS: Okay. Great.
MR. REDDINGTON: All right. Is everybody still here?
MS. FELDMAN: Yep, we're here. 02:55:15
THE WITNESS: Yep.
MR. REDDINGTON: All right. Mr. Fields, thank you for your time. It was nice to see you again.
I've completed my questioning, and I pass the witness. 02:55:24

Page 178

MR. LAWRENCE: No questions from the Laborers defendants.
MR. MALACHOWSKI: No questions for us, SWAPE.
THE WITNESS: Thank you.
THE VIDEOGRAPHER: This concludes today's 02:55:31 video-recorded deposition of the Icon at Panorama, LLC, pursuant to Rule 30(b)(6) Aaron Fields.
We're off the record at 2:55 p.m.
The number of media used is eight and will be retained by Veritext. 02:55:45
(TIME NOTED: 2:55 p.m.)

Page 179

I, ERAN FIELDS, do hereby declare under penalty of perjury that I have read the foregoing transcript; that I have made any corrections as appear noted, in ink, initialed by me, or attached hereto; that my testimony as contained herein, as corrected, is true and correct.

EXECUTED this _____ day of _______________, 20____, at _________________________, _______________.
(City) (State)

______________________________
ERAN FIELDS
Volume I

Page 180

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: October 26, 2023

[signature]
ALEXIS KAGAY
CSR NO. 13795

Page 181