ALEXANDER B. CVITAN (SBN 81746),
Email: alc@rac-law.com
LAURENCE S. ZAKSON (SBN 119435),
Email: laurencez@rac-law.com
WILLIAM Y. SHEH (SBN 221275), and
Email: williams@rac-law.com
AARON G. LAWRENCE (SBN 258813), Members of
Email: aaronl@rac-law.com
REICH, ADELL & CVITAN, A Professional Law Corporation
330 North Brand Boulevard, Suite 250
Glendale, California 91203
Telephone: (213) 386-3860; Facsimile: (213) 386-5583

Attorneys for Defendants Laborers' International Union of North America Local 300, Ernesto Pantoja, Sergio Rascon, Angel Olvera, and Smith Engineering & Management

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Icon at Panorama, LLC,<br><br>      Plaintiff<br><br> vs.<br><br>Southwest Regional Council of Carpenters; Laborers International Union of North America Local 300; Daniel Langford, an individual; Alexis Olbrei, an individual; Ron Diament, an individual; Peter Rodriguez, an individual; Ernesto Pantoja, an individual; Sergio Rascon, an individual; Angel Olvera, an individual; SWAPE, LLC, a California corporation; Smith Engineering & Management, a California corporation; unnamed spouses of all named individual Defendants, and DOES 1 through 10, inclusive.<br><br>      Defendants. | Case No. 2:19-cv-00181-CBM-MRW<br><br>**OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT [DKT 344]**<br><br>**BEFORE THE HONORABLE CONSUELO B. MARSHALL**<br><br>Hearing Date: March 12, 2024<br>Time:    10:00 a.m.<br>Place:    Courtroom 8D<br><br>Trial Date: July 23, 2024 [ECF No. 264] |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     RELEVANT FACTUAL BACKGROUND ................................................2

    A.  Icon's Claims in this Lawsuit ............................................................2

    B.  The Relationship Between Local 300 and Non-Party SCDCL ............3

    C.  Icon Communicates with SCDCL and Preciado in 2018 ....................4

    D.  Local 300 Identified Preciado in Disclosures and Discovery Responses from the Earliest Stages of This Litigation ........................5

    E.  Icon Waited Until the End of Discovery to Take Depositions .............6

    F.  Icon Files Its Motion to Reopen Discovery and Modify the Case Schedule .............................................................................................7

III.    ARGUMENT ............................................................................................7

    A.  Icon's Failure to Comply with Local Rule 7-3 ..................................7

    B.  Rule 16 Applies to Icon's Motion to Amend.......................................9

        1.  Icon Was Not Diligent in Seeking to Add SCDCL as a Party ..10

        2.  Defendants Will Be Prejudiced by the Amendment ................15

    C.  Even if Rule 15 Applies, Icon's Motion Should Be Denied...............17

        1.  Adding SCDCL Would Prejudice SCDCL and Current Defendants ...............................................................................17

        2.  Icon Seeks Leave to Add SCDCL as a Defendant in Bad Faith17

        3.  Amendment Is Futile as the Statute of Limitations Has Run ....18

        4.  Icon Has Unduly Delayed Bringing Its Motion ........................19

    D.  Icon Misapplies Rule 21 .................................................................19

IV.     CONCLUSION .......................................................................................20

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Arizona Senate,* 2021 WL 6050304 (D. Ariz. 2021) ........................16, 19

*Allianz Life Ins. Co. of N. Am. V. Garrity,* 2015 WL 13914809 (C.D. Cal. 2015) ....8

*Alvarez v. Am. Honda Motor Co.,* 2023 WL 4681556 (C.D. Cal. 2023) ..................9

*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946 (9th Cir. 2006) .......19

*Bassani v. Sutton,* 430 Fed.Appx. 596 (9th Cir. 2011)...........................................11

*Berwind Property Grp., Inc. v. Environmental Mgmt. Grp., Inc.,* 233 F.R.D. 62 (D. Mass. 2005) ...............................................................................................11, 12

*Butler v. National Community Renaissance Corp.,* 2010 WL 11596469 (C.D. Cal. 2010)...............................................................................................................18

*Custom Homes by Via, LLC v. Bank of Okla., N.A.*, 637 F. App'x 356 (9th Cir. 2016).................................................................................................................20

*Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir. 2003) ................17

Fed.R.Civ.P. 16.......................................................................................................10

*In re Snap Inc. Secs. Litig.,* 394 F.Supp.3d 1156 (C.D. Cal. 2019) ........................19

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990) ...................................17

*JIPC Mgmt., Inc v. Incredible Pizza Co., Inc.,* 2010 WL 11515198 (C.D. Cal. 2010) (Marshall, J.)..............................................................................9, 10, 15, 16

*Jocson v. Diamond Resorts, Int'l Club, Inc.,* 2019 WL 10854465 (C.D. Cal. 2019) 9

*Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604 (9th Cir. 1992) ...9, 14, 15, 17

*Lee v. Delta Air Lines Inc.*, 2022 WL 2093852 (C.D. Cal. 2022)............................9

*Lee v. Delta Air Lines, Inc.,* 2022 WL 17078109 (C.D. Cal. 2022)..........................8

*Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999)..17

*Morris v. Sutton,* 2019 WL 2994291 (E.D. Cal. 2019) .....................................14, 16

*Overpeck v. FedEx Corp.*, 2020 WL 2542030 (N.D. Cal. 2020) ............................10

*Solomon v. N. Am. Life & Cas. Ins. Co.,* 151 F.3d 1132, 1139 (9th Cir. 1998).......16

*Thorpe v. Mechanicsville Concrete, LLC,* 2011 WL 3820809 (E.D. Va. 2011)......10

*Union Pac. R.R. Co. v. Nevada Power Co.,* 950 F.2d 1429 (9th Cir. 1991)............17

*University of Pittsburgh v. Hedrick,* 2006 WL 8431812 (C.D. Cal. 2006) (Marshall, J.) ......................................................................................................................15

*Wilkins-Jones v. County of Alameda,* 2012 WL 3116025 (N.D. Cal. 2012)17, 18, 19

**Rules**

Fed.R.Civ.P. 12...................................................................................................1, 2

Fed.R.Civ.P. 15.................................................................................1, 9, 17, 18, 19

Fed.R.Civ.P. 21...............................................................................................1, 19

Fed.R.Civ.P. 32.......................................................................................................19

Fed.R.Civ.P. 56.......................................................................................................10

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING &
MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

## I.  **INTRODUCTION**

After years of litigation, The Icon at Panorama, LLC ("Icon" or "Plaintiff") seeks to blow up the case schedule and to add as a defendant the Southern California District Council of Laborers ("SCDCL" or "District Council")—an entity Icon knew was involved in the facts underlying this case since early 2018, long before this lawsuit was filed. It seeks to do so: at a hearing noticed nearly five months after the close of fact discovery; after the exchange of expert reports; and on the eve of summary judgment briefing—with trial only a few months away. This is Icon's second attempt to upend the case timeline in recent weeks; Icon recently moved to reopen discovery and modify the scheduling order.

There is no basis for adding a new defendant at this late stage, especially inasmuch as Icon's proposed amendment also (unmentioned its moving papers) adds a new alleged "co-conspirator" and, thus, new Rule 12 issues for the existing parties—not to mention the delay and expense that predictably will be the result of adding a party that has not yet had an opportunity to test the pleadings, to conduct discovery or to decide whether to use its own or the other defendants' expert witnesses. Icon's dilatory tactics should not be countenanced, and its motion should be denied whether analyzed under Rule 16 or, as Icon contends, under Rule 15 and/or 21.

Plaintiff does not remotely meet the "good cause" standard required for its proposed late amendment when: (1) fact discovery ended on October 16, 2023; (2) all ten expert reports have been exchanged and expert depositions have started;[1] and (3) Defendants have already begun preparing summary judgment papers. Not only was Icon aware of SCDCL's role in this matter since 2018, but it was so apprised in initial disclosures and discovery responses served in 2019 and 2020. Despite this knowledge, Icon waited to depose SCDCL's business manager, Jon Preciado, until after the close of fact discovery. Following that deposition, Icon sat on its hands for months before

---

[1] By the time this motion is heard, there will have been four expert depositions and a fifth is scheduled for the Monday after the hearing.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

even raising the prospect of an amendment. There is no excuse for Icon's lack of diligence and no reasonable basis to add SCDCL as a defendant at this late stage.

Defendants manifestly would be unfairly prejudiced if SCDCL were added to this case now. As detailed in the Carpenters Defendants' opposition, in addition to the additional motion practice and re-opening of discovery required to afford the SCDCL due process, Icon proposes to add new allegations suggesting (for the first time) that the law firm representing the unions in the underlying administrative and state court proceedings should be identified as an unnamed co-conspirator. This would be an entirely new theory of liability and, if allowed to proceed, would undoubtedly lead to new rounds of 12(b)(6) motion practice in a case where the parties had already completed discovery. Plaintiff should not be permitted to engage in such gamesmanship—a thinly veiled and unwarranted attempt to get a second bite at the apple to reframe Icon's deficient case, reopen fact discovery, and postpone summary judgment and trial for months or longer.

Notably, Icon will not be deprived of a viable defendant if Icon is held responsible for its own deliberate decision not to join the SCDC. Neither Laborers International Union of North America Local 300 ("Local 300") nor Icon contends that Local 300 lacks legal responsibility for CEQA documents that were filed on Local 300's behalf, nor does anyone, including Icon, contend that Icon would be left without a viable defendant absent amendment. Local 300 does not assert a defense that it did not engage in the underlying petitioning conduct, and Icon has conceded that it does not base this motion on a concern that the absence of the SCDCL as a party would leave Icon unable to obtain relief for its claims.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Icon's Claims in this Lawsuit

Icon is a development company that needed city approval to build a real estate project in Los Angeles ("Icon Project"). ECF No. 47 ¶¶ 7, 29. SWRCC and Local 300 ("Union Defendants") engaged in First Amendment petitioning regarding the Icon

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

Project—participating in the City of Los Angeles' ("City") land use approval process by sending comment letters under CEQA. *Id.* ¶¶ 9, 18, 71-89. Union Defendants later filed a CEQA lawsuit in state court against the City after it approved a significantly modified version of the Icon Project without additional public vetting of the revised Environmental Impact Report, which the Union Defendants contended CEQA required. *Id.* ¶ 19. In retaliation for this petitioning activity, Icon brought this action against Union Defendants, certain alleged agents/representatives, and two environmental consultants alleging antitrust and labor law violations.[2]

### B.   The Relationship Between Local 300 and Non-Party SCDCL

Laborers' International Union of North America (LIUNA) is an international labor organization that represents, as relevant here, construction laborers. LIUNA has subsidiary bodies known as District Councils. The District Councils are the bargaining representatives of employees and enter into labor agreements with employers concerning those employees' terms and conditions of employment. In addition, the District Councils are the bodies which affiliate with regional organizing coalitions, which organize employees for purposes of representation by the union. Preciado Decl. ¶¶ 2-3 & Ex 1 (Uniform District Council Constitution).

Individual employees belong to local unions, which operate hiring halls, handle day-to-day grievance intake and processing and participate in the political process in their territorial areas. Union members are not members of a District Council; they are members through their local unions. Because of their larger geographic scope, District Councils are the entities that coordinate activities that impact more than just the members of a single local union. *Id.*

There are twelve local unions in the SCDCL including Local 300. *Id.* Jon Preciado currently serves as the principal officer, or Business Manager, of the SCDCL. *Id.* As the Business Manager of the SCDCL, Preciado is authorized to enter

---

[2] The original complaint included the spouses of the individual defendants and a RICO claim. Icon dismissed the spouses; this Court dismissed the RICO claim.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

into labor agreements on behalf of affiliated locals, including Local 300. *Id.*, ¶ 4. By vote of the affiliated local unions, including Local 300, SCDCL was charged with identifying, in consultation with counsel, development projects for CEQA petitioning. *Id.*, ¶ 5; *see also e.g.,* Lawrence Decl. Ex. G (Rascon Rog Response, at 7-10); Ex. I (Preciado Tr. at 35:4-36:21). As a result of this vote, during the time period relevant to this lawsuit (2017 to 2019), "gathering, evaluating and disseminating to and from counsel on development projects (both public and private) of interest to the District Council and/or Local 300 was one of Mr. Preciado/s primary areas of responsibility …" Ex. G, at 7-10. Local 300's involvement in the initial filing of comment letters would vary from project to project. Lawrence Decl., Ex. J (Rascon Tr. At 79:14-80:8). On some occasions, Local 300 was aware of the SCDCL's identification of a project as an appropriate one for engaging in CEQA petitioning and was given the opportunity to weigh in—as occurred on the Ferrante project *Id.* (Rascon Tr. at 117:19-118:7. In other cases, the SCDCL, pursuant to the delegation discussed above, made the initial petitioning decision—as appears to have been the case with respect to the Icon project. *Id.* (Rascon Tr. at 80:9-22).

Whichever entity made the initial decision, Local 300, in consultation with SCDCL and counsel, made decisions relating to whether to file an administrative appeal or to initiate litigation by filing a writ petition relating to CEQA. *See* Lawrence Decl. Ex. H (Local 300 Rog Response at 23-25).

**C.   Icon Communicates with SCDCL and Preciado in 2018**

Icon was aware of Preciado and SCDCL as early as 2018. One of the very first communications between Icon and anyone related to LIUNA was between Icon and Preciado. On March 23, 2018, Preciado called Icon principal Billy Ruvelson to introduce himself as the Business Manager for SCDCL and set up a meeting. Lawrence Decl. Ex. A. On that call, Preciado stated that "our environmental lawyer … said that he wanted me to reach out to you regarding your project that was heard by the Planning Commission … this week." *Id.* Shortly thereafter, in April 2018,

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

Preciado reached out to the other Icon principal, Eran Fields, seeking to set up a meeting about using union laborers on the Icon Project. *Id.,* Ex. B. In May 2018, Local 300 Special Projects Agent, Ernesto Pantoja, sent a draft Letter of Commitment to Icon which contemplated that certain scopes of work on the Icon Project would be performed by employees represented by SCDCL's affiliated local unions, including Local 300. That draft agreement was to be signed by SCDCL. *Id.*, Ex. C.

After Icon filed this lawsuit but before discovery even began, in September 2019, Icon included in its opposition to motion for summary judgment an exhibit identifying Preciado's role as Business Manager of the SCDCL and in the CEQA process. *Id*. Exs. D, E.

**D.     Local 300 Identified Preciado in Disclosures and Discovery Responses from the Earliest Stages of This Litigation**

Fact discovery began in October 2019 and continued for five months until the matter was stayed in March 2020. ECF Nos. 139, 174. On December 5, 2019, Local 300 served its Initial Disclosures naming Jon Preciado of the SCDCL as a witness with knowledge of the following information:

> CEQA proceedings identified in the SAC, and any other pertinent CEQA proceedings in which the Laborers Union participated, if any; Interactions between Laborers Union and developers of projects where such CEQA proceeding occurred, if any; Settlement agreements between Laborers Union and developers of projects where such CEQA proceedings occurred, if any …

Lawrence Decl. Ex. F at 3-4.

In interrogatory responses served in January 2020, Local 300 and Rascon further identified SCDCL's role in the CEQA process. The responses disclosed to Icon that Preciado had the responsibility for the initial phase of evaluating projects for CEQA participation.

> [Q:] IDENTIFY all COMMUNICATIONS YOU [Rascon] ever had with anyone RELATED TO any decision, strategy, discussion, or plans to prepare, submit, or file CEQA CHALLENGE(S).

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

> [RESPONSE:] In addition to Pantoja, the only other persons with whom I recall ever having any communication about a CEQA Challenge … are Southern California District Council of Laborers (District Council) Business Manager Jon Preciado …
>
> As President of the District Council, and thus, one of the executive officers of that organization, I know, from personal experience, that gathering, evaluating and disseminating to and from counsel on development projects (both public and private) of interest to the District Council and/or Local 300 was one of Mr. Preciado/s primary areas of responsibility …

*Id.* Ex. G at 7-10.

With respect to litigation decisions, these responses indicated that Rascon was, "[a]s a general matter," responsible, but if the matter "potentially ha[s] an impact outside the territorial jurisdiction of Local 300," any such decision was made in consultation with Preciado:

> [Q:] IDENTIFY every person or entity involved in YOUR [Local 300's] decision(s) whether or not to file or submit CEQA CHALLENGE(S) to any DEVELOPMENT PROJECT.
>
> [RESPONSE:] As a general matter, decisions on whether and how Local 300 participates in most litigation matters are made by Local 300's business manager Sergio Rascon …
>
> With respect to decisions about matter potentially having an impact outside the territorial jurisdiction of Local 300, Rascon regularly consults with Southern California District Council of Laborers (District Council) Business Manager Jon Preciado …
>
> With respect to contents of a labor agreement[s] … the decision whether to enter into such an agreement is made by District Council Business Manager Jon Preciado [in conjunction with Local 300] … when it is a[] [labor] agreement covering a project or contractor in Local 300's territorial jurisdiction …

*Id.* Ex. H at 23-25.

### E.    Icon Waited Until the End of Discovery to Take Depositions

Discovery resumed in October 2022 (ECF No. 230), and a discovery cutoff date was set for October 16, 2023, a full year later (ECF No. 264). Icon waited to seek to depose any defendants until late August 2023—fourteen months into fact discovery, nearly three months after the completion of document productions, and less than two

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

months before the fact discovery cutoff. Lawrence Decl. ¶ 12. Despite the Local Rule limiting a party to 10 depositions, Defendants agreed to allow Icon to take fourteen depositions during the discovery period. *Id.* In the spirit of cooperation, and to avoid an unnecessary dispute, Defendants agreed to permit Icon to take a fifteenth deposition three weeks after fact discovery closed. *Id.* That fifteenth deposition was of SCDCL Business Manager Jon Preciado. *Id.*; Preciado Decl. ¶ 8. [3]

### F.   Icon Files Its Motion to Reopen Discovery and Modify the Case Schedule

On January 30, 2024, Icon filed its motion to reopen fact discovery and modify the scheduling order. ECF No. 328. That motion is based in part on the same issues as the instant motion—*i.e.*, that Icon assertedly did not understand the role of SCDCL and now assertedly needs additional discovery.[4] The Union Defendants opposed that motion. ECF Nos. 335, 336. Now, by separate motion, Icon moves the Court to add SCDCL as a defendant. Icon misleadingly suggests that SCDCL can be added without any disruption to the current case schedule. This argument ignores the obvious due process problems with its position: if SCDCL were to be added, it—like any other party defendant—would need to be given an opportunity to challenge the pleadings and conduct discovery to support its own potential defense.

## III.   ARGUMENT

### A.   Icon's Failure to Comply with Local Rule 7-3

Icon filed this motion in violation of Local Rule 7-3 and this Court's standing order, both of which require parties to meet and confer "at least seven (7) days prior to the filing of the motion." Here, despite months of back and forth on supposedly outstanding discovery issues, Icon first mentioned adding SCDCL as a defendant in a

---

[3] Both Rascon's and Preciado's testimony was consistent with Local 300's interrogatory responses. Lawrence Decl. Ex. J at 160:1-9 and Ex. I at 35:9-37:1.

[4] Notably, Icon's proposed order does not seek to reopen the Preciado deposition. ECF No. 344-10.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

letter emailed to Defendants on the evening of January 30, 2024. Lawrence Decl. ¶¶ 13, 14, Ex. L. On February 1, 2024, Icon's counsel proposed meeting on either February 5 or 7 to discuss both the January 30 letter and an unrelated issue. *Id.*, Ex. L, at 5. Local 300 responded indicating availability at a different time on February 7, but Icon instead proposed meeting on February 8, which Defendants accepted. *Id.*, Ex. L, at 2-4. The parties met on February 8, 2024. *Id.*, Ex. M at 1-3. At the conference, counsel for Icon indicated that it would file its motion on February 13, 2024, five days later.[5] *Id.* Five days' notice does not comply with the rule. *Lee v. Delta Air Lines, Inc.,* 2022 WL 17078109, at *2 (C.D. Cal. 2022) (denying motion for failure to comply with L.R. 7-3 where meet and confer occurred five days before the filing of the motion) (Marshall, J.).

Icon's justification for its premature filing is that its January 30, 2024, letter started the clock and counsel for Local 300 was not immediately available to confer. Lawrence Decl. Ex. M, at 1-3. However, the transmittal of a letter describing a party's intent to file a motion does not satisfy the rule. *Allianz Life Ins. Co. of N. Am. V. Garrity,* 2015 WL 13914809, at *1 (C.D. Cal. 2015). As stated in *Allianz,* a letter is nothing more than a "precursor to a conference." *Id.* at *2. Eight days is not an unreasonably long period of time and Local 300's counsel's unavailability to meet immediately on a subject of this gravity (especially one which was not previously identified by Icon) does not permit Icon to circumvent the rule.[6] Moreover, Icon was the party that initially (on February 1) proposed a February 7 meeting and—when Icon was unavailable during the time that day that worked for Defendants—proposed

---

[5] This timing does not appear accidental as it forced an opposition to be filed during a week in which there is a Court holiday (when law firm staff are normally given a day off) and a deposition of one of Icon's key expert witnesses.

[6] Unlike Plaintiff, Laborers Defendants and SEM are not represented by a law firm with over a thousand lawyers. Moreover, one purpose of the meet and confer timeline is to avoid sandbagging the non-moving party by allowing time to formulate a response and promoting a complete exchange of views and resolution of any issues, including scheduling, that do not require Court intervention.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

the ultimate February 8 date. *See Jocson v. Diamond Resorts, Int'l Club, Inc.,* 2019 WL 10854465, at *4 (C.D. Cal. 2019) (it was unreasonable to expect opposing counsel to "drop everything" to meet and confer); *Alvarez v. Am. Honda Motor Co.,* 2023 WL 4681556, at *1-2 (C.D. Cal. 2023).[7]

Nor does Icon's argument that the Union Defendants' unequivocal position that it would oppose the motion to amend relieve Icon of its duty to thoroughly and substantively meet and confer. *Bohn v. Pharmavite, LLC,* 2013 WL 4517173, at *1 (C.D. Cal. 2013). In these circumstances, Icon seems to have been more intent on achieving tactical advantage than satisfying its meet and confer obligations. Such conduct should not be rewarded, and the motion should be denied.

### B.    Rule 16 Applies to Icon's Motion to Amend

Icon contends that Rule 15 governs its motion because it has not requested that the Court modify the Scheduling Order. First, Icon already has a motion pending to modify the Scheduling Order to take additional discovery so its argument is disingenuous at best. ECF No. 328. Second, the Ninth Circuit has held that where a Scheduling Order has already been entered and the deadline has passed, a motion to amend is untimely and should be denied. *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 608-09 (9th Cir. 1992); *JIPC Mgmt., Inc v. Incredible Pizza Co., Inc.,* 2010 WL 11515198, at *3 (C.D. Cal. 2010) (Marshall, J.) ("A Scheduling Order was entered … Therefore, Plaintiff should have filed a request for modification of the Scheduling Order").

Further, Icon's argument that this matter should be heard under Rule 15 can draw no sustenance from the fact the Scheduling Order did not expressly set a deadline for amending the complaint to add parties or claims. The Court filed the first

---

[7] The situation here is not analogous to *Lee v. Delta Air Lines Inc*., 2022 WL 2093852, at *3 (C.D. Cal. 2022) because there, the non-moving party refused to respond to emails and phone calls requesting a meet and confer for three weeks and refused to actually meet and confer for four weeks. Here, Plaintiff's counsel served its letter on January 30 and the conference occurred on February 8. Lawrence Decl. ¶¶ 13-15 & Exs. K, L.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

Scheduling Order in this case on December 13, 2019 (ECF No. 148), after the Second Amended Complaint was filed (ECF No. 47), after motions to dismiss were heard (ECF No. 95), after Icon advised that it did not intend to amend the SAC (ECF No. 96), and after a motion for summary judgment was heard (ECF No. 147) and denied as premature under Rule 56(f). Given the procedural posture of the case at that time, it is not surprising that the Court did not include a deadline for amending the complaint to add claims or parties to the Scheduling Order.

Notably, the Scheduling Order included only dates for fact discovery cut-off, expert disclosures, expert discovery cut-off, hearings on pre-trial motions, the pre-trial conference and trial—all dates that customarily follow a deadline for adding claims or parties. *See* ECF No. 148. Given these facts, Rule 16 should apply to Icon's motion for leave to amend. *Thorpe v. Mechanicsville Concrete, LLC,* 2011 WL 3820809, at *2 (E.D. Va. 2011) (analyzing motion to amend under Rule 16 even though Scheduling Order did not set a deadline for adding parties/claims); *see also Johnson*, *supra*, 975 F.2d at 607-08 (9th Cir. 1992); *JIPC*, *supra*, 2010 WL 11515198, at *2 (C.D. Cal. 2010) (Marshall, J.) ("[T]he Scheduling Order can only be modified … 'upon showing of good cause and with the judge's consent.'").[8]

Under Rule 16, the "good cause" inquiry primarily focuses on the diligence of the party seeking to extend the scheduling deadlines. *Johnson,* 975 F.2d at 609; *JIPC Mgmt. Inc.,* at 2010 WL 11515198, at *2. Prejudice to the party opposing the modification also may be considered. *Johnson,* 975 F.2d at 609.

### 1.    Icon Was Not Diligent in Seeking to Add SCDCL as a Party

Icon's assertion that it first discovered SCDCL's role in identifying development projects for filing CEQA comments during depositions taken shortly

---

[8] *Overpeck v. FedEx Corp*., 2020 WL 2542030 (N.D. Cal. 2020), is distinguishable. There, the Court had already ordered plaintiff to amend its complaint in a prior order and the motion was to *dismiss* claims and refine existing allegations; it was not to add a party.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

before the close of discovery is demonstrably false. Icon had direct contact with Preciado and SCDCL in 2018, yet chose not to name Preciado or SCDCL in the complaint. One of the very first outreach efforts to Icon from anyone on behalf of LIUNA was a phone call from Preciado to Ruvelson in 2018 in which Preciado identified himself as calling on behalf of SCDCL as its Business Manager and stated that "our environmental lawyer had said that he wanted me to reach out to you regarding your project that was heard by the Planning Commission here this week." Lawrence Decl. Ex. A. Shortly thereafter, in April 2018, Preciado reached out to the other Icon principal, Eran Fields, seeking to set up a meeting about the Icon Project. *Id.* Ex. B. In May 2018, Local 300 Special Projects Agent, Ernesto Pantoja, sent a draft Letter of Commitment to Icon which contemplated that certain scopes of work on the Icon Project would be performed by employees represented by SCDCL's affiliated local unions. That draft agreement was to be executed by Icon and SCDCL. *Id.* Ex. C. This evidence clearly shows that Icon was aware of SCDCL's role ***before*** it filed its complaint and its motion should be denied. *See e.g., Bassani v. Sutton,* 430 Fed.Appx. 596, 597 (9th Cir. 2011) (denial of amendment appropriate in part because movant "had known about the facts and legal theories giving rise to his amendments from his suit's inception."); *Berwind Property Grp., Inc. v. Environmental Mgmt. Grp., Inc.,* 233 F.R.D. 62, 67 (D. Mass. 2005) (denying motion to amend to add parties where identities and involvement of proposed defendants were known to plaintiff at the time of filing complaint).

Fully aware of the SCDCL and Preciado, Icon, in August 2019, informed the Court that it had no intent to amend the complaint and requested the Court set a scheduling conference. ECF No. 96.

Shortly thereafter, in September 2019, Icon again demonstrated its knowledge of the critical role of Preciado and the SCDCL by including in its opposition to the SWRCC's motion for summary judgment an exhibit identifying Preciado as SCDCL's Business Manager in support of its contention that Preciado

11          Case No. 2:19-cv-00181-CBM-MRW

was involved in CEQA comments as President of SAFER (a group that Icon claims is an agent for the Union Defendants) on a Los Angeles County development. Lawrence Decl. Exs. D, E. *See e.g., Berwind,* 233 F.R.D. at 67. Yet, it was not until January 30, 2024, over five years and four months later, that Icon first sought to amend its complaint to include the SCDCL.

Throughout the pre-stay period, in 2019 and 2020, Icon was repeatedly further advised of SCDCL's role in Local 300's CEQA filings. Specifically, in Local 300's initial disclosure, Local 300 named Jon Preciado of the SCDCL as a witness with knowledge of, among other things, "CEQA proceedings identified in the SAC … [and] interactions between Laborers Union and developers of projects where such CEQA proceeding occurred." Lawrence Decl. Ex. F, at 3-4.

The interrogatory responses of Rascon and local 300 also identified SCDCL's role in the CEQA process. In its papers, Icon conveniently fails to inform the Court of portions of the interrogatory responses that identified the role of SCDCL and Preciado. Rascon stated that he communicated with "Southern California District Council of Laborers (District Council) Business Manager Jon Preciado" about CEQA "[c]hallenges" and that "gathering, evaluating and disseminating to and from counsel on development projects (both public and private) of interest to the District Council and/or Local 300 was one of Mr. Preciado/s primary areas of responsibility …" Lawrence Decl. Ex. G, at 7-10. Moreover, Icon's argument that Rascon only specifically remembered communicating with legal counsel regarding "strategy or plans for the filing of CEQA [c]hallenges" is not inconsistent. ECF No. 334-3 at 14. That statement refers to "filing" and does not refer to who identified development projects in the first instance.

Local 300's responses are also consistent with the 30(b)(6) deposition testimony. Local 300's interrogatory response stated that its answer was "limited to its general decision-making process" and while decisions regarding "most litigation

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

matters" are made by Rascon, decisions "about matters potentially having an impact outside the territorial jurisdiction of Local 300" were made in consultation "with Southern California District Council of Laborers (District Council) Business Manager Jon Preciado …" Lawrence Decl., Ex. H. Icon takes "litigation matters" and "having an impact outside the territorial jurisdiction of Local 300" out of context to argue that the responses were misleading. Local 300 has continually explained throughout the litigation both that there is distinction between early, non-adjudicatory CEQA participation (*i.e.*, the decision to file informal, public CEQA comments) and subsequent "litigation matters." *E.g.* ECF No. 200, at 13-14, 22-25; ECF No. 218, at 7 n.5, 8 n.7, 10; ECF No. 102, at 11 n.4. It is Icon's failure to appreciate upon this key distinction—which Local 300 explained—not obfuscation that is at play here. Indeed, if Icon found any of these explanations to be confusing or to warrant further explanation, Icon had sixteen months of discovery and ample opportunities to ask follow-up questions in written discovery and during the Local 300 30(b)(6) deposition. Icon's failure to do so is not Local 300's responsibility.

Icon also misleadingly misconstrues Local 300's response stating that Preciado was consulted on "matters having impact outside the territorial jurisdiction of Local 300." Local 300 is not referring solely to decisions with impacts geographic areas that do not include Local 300, but to any decisions that may have an impact outside Local 300's geographic area, including decisions that have an impact both inside and outside. Preciado Decl. ¶ 6. This is consistent with the deposition testimony of Preciado who testified that the regional local union business managers met with SCDCL in early 2017 and voted that the SCDCL would take the lead in identifying projects of environmental concern. Lawrence Decl. Ex. I, at 35:4-36:21. Again, to the extent that Icon now purportedly claims that it did not understand the meaning of "territorial jurisdiction" as used by Local 300, Icon had every opportunity to ask follow-up questions in discovery. Icon's failure to do so cannot be blamed on Local 300.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

Based on Icon's own knowledge of the facts in 2018, Local 300's initial disclosures, and discovery responses in 2019 and 2020, Icon has been on notice at all relevant times of Preciado and SCDCL's role in the CEQA process. Yet, Icon chose not to amend the complaint or even seek discovery from the SCDCL.[9] Preciado Decl. ¶ 7.

Even after discovery resumed in October 2022 (ECF No. 230), and a discovery cutoff date was set for October 16, 2023, a full year later, Icon waited to seek to depose any defendants until late August 2023—fourteen months into fact discovery, nearly three months after the completion of document productions, and less than two months before the fact discovery cutoff. Lawrence Decl. ¶ 12. It is at these depositions that Icon now claims it discovered for the first time SCDCL's role in the CEQA process. As discussed above, Icon knew of SCDCL's involvement as far back as 2018 and there was nothing misleading about Local 300's interrogatory responses. *See* Lawrence Decl. Ex. J at 160:1-9 and Ex. I at 35:9-37:1. Icon's claim that it became aware of Preciado's role in Local 300's CEQA filings only at Preciado's deposition is belied by the evidence Icon submitted to this Court in September 2019 which clearly shows that Icon was aware of Preciado's role in CEQA filings. Lawrence Exs. D, E.

Rather than a decision made while in the dark about the true facts, it appears that Icon made a conscious decision not to include SCDCL initially or in its amended complaints. Under such facts, Icon cannot show "good cause" for its delay. *Johnson,* 975 F.2d at 610 (no good cause for amendment of a party where plaintiff failed to "pay attention" to discovery responses); *Morris v. Sutton,* 2019 WL 2994291, at *4 (E.D. Cal. 2019) (finding party was not diligent in waiting until the end of fact discovery to take PMK deposition).

---

[9] Icon's contention that Local 300's corporate representatives never read Local 300's interrogatories misconstrues the record. As support, Icon cites to the deposition of Ernesto Pantoja who was asked about a topic for which he was not identified as the 30(b)(6) witness.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

1    Even after taking the Preciado and Rascon depositions, Icon waited several

2    more months to bring the instant motion. While Icon seeks to blame Defendants for its

3    decision to wait until months after discovery had closed to seek relief, this excuse is

4    particularly incomprehensible with respect to the instant motion, given that Icon did

5    not even broach the subject of amending its complaint once until January 30, 2024.[10]

6    Such delay does not demonstrate diligence. *JIPC Mgmt.,* 2010 WL 11515198 at *5;

7    *University of Pittsburgh v. Hedrick,* 2006 WL 8431812, at *2 (C.D. Cal. 2006)

8    (Marshall, J.) (denying motion to reopen discovery where party waited a month after

9    discovery cutoff before filing its motion); *Johnson,* 975 F.2d at 609 ("[C]arelessness

10   is not compatible with a finding of diligence"). "If [moving] party was not diligent,

11   the inquiry should end." *Johnson,* 975 F.2d at 609.

12            **2.    Defendants Will Be Prejudiced by the Amendment**

13   While the "good cause" inquiry primarily focuses on the diligence of the party

14   seeking to extend discovery deadlines, prejudice to the opposing party also may be

15   considered. *Id.*, at 609. Here, the current Defendants are prejudiced as Icon's redlined

16   proposed Third Amended Complaint makes clear that Icon seeks to make substantive

---

17   [10] This excuse is similarly hollow with respect to Icon's motion to reopen

18   discovery. Icon argues that it did not file its motion before the discovery cutoff
     because Defendants agreed to continue to meet and confer and try to resolve

19   discovery disputes. ECF No. 344-3 at 6-7. Yet, if Icon was not satisfied with the
     progress it was making, it was duty bound to bring its motion by the discovery cut-

20   off date—not nearly four months later.

21   Contrary to Icon's contention, the principal reason that the meet and confer process
     was lengthy was because Icon failed to specify the relief it would seek and because

22   Icon repeatedly provided partial and incomplete information about the legal and

23   factual predicates for its motion. If Icon had confidence that it had met its

24   obligation to meet and confer at any point in the over two months between when it
     first put its concerns in writing on November 17, 2023, and the filing of its motion

25   to reopen, it was free to do so. Icon's failure to do so is not attributable to

26   Defendants' conduct. Defendants met with Icon repeatedly and responded
     promptly. And in the numerous meetings and correspondence during this period,

27   Icon never raised the issue of amending the complaint until Icon's January 30, 2024

28   letter.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING &
MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

changes to its complaint that are separate and apart from adding SCDCL as a defendant.[11]

Aside from that, adding SCDCL as a defendant would severely prejudice the current Defendants. Icon contends that it can add a party after the close of discovery without modifying the Scheduling Order, effectively depriving SCDCL of the opportunity to conduct discovery in its own defense. SCDCL cannot be denied its due process rights. *Adams v. Arizona Senate,* 2021 WL 6050304, at *1 (D. Ariz. 2021) (potential new party must have the opportunity to adequately defend its interests). If SCDCL is added as a party defendant, it will need to be afforded the opportunity to bring its own Rule 12 challenge(s) to the proposed Third Amended Complaint (including SCDCL's apparently strong statute of limitations defense). It will also undoubtedly need the opportunity to conduct its own discovery. This would completely upend the schedule and cause months of delay when fact discovery is over, expert discovery is underway, and when Defendants have already incurred the considerable expenses associated with the foregoing, as well as having already started working on their motions for summary judgment. Courts have found prejudice to defendants justifying denial of the motion to amend in similar circumstances.[12] *See JIPC Mgmt.,* 2010 WL 11515198, at *7 (Marshall, J.) (denying motion to amend due to prejudice to defendants who would be forced to incur additional expenses); *Solomon v. N. Am. Life & Cas. Ins. Co.,* 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming this Court's denial of a motion for leave to amend that was filed two weeks before the discovery deadline because it would have required reopening discovery and delaying the proceedings); *Morris*, 2019 WL 2994291, at *5 (citing *Lockheed Martin*

---

[11] Local 300 adopts the arguments addressing this issue in SWRCC's Opposition to Icon's motion for leave to amend as if they were stated herein.

[12] If Icon is successful in its motion to reopen discovery, Defendants are also prejudiced for the same reasons outlined in the Defendants' Oppositions to Icon's Motion to Reopen Discovery and Modify the Scheduling Order. See ECF No. 336 at 14-15; ECF No. 335 at 3-4.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

*Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir. 1999)).[13]

### C.    Even if Rule 15 Applies, Icon's Motion Should Be Denied

Under Rule 15, leave should be granted to add a party to the complaint unless the amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay. *Johnson*, *supra*, 975 F.2d at 607 (9th Cir. 1992). "As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

Icon's contention that there is no prejudice because Icon seeks only to add a new party [ECF No. 344-3, at p. 2.] is both false, as described above, and entirely backwards: "[a]mendments seeking to add claims" are to be granted more freely than amendments adding parties. *Union Pac. R.R. Co. v. Nevada Power Co.,* 950 F.2d 1429, 1432 (9th Cir. 1991).

### 1.    Adding SCDCL Would Prejudice SCDCL and Current Defendants

In considering prejudice under Rule 15, the Court looks not just to the then-extant opposing parties, but also to prejudice to the party proposed to be added to the action. *Wilkins-Jones v. County of Alameda,* 2012 WL 3116025, at *8 n.1 (N.D. Cal. 2012) (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1391 (9th Cir. 1990)). Here, both SCDCL and Defendants will be severely prejudiced if amendment is allowed. *See supra* at II.B.2.

### 2.    Icon Seeks Leave to Add SCDCL as a Defendant in Bad Faith

Because Icon has been on notice of SCDCL's role in the CEQA process since 2018, its argument about the timing of its amendment request is belied by the

---

[13] *N. Cal. River Watch v. Ecodyne Corp.,* 2013 WL 146324 (N.D. Cal. 2013) is inapposite. There plaintiff moved to add a defendant before the close of discovery and within a month after receiving the information leading to the requested amendment. *Id.* at *5-6. Those facts are markedly different from those here.

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

evidence (*see supra* at II.B.1). This pretextual contention suggests that there is another motive at work—likely to re-open discovery in an effort to fix strategic decisions that it made, but now regrets. *Wilkins-Jones*, *supra*, 2012 WL 3116025, at *10.

### 3.   Amendment Is Futile as the Statute of Limitations Has Run

Icon was aware of SCDCL and chose not to add it as a defendant. Under these circumstances, the addition of SCDCL as a defendant would be time barred as it would not relate back to the original complaint. Fed.R.Civ.P. 15(c)(1)(C); *Butler v. National Community Renaissance Corp.,* 2010 WL 11596469, at *7 (C.D. Cal. 2010) (relation back inappropriate where plaintiff "knew of the potential defendants' existence, status and roles" when filing original complaint); *Wilkins-Jones,* 2012 WL 3116025, at *17 ("[T]he evidence supports the conclusion that [plaintiff] made a conscious, reasoned choice not to sue the [added party] … [and plaintiff] (and her counsel) may have made an error in legal judgment … but such an error is not the same as a mistake about the parties' respective roles."). Here, Icon seeks to amend its complaint in 2024 to hold SCDCL liable for conduct in 2017 and 2018 despite the fact Icon was on notice of SCDCL's role as early as 2018 and Icon's deliberate decision not to include SCDCL as a defendant at that time or in the over five years since.

Further, Plaintiff has offered no legitimate reason why it needs to add SCDCL as a named defendant. Local 300 is not contending that SCDCL should have been the named party with respect to the CEQA filings on Local 300's behalf. Indeed, Icon confirmed that it is not contending that it accidentally sued Local 300 instead of SCDCL and that it will not dismiss Local 300 if SCDCL is added as a defendant. *Id*., Ex. M, at 1-2.[14]

---

[14] Following the February 8, 2024 meet and confer, Local 300 confirmed:

> [I]t is Icon's position that Local 300 is a proper defendant, and that it is not seeking substitution of one entity for another, nor is Icon contending that in the absence of amendment it will be left without a viable claim against a proper LIUNA-affiliated defendant. Rather, it is Icon's position that

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

Given that SCDCL was not on notice that it would be named as a defendant and Icon did not mistake Local 300 for SCDCL, any claims asserted against SCDCL would not relate back to the date of the filing of the original complaint and Icon's claims would be time barred. Thus, amendment is futile and Icon's motion should be denied.

### 4.    Icon Has Unduly Delayed Bringing Its Motion

Under Rule 15: "[T]he longer the delay in amending the complaint … the likelier the new defendant is to have been placed at a disadvantage in the litigation." *Wilkins-Jones,* 2012 WL 3116025, at *14. Here, Icon knew of the existence and role of the SCDCL before filing the complaint and then was further put on notice by Local 300's initial disclosures and interrogatory responses. It is, thus, clear that Icon simply chose not to name the SCDCL as a defendant and belatedly brings this motion to undo that decision. *Id.*, at *9-11; *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).

### D.    Icon Misapplies Rule 21

Icon also attempts to join SCDCL by invoking Fed.R.Civ.P. 21. Under Rule 32, a request to add or withdraw a party is considered under the same standard that applies to requests to amend a complaint under Rule 15. *In re Snap Inc. Secs. Litig.,* 394 F.Supp.3d 1156, 1157 (C.D. Cal. 2019). Importantly, Courts must consider due process, including affording the potential new party "sufficient notice and opportunity to adequately defend its interests." *Adams,* 2021 WL 6050304, at *1 (internal citation omitted). Icon contends that it can add SCDCL without allowing it to conduct any discovery in its defense, without SCDCL having the opportunity to consider having its own expert witnesses, and with only two months until dispositive motions are due and

---

Local 300 is a proper defendant in this case, and that it is seeking to add an additional LIUNA-affiliated party.

In response, Icon's counsel affirmed: "You are also correct that we continue to believe that Local 300 remains a proper defendant." *Id.*

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

five months until trial. Granting Icon's motion under those conditions would surely violate SCDCL's due process rights. Thus, *Custom Homes by Via, LLC v. Bank of Okla., N.A.*, 637 F. App'x 356 (9th Cir. 2016), cited by Icon, is inapplicable. There the Ninth Circuit affirmed the district court's decision to add a plaintiff during a bench trial because there was a "lack of any cognizable prejudice to the [defendant]." *Id.* at 356-57.

When exercising discretion under Rule 21, the Court "'must be guided by a sense of what justice requires in a given case,'" including 'whether joinder is needed to afford plaintiff full relief.'" *Adams,* 2021 WL 6050304, at *3 (citation omitted). Here, as stated above, Local 300 does not assert a defense that it was not the party that undertook the CEQA filings and, thus, joinder is not needed to afford Icon the relief it seeks.

## IV.   **CONCLUSION**

There has been an inordinate delay in bringing this motion with no explanation other than Icon's attempt to blame Local 300 for Icon's own lack of diligence. And leave to amend at this late date would unquestionably prejudice each of the Defendants. Accordingly, Icon's motion to amend should be denied.

Respectfully Submitted,

DATED: February 20, 2024          REICH, ADELL & CVITAN,
                                  A Professional Law Corporation


                                  By:   /s/ Laurence S. Zakson
                                        LAURENCE S. ZAKSON
                                        Attorneys for Laborers Defendants
                                        and SEM

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING & MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this response contains 6,951 words, which complies with the word limit of L.R. 11-6.1.

Respectfully Submitted,

DATED: February 20, 2024          REICH, ADELL & CVITAN,
                                  A Professional Law Corporation


By:   /s/ Laurence S. Zakson
          LAURENCE S. ZAKSON
          Attorneys for Laborers Defendants
          and SEM

OPPOSITION OF LABORERS DEFENDANTS AND SMITH ENGINEERING &
MANAGEMENT TO MOTION FOR LEAVE TO AMEND THE COMPLAINT